IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MAGGIE THOMAS,<br>    Plaintiff,<br>           v.<br>JAMES HINES and CITY OF ATLANTA,<br>    Defendants. | Civil Action No.<br>1:22-cv-04417-SDG |

**OPINION AND ORDER**

This matter is before the Court on two motions to dismiss [ECFs 2, 12] filed by Defendant City of Atlanta (the City). For the following reasons, the City's motion to dismiss [ECF 12] is **GRANTED in part** and **DENIED in part**, and the initial motion to dismiss [ECF 2] is **DENIED as moot**.

**I.   Background**

For purposes of the City's motion to dismiss, the Court treats all well-pleaded facts in the First Amended Complaint (FAC) as true and construes them in the light most favorable to Plaintiff Maggie Thomas. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999).

On May 1, 2019, Thomas was sitting in her vehicle in the parking lot of her apartment complex in Atlanta, Georgia.[1] Defendant James Hines, a police officer

---

1   ECF 4, ¶ 14.

employed by the City, drove his police cruiser into the parking lot and stopped near Thomas's vehicle.[2] Hines and Thomas began to interact. During the exchange, Thomas asked Hines for his superior's name and contact information; Hines did not respond and left the parking lot.[3]

Later, Hines returned and again approached Thomas.[4] Hines asked Thomas to provide her name, and he attempted to confiscate her cellphone and handcuff her.[5] Thomas refused to give Hines her cellphone and tried to dial 911.[6] Hines tased Thomas.[7] He then threw Thomas on the ground and handcuffed her.[8] While Thomas laid on the ground in handcuffs, Hines punched her in the eye and tased her several more times.[9] Eventually, other police officers employed by the City arrived at the scene and pulled Hines away from Thomas.[10] The altercation was

---

[2] *Id.* ¶ 15.

[3] *Id.* ¶¶ 15–17.

[4] *Id.* ¶ 18.

[5] *Id.* ¶ 19.

[6] *Id.* ¶ 20.

[7] *Id.*

[8] *Id.* ¶ 22.

[9] *Id.* ¶ 23.

[10] *Id.* ¶ 24.

loud enough to draw Thomas's neighbors out of their apartments; some unidentified neighbors recorded the encounter.[11]

Hines's rationale for seeking to detain Thomas is unclear from the face of Thomas's pleading, perhaps because it was unclear to Thomas. An officer at the scene advised Thomas that she had failed to appear for traffic court, but the officer was unable to confirm whether a warrant had been issued for Thomas's arrest.[12] Nevertheless, she was arrested and taken to Grady Memorial Hospital for treatment and, after that, the Atlanta City Jail.[13] Following 24 hours in the jail, Thomas was released.[14] Sometime later, the charges against her were dropped.[15]

Thomas first filed suit in the State Court of Fulton County, Georgia on May 18, 2020.[16] The parties litigated the case through briefing on summary judgment.[17]

---

[11]  *Id.* ¶ 21.

[12]  *Id.* ¶ 25.

[13]  *Id.* ¶¶ 26–27.

[14]  *Id.* ¶ 27.

[15]  *Id.* ¶ 28.

[16]  ECF 5, at 4.

[17]  ECF 12-1, at 2.

At some point, that case was dismissed.[18] And, on October 6, 2022, Thomas filed this renewal action in the same court.[19]

Defendants removed the case on November 4, 2022.[20] On November 11, the City moved to dismiss the Complaint.[21] But, on November 24, Thomas filed the operative First Amended Complaint (FAC)[22]; accordingly, the City's November 11 motion to dismiss is **DENIED as moot**.[23]

Hines answered the FAC and counterclaimed on December 5.[24] On December 8, the City moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6).[25] Hines neither joined the December 8 motion to dismiss nor moved separately, but the Court will consider whether any of the City's arguments apply to Hines. *Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987) ("A District Court may properly on its own motion dismiss an

---

[18] *Id.* There is no contention that the dismissal was improper or that this case was untimely renewed.

[19] ECF 1, ¶ 2.

[20] *See generally* ECF 1.

[21] ECF 2.

[22] ECF 4.

[23] ECF 2.

[24] ECF 9.

[25] ECF 12.

action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."). Thomas did not file an opposition to the motion, but the Court will nevertheless consider the motion on its merits. *Giummo v. Olsen*, 701 F. App'x 922, 925 (11th Cir. 2017) (noting a district court must "address the merits of the defendants' [unopposed] motion to dismiss" considering "only the defendants' arguments and the complaint's allegations").

## II.   Discussion

In the FAC, Thomas asserts claims under 42 U.S.C. § 1983 for alleged violations of her Fourth, Eighth, and Fourteenth Amendment rights (Count I), as well as claims for assault and battery against Hines (Count II) and vicarious liability against the City (Count III).[26] She also asserts claims for special damages (Count IV), attorneys' fees (Count V), and punitive damages (Count VI).[27] To survive the City's Rule 12(b)(6) motion to dismiss these claims, the FAC must contain sufficient factual material, accepted as true, such that it states a claim "that is plausible on its face." *Ashcroft v. Iqball*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[26]   *See generally* ECF 4.

[27]   *Id.*

### A.     *Monell Liability*

The City moves to dismiss Thomas's Section 1983 claims (Counts I and III) against it. In these claims, Thomas attempts to advance theories of vicarious and direct liability. For the reasons set out in *Monell v. Dep't of Soc. Servs. of City of New York*, the claims are due to be dismissed. 436 U.S. 658, 690 (1978).

#### 1.     **Vicarious Liability**

Count III of the FAC, titled "42 U.S.C. § 1983-VICARIOUS LIABILITY," would hold the City liable for Hines's conduct. The City argues that Thomas's *respondeat superior* theory is a nonstarter.[28] The City is correct; Thomas's claim fails as a matter of law.

In *Monell*, the Supreme Court acknowledged Congress's intent to include municipalities and local governments among those persons to whom Section 1983 applies. *Id.* ("Local governing bodies, therefore, can be sued directly under [Section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). But the Supreme Court provided an explicit caveat: "[A]

---

[28]   ECF 12-1, at 3–4.

municipality cannot be held liable on a *respondeat superior* theory." *Id.* at 691. Thus, Count III of the FAC is dismissed.

### 2. Direct Municipal Liability

"*Monell* reasoned that recovery from a municipality [pursuant to Section 1983] is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). To hold a municipality directly liable, a plaintiff must show: (1) that her constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation of her constitutional rights. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). *See also Pilgrim v. City of Atlanta*, 2022 WL 797584, at *4 (N.D. Ga. Mar. 16, 2022) (citing *McDowell*).

The City does not dispute that Thomas's constitutional rights were violated. But the City argues that the FAC runs afoul of Rule 12(b)(6) because it does not identify a policy or custom that caused Thomas's constitutional rights to be allegedly violated.[29] To show a relevant custom or policy, a plaintiff can

---

[29] ECF 12-1, at 4.

> (1) identify[ ] an official policy; (2) identify[ ] an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identify[ ] a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights.

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, No. 21-10619, 2022 WL 4100687, at *3 (11th Cir. Sept. 8, 2022) (citing *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966–68 (11th Cir. 2022)).

To be sure, several of the FAC's annunciated "policies" do not pass muster. For instance, the Court declines to credit the FAC's conclusory allegation that the City had policies "[e]ncouraging officers to act improperly by permitting [them] to resign in lieu of suspension or termination after they improperly tase citizens who are lying on the ground in handcuffs all without their body cameras operational" or "improperly strike citizens with a closed fist who are lying on the ground in handcuffs all without their body cameras being operational"; "[h]aving wholly inadequate disciplinary processes in place such that Officer Hines was permitted to resign rather than being terminated or suspended after he tased and struck with a closed fist the Plaintiff while she was lying on the ground handcuffed"; and "demonstrat[ing] deliberate indifference to Plaintiff's

constitutional rights, as complained of herein, and the harm suffered."[30] Such idiosyncratic "policies" have been flatly rejected by the Eleventh Circuit. *See Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 673 (11th Cir. 2016) (affirming the district court's dismissal of a *Monell* claim where the plaintiff "ha[d] not cited a policy encouraging excessive force" but (1) contended that the municipality's police department's internal affairs process was ineffective such that it sent "an implicit message to police officers that they can abuse civilians without punishment" and (2) "pointed to only one incident . . . to show that the internal affairs process was ineffectual by custom—his own experience").

Although the FAC is not a model of clarity, other allegations, taken together, seem to allege another policy. The City failed to "properly train[ ] officers on the use and danger of tasers" and allowed "officers to tase people who are simply being non-compliant even when [those people] pose no physical threat."[31] The Court understands the FAC to also allege that the City has a policy of covering up officer misconduct and excessive force.[32] Thus, the crux of the FAC's allegations is

---

[30]  ECF 4, ¶ 12.

[31]  *Id.*

[32]  *Id.*

that the City had an unofficial policy or custom of training officers to use tasers on suspects who pose no physical threat and covering up those officers' misconduct.

But the FAC does not allege other examples of this policy, and one instance is not a custom at all. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) ("A custom is a practice that is so settled and permanent that it takes on the force of law."); *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) (citation omitted) ("Random acts or isolated incidents are insufficient to establish a custom" for *Monell* liability purposes.). To establish the existence of a custom, the plaintiff must show a "longstanding and widespread practice." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (cleaned up). As with the so-called "policies" discussed above that seem to apply only to Hines or Thomas, Thomas's conclusory allegation that the City has a custom promoting the use of tasers and declining to discipline, without additional examples, fails to state a *Monell* claim under Rule 12(b)(6). *See Marantes*, 649 Fed. App'x at 673 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985)) ("These allegations do not show that the County had a "'longstanding and widespread practice' of encouraging excessive force."); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1329 (11th Cir. 2015) (citations omitted) (affirming the district court's dismissal, recognizing that "evidence of previous incidents is not required to establish city policy if the need

to train and supervise in a particular area is 'so obvious' that liability attached for a single incident," but noting that the complaint neither identified more than "a single incident" nor alleged the need for training was "so obvious"); *cf. Favors v. City of Atlanta*, 849 F. App'x 813, 817–18 (11th Cir. 2021) (per curiam) (affirming ruling that ten prior incidents in the three years leading up to the event at issue were sufficient to show the City was on notice of the need to train). Thus, the City's motion on this claim is granted, and Thomas's *Monell* claim against the City in Count I of the FAC is dismissed.

### B. Assault and Battery Claims

In Count II of the FAC, Thomas asserts Georgia assault and battery claims arising from Hines's conduct.[33] As the City notes, "it is unclear whether Thomas also alleges state law [assault and battery] claims against the City . . . ."[34] However, because Count III, Thomas's vicarious liability claim, incorporates by reference each preceding paragraph of the FAC, including those allegations in Count II, the Court assumes that Thomas intended to hold the City liable for any damages that emanate from Count II.[35]

---

[33] *Id.* ¶¶ 47–53.

[34] ECF 12-1, at 8.

[35] ECF 4, ¶ 47.

Under Georgia law, ordinarily, "[a] municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law." O.C.G.A. § 36-33-3; *McDay v. City of Atlanta*, 204 Ga. App. 621, 622 (1992) ("The city is not vicariously liable for the acts attributed to the police officers."). *See also* Ga. Const., Art. IX, Sec. 2, Para. 9 (providing for sovereign immunity). Though Thomas alleges in the FAC that the City's sovereign immunity was waived by its purchase of insurance,[36] the City contends that Thomas's failure to furnish a copy of any insurance policy to the Court at the pleading stage sinks her assault and battery claim against it.[37] Specifically, the City writes, "It's not like Thomas couldn't get the insurance information—if it actually existed (the undersigned does not believe that it does)."[38]

While the burden of establishing the City's waiver of sovereign immunity is Thomas's and, as the City avers, "[t]here are certainly avenues for getting insurance information from a party-opponent pre-suit" under Georgia law,[39] the Court declines to dismiss Count II as to the City at this juncture. Discovery can

---

[36] *Id.* ¶ 7.

[37] ECF 12-1, at 9.

[38] *Id.* at 9 n.2.

[39] *Id.* at 9–10 n.2.

easily answer the question of whether a relevant insurance policy exists, and the Court declines to weigh the lack of evidence in favor of the City at this pleading stage of the case. For now, Thomas's allegations that the City purchased insurance and the insurance contained a waiver of sovereign immunity are enough to withstand the scrutiny of Rule 12(b)(6), and the motion to dismiss Count II of the FAC is denied.

### C. Official Capacity Claims Against Hines

The FAC attempts to hold Hines liable in his individual and official capacities. As the City argues, "[i]n contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Lathrop v. Deal*, 301 Ga. 408, 425 (2017) (citation omitted) ("[A]s our precedents make clear, a suit against a state officer in his official capacity amounts to a suit against the State itself."). The federal and state official capacity claims against Hines are duplicative of the claims against the City. Thus, the City's motion is granted, those claims are dismissed, and any reference to Hines "in his official capacity" is disregarded.

D.     **Damages**

Count IV of the FAC asserts a claim for punitive damages against Defendants. The City avers that, under federal and Georgia law, a municipality is immune from punitive damages. The City is correct. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *MARTA v. Boswell*, 261 Ga. 427, 428 (1991). In any event, Thomas appears to have abandoned that claim in an earlier-filed paper.[40] Accordingly, the City's motion to dismiss is granted in this respect, and her claim for punitive damages against the City is dismissed.

However, because some claims against the City survive, so too do Thomas's claims for special damages and attorneys' fees. The motion to dismiss is denied as to these claims.

**III.    Conclusion**

The City's motion to dismiss [ECF 12] is **GRANTED in part** and **DENIED in part**. The initial motion to dismiss [ECF 2] is **DENIED as moot**. All claims against Hines in his official capacity, the Section 1983 claims against the City per *Monell*, and the punitive damages claim against the City are **DISMISSED**; only the claims against Hines in his personal capacity, the claims for assault and battery

---

40     ECF 5, at 12.

against the City, and the corresponding damages claims survive. The parties are

**ORDERED** as follows:

- Thomas and Hines shall file certificates of interested persons **within 7 days** from entry of this order, *see* NDGa, LR 3.3 (excepting governmental parties from this requirement);

- The City shall file its answer to the Complaint **within 21 days** from entry of this Order;

- The parties shall conduct their Rule 26(f) conference **within 14 days** from the date the City files its answer;

- The parties shall serve their initial disclosures and submit a Joint Preliminary Report and Discovery Plan **within 30 days** from the date the City files its answer; and

- Discovery will commence **30 day**s after the City files its answer.

**SO ORDERED** this 28th day of August, 2023.

_____
Steven D. Grimberg
United States District Court Judge