EXHIBIT 1

# OPS Complaint File Closeout Report

OPS Control Number: **19-C-0210-UAF**   Date Investigation Received: **05 13 19**

Date Investigation Completed: **05 15 19**   Date Investigation Adjudicated: **5-17-19**

Accused Employee: **JAMES HINES**   R/S: **w/m**   Unique ID: **3669**

Accused Employee's Assignment: **FOD** DIVISION   **26** SECTION   WATCH

Investigative Disposition:

| | Work Rule #1 | Work Rule #2 | Work Rule #3 | Work Rule #4 | Work Rule #5 |
|---|---|---|---|---|---|
| Rule Number(s): | 4.2.50 | 4.2.33 | 4.2.33 | 4.1.1 | |
| Disciplinary Action: | Ex.CL | Ex.CL | Ex.CL | Ex.CL | |
| Modified Action: | — | — | — | — | |
| Disciplinary Category: | — | — | — | — | |
| Date of Action | 5-30-19 | 5-30-19 | 5-30-19 | 5-30-19 | |

Waiver: ☐YES ☑NO   CVSA: ☐YES ☑NO   SAA: ☐YES ☑NO

Reimbursement Payment: ☐YES ☑NO

Special Conditions and / or Agreement: Employee Resigned Prior to Effective Date

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Accused Employee: _____   R/S: _____   Unique ID: _____

Accused Employee's Assignment: _____ DIVISION   _____ SECTION   _____ WATCH

Investigative Disposition:

| | Work Rule #1 | Work Rule #2 | Work Rule #3 | Work Rule #4 | Work Rule #5 |
|---|---|---|---|---|---|
| Rule Number(s): | | | | | |
| Disciplinary Action: | | | | | |
| Modified Action: | | | | | |
| Disciplinary Category: | | | | | |
| Date of Action | | | | | |

Waiver: ☐YES ☑NO   CVSA: ☐YES ☑NO   SAA: ☐YES ☑NO

Reimbursement Payment: ☐YES ☐NO

Special Conditions and / or Agreement: _____

Form Completed by: **SPO G.A. CONE**   Date: **07-30-19**

## ATLANTA POLICE DEPARTMENT
## NOTICE OF FINAL ADVERSE ACTION (NFAA)
## OPS CONTROL #: 19-C-0270-UAF

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION | DIVISION | SECTION | WATCH |
|---|---|---|---|---|---|---|
| HINES, JAMES | 3669 | | SGT | FOD | Z6 | |

| EMPLOYEE STATUS | | | PERSONNEL ORDER # | DISTRIBUTION | EMERGENCY ACTION? | |
|---|---|---|---|---|---|---|
| PERMANENT [X] | PROBATION [ ] | OTHER [ ] | APD.PO.19.140 | 7 | YES [ ] | NO [X] |

**NOTICE OF PROPOSED ADVERSE ACTION (N.P.A.A.) ISSUED ON:**

Did employee respond to NPAA?  YES [ ]  NO [ ]  If yes  WRITTEN RESPONSE [ ]  PERSONAL RESPONSE [X]  DATE RESPONDED 5/17/19

Summary of Employee Response: Employee asked for reduction in discipline

---

**FINAL ADVERSE ACTION:** *If an emergency action state the nature of the emergency below in the Narrative.*

[XXX] Suspension without pay for _13_ working days.

Suspension without pay pending adjudication of criminal charges. [ ]

Was the Notice of Proposed Adverse Action Modified? YES [ ] NO [X]

Date NPAA Issued 5/16/19

[ ] Demotion from _____ to _____

[XXX] Dismissal.

Effective Date of Action 5/30/19

[ ] Other _____

---

**NARRATIVE (Reasons for Adverse/Emergency Action)**

The specific disciplinary decision for each Departmental work rule or other violation you were charged with follows below:

| RULE VIOLATION | DISCIPLINARY ACTION |
|---|---|
| **4.2.50** **Maltreatment or Unnecessary Force** | Dismissal |
| **4.2.33** **Conformance to Directives** | 5 Day Suspension |
| **4.2.33** **Conformance to Directives** | 5 Day Suspension |
| **4.1.1** **Appropriate Action Required** | 3 Day Suspension |

*See attached page(s) for the specifics of the violation(s).*

---

**TO EMPLOYEE:** Pursuant to Labor Management Relations Ordinance Section 114-547, you may appeal any adverse action taken in this matter to the City of Atlanta Civil Service Board by completing the Civil Service Appeal form and submitting it to the Bureau of Labor Relations.

| Chief E, Shields | 8M  5·17·2019 |
|---|---|
| TITLE AND NAME OF DISCIPLINARY AUTHORITY (PRINT OR TYPE NAME) | DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE |
| 5/17/19 | Sgt W De  5/17/19 |
| EMPLOYEE SIGNATURE & DATE (Indicates receipt ONLY not agreement with action) | WITNESS SIGNATURE AND DATE |

**P - - - -**

## NOTICE OF FINAL ADVERSE ACTION          OPS CONTROL 19-C-0210-UAF

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| HINES, JAMES | 3669 | | SGT. |

**NARRATIVE (REASONS FOR EMERGENCY ACTION)**

**GENERALLY:**   You are charged with violating Rule 4.2.50 of the Employee Work Rules of this Department. Said Rules states:

<u>Maltreatment or Unnecessary Force</u>

1. Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property

2. Employees shall only use that force which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself or another from physical assault, or to accomplish other lawful objectives. The reasonableness inquiry refers to whether the employee's actions are "objectively reasonable" in light of the facts and circumstances confronting him or her, without regard to their underlying intent or motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split second decisions about the amount of force necessary in a particular situation (Graham v. Connor, 490 U.S. 386 (1989).

**SPECIFICALLY:** On May 1, 2019, while on duty, you used unnecessary force when you punched Ms. Thomas in face while she was handcuffed. You indicated in the Atlanta Police incident report that Ms. Thomas bit you on the hand resulting in you punching her in the face. However, during your statement provide to OPS, you described Ms. Thomas' actions prior to you punching her the face as an attempt to bite you. Photographs taken by Atlanta Police Identification Units illustrate no bite marks or injuries to your hand. Additionally, you did not seek medical attention for your alleged injuries.

Furthermore, during your statement provide to OPS, you were asked if you were still in danger of being bitten when you punched Ms. Thomas in the face. You stated, "I don't know."

Moreover, your failure to notify to Ms. Thomas that she was under arrest or she possessed and active warrant deemed the ensuing physical struggle and post arrest punch to her face to be an unreasonable application of force.

Your actions in the aforementioned instances are contrary to APD,SOP. 2010 Work Rules, Section 4.2.50 Maltreatment or Unnecessary Force
**YOUR ACTIONS AS DESCRIBED ABOVE ARE IN VIOLATION OF THE LISTED RULE (S).**

| | |
|---|---|
| Chief E. Shields | ~5 · 17 · 20 5~ |
| TITLE AND NAME OF DISCIPLINARY AUTHORITY | DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE |
| 5/17/5 | Sgt W Dea    5/17/19 |
| EMPLOYEE'S SIGNATURE & DATE (Indicates receipt ONLY not agreement with action)<br>Form APD-934 revised 1/1/2000 | WITNESS SIGNATURE AND DATE |

P-      -      -

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| HINES, JAMES | 3669 | | SGT |

## NARRATIVE (REASONS FOR EMERGENCY ACTION)

**GENERALLY:** You are charged with violating Rule 4.2.33 of the Employee Work Rules of this Department. Said Rules states:

### Conformance to Directives

Employees are required to familiarize themselves with, and conform to, the rules, regulations, directives, and standard operating procedures of the Department.

**SPECIFICALLY:** On May 1, 2019, you encountered Ms. Maggie Thomas as she sat in her vehicle at 657 Boulevard Northeast. After a struggle, you arrested Ms. Thomas for a City of Atlanta FTA warrant and Disorderly Conduct. BWC footage of your encounter with Ms. Thomas illustrates you searching Ms. Thomas' vehicle after her arrest. You did not have a warrant to search Ms. Thomas' vehicle at the time you conducted the search.

Ms. Thomas was not operating her vehicle as you encountered her, and no probable cause existed to justify a warrantless search of Ms. Thomas' vehicle without her consent. Additionally, there was no reasonable articulable suspicion that would suggest that evidence or contraband related to Ms. Thomas arrest was inside her vehicle.

Your actions and/or inaction as described above are in violation of work rule, 4.2.33 / APD.SOP. 3020 (Search and Seizure) Section 4.3.1.

1. There is a constitutional preference for searches to be conducted pursuant to a warrant rather than without one. Searches conducted without a warrant are per se unreasonable and subject to only a few specifically well-delineated exceptions.

2. Probable Cause must exist to make a warrantless search. Specifically, to justify a warrantless search, two essential elements must exist:

   a. It must be established that the exigent circumstances at the time of the search were sufficient to require immediate action, which necessitated not complying with the restrictions of the warrant requirement of the Fourth Amendment.

   b. The manner and scope of the search that was conducted must be reasonably related to the justification of the search.

---

Chief E. Shields
TITLE AND NAME OF DISCIPLINARY AUTHORITY

EMPLOYEE'S SIGNATURE & DATE (Indicates receipt ONLY not agreement with action)
Form APD-834 revised 1/1/2000

DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE

WITNESS SIGNATURE AND DATE

P- _____ - _____ - _____

# ATLANTA POLICE DEPARTMENT
## ADVERSE ACTION CONTINUATION
NOTICE OF FINAL ADVERSE ACTION          OPS CONTROL #: 19-C-0210-UAF

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| HINES, JAMES | 3669 | | SGT |

---

**NARRATIVE (REASONS FOR EMERGENCY ACTION)**

**GENERALLY:**  You are charged with violating Rule 4.2.33 of the Employee Work Rules of this Department. Said Rules states:

<u>Conformance to Directives</u>
Employees are required to familiarize themselves with, and conform to, the rules, regulations, directives, and standard operating procedures of the Department.

**SPECIFICALLY:** On May 1, 2019, you observed a vehicle at 657 Boulevard Northeast matching the description of a vehicle driven by suspects allegedly responsible for several crimes in Zone 6. You approached the vehicle which was occupied by Ms. Thomas and a child. You documented the tag information from the vehicle and checked the vehicle registration. You indicate to Ms. Thomas that the vehicle does not have active insurance. You left the location and returned moments later after learning that the registered owner of the vehicle possessed an active warrant for Failure to Appear on City of Atlanta traffic charges. Upon your arrival back to the location, you requested the driver's license of Ms. Thomas and request her to exit the vehicle. You attempted to handcuff Ms. Thomas and a struggle ensued. During your attempt to take Ms. Thomas into custody you administered your taser twice on Ms. Thomas in drive stun mode to gain compliance. At some point after handcuffing Ms. Thomas, you punched her in the face causing her to fall to the ground.

A review of Body Worn camera (BWC) footage of the incident revealed that during the detainment, struggle and arrest of Ms. Thomas you never informed Ms. Thomas of the active warrant for her arrest or reasons for her arrest as required by Atlanta Police Standard Operating Procedure.

Moreover, during your statement provided to OPS, you were asked if you confirmed that Ms. Thomas was the wanted person listed in the FTA city traffic warrant prior to using force to arrest her. You responded, "No".

By your actions you failed to conform to APD.SOP.3030 Arrest Procedures, section 4.1.6. which requires in pertinent part as follows: <u>**#3. All persons will be treated courteously, humanely, and with regard for their legal rights. #5 At the time of the arrest, the arresting officer(s) will (b.) Inform the arrestee of the reason for their arrest.**</u>

---

Chief E. Shields

_Edu  5·17·2019_

TITLE AND NAME OF DISCIPLINARY AUTHORITY          DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE

EMPLOYEE'S SIGNATURE & DATE (Indicates receipt ONLY not agreement with action)          WITNESS SIGNATURE AND DATE

Form APD-834 revised 1/1/2000

P-  _____ - _____ - _____

# ATLANTA POLICE DEPARTMENT
## ADVERSE ACTION CONTINUATION

**NOTICE OF FINAL ADVERSE ACTION**          **OPS CONTROL #: 19-C-0210-UAF**

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| HINES, JAMES | 3669 | | OFC |

## NARRATIVE (REASONS FOR EMERGENCY ACTION)

**GENERALLY:**   You are charged with violating Rule 4.1.1 of the Employee Work Rules of this Department. Said Rules states:

### Appropriate Action Required

1.   **Employees shall respond in an appropriate manner to all situations by:**
2.   **Being considerate of the rights, feelings, and interests of all persons.**

3.   **Taking action in each situation to provide the necessary and appropriate service and ensuring the proper notification of supervisors when appropriate.**

4.   **Requesting the assistance of supervisors when the appropriate action required is unclear, not possible given circumstances, or not within the scope of authority of the employee of whom such action was requested.**

5.   **Performing official acts in a lawful, restrained, dignified, impartial, and reasonable manner.**

**SPECIFICALLY:** On May 1, 2019, you encountered Ms. Maggie Thomas as she sat in her vehicle at 657 Boulevard Northeast accompanied by her young daughter. After a struggle, you arrested Ms. Thomas for a City of Atlanta (Municipal Court) FTA warrant and Disorderly Conduct. During the course of your interaction with Ms. Thomas, you administered your taser on Ms. Thomas twice to gain control of her and punched her in the face causing her to fall to the ground. Video footage of the incident show you refusing to answer reasonable questions posed to you by Ms. Thomas. Additionally, you are overheard telling Ms. Thomas it was none of her business as to why you were checking her vehicle tag.

Your refusal to answer reasonable questions posed by a citizen seem to only agitate the situation and reflected your inability and/or refusal to de-escalate the encounter. Your actions were not taken in a manner considerate of the rights, feelings, and interests of Ms. Thomas or her daughter, and your official acts were not performed in a lawful, restrained, impartial and reasonable manner.

Your actions in the aforementioned instance is contrary to APD.SOP 2010 (Work Rules), section 4.1.1 (Appropriate Action Required.

Your actions as described above are in direct violation of said listed work rules.

| | |
|---|---|
| **Chief E. Shields** | |
| TITLE AND NAME OF DISCIPLINARY AUTHORITY | DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE |
| EMPLOYEE'S SIGNATURE & DATE (Indicates receipt ONLY not agreement with action) | WITNESS SIGNATURE AND DATE |
| Form APD-834 revised 1/1/2000 | |

P-          -          -

# ATLANTA POLICE DEPARTMENT
## NOTICE OF PROPOSED ADVERSE ACTION (NPAA)
### OPS CONTROL #: 19-C-0210-UAF

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION | DIVISION | SECTION | WATCH |
|---|---|---|---|---|---|---|
| HINES, JAMES | 3669 | | SGT | FOD | Z6 | |

| EMPLOYEE STATUS | | | | PERSONNEL ORDER # | DISTRIBUTION | EMERGENCY ACTION? | |
|---|---|---|---|---|---|---|---|
| PERMANENT [X] | PROBATION [ ] | OTHER [ ] | | APD.PO.19.140 | 7 | YES [ ] | NO [X] |

| | | |
|---|---|---|
| XXX | Suspension without pay for _13_ working days. | Date NPAA Issued 5/16/19 |
| | Suspension without pay pending adjudication of criminal charges. | |
| | Demotion from _____ to _____ | |
| X X | Dismissal | Effective Date of Action 5/30/19 |
| | Other _____ | |

## NARRATIVE (Reasons for Adverse/Emergency Action)

The specific disciplinary action proposed for each Departmental work rule or other violation you are charged with is as follows:

| RULE VIOLATION | DISCIPLINARY ACTION |
|---|---|
| **4.2.50** **Maltreatment or Unnecessary Force** | Dismissal |
| **4.2.33** **Conformance to Directives** | 5 Day Suspension |
| **4.2.33** **Conformance to Directives** | 5 Day Suspension |
| **4.1.1** **Appropriate Action Required** | 3 Day Suspension |

*See attached page(s) for the specifics of the violation(s).*

## TO EMPLOYEE: If you choose to respond to this notice, you have a right to one or both of the following:

1. You may make a written response which must be received by the Disciplinary Authority named below by on 5/17/19 a 10:30 Am
2. You may appear personally before the Disciplinary Authority named below on 5/17/19 at 10:30 Am At his/her office to present an oral and/or written response. You may have a representative with you at this meeting. Prior to the time set for your meeting with the Disciplinary Authority you may request to reschedule the appointment by calling him or her at: 404-546-6900

The granting of such a request is at the discretion of the disciplinary authority

| E. SHIELDS | _signature_ 5/16/19 |
|---|---|
| TITLE AND NAME OF DISCIPLINARY AUTHORITY (PRINT OR TYPE NAME) | DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE |
| _signature_ 5/6/19 | Sgt W. _signature_ 5/16/19 |
| EMPLOYEE SIGNATURE & DATE (Indicates receipt ONLY not agreement with action) | WITNESS SIGNATURE AND DATE |

P - - -

Original to OPS; photocopy: to employee, to employee's supervisor, to Personnel and Human Resources, to Personnel Section (2) & to Chief of Police

# ATLANTA POLICE DEPARTMENT
## ADVERSE ACTION CONTINUATION
### NOTICE OF PROPOSED ADVERSE ACTION    OPS CONTROL 19-C-0210-UAF

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| HINES, JAMES | 3669 | | SGT |

## NARRATIVE (REASONS FOR EMERGENCY ACTION)
**GENERALLY:** You are charged with violating Rule 4.2.50 of the Employee Work Rules of this Department. Said Rules states:

### Maltreatment or Unnecessary Force

1. Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property

2. Employees shall only use that force which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself or another from physical assault, or to accomplish other lawful objectives. The reasonableness inquiry refers to whether the employee's actions are "objectively reasonable" in light of the facts and circumstances confronting him or her, without regard to their underlying intent or motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split second decisions about the amount of force necessary in a particular situation (Graham v. Connor, 490 U.S. 386 (1989).

**SPECIFICALLY:** On May 1, 2019, while on duty, you used unnecessary force when you punched Ms. Thomas in face while she was handcuffed. You indicated in the Atlanta Police incident report that Ms. Thomas bit you on the hand resulting in you punching her in the face. However, during your statement provide to OPS, you described Ms. Thomas' actions prior to you punching her the face as an attempt to bite you. Photographs taken by Atlanta Police Identification Units illustrate no bite marks or injuries to your hand. Additionally, you did not seek medical attention for your alleged injuries.

Furthermore, during your statement provide to OPS, you were asked if you were still in danger of being bitten when you punched Ms. Thomas in the face. You stated, "I don't know."

Moreover, your failure to notify to Ms. Thomas that she was under arrest or she possessed and active warrant deemed the ensuing physical struggle and post arrest punch to her face to be an unreasonable application of force in this instance.

Your actions in the aforementioned instances are contrary to APD.SOP. 2010 Work Rules, Section 4.2.50 Maltreatment or Unnecessary Force
**YOUR ACTIONS AS DESCRIBED ABOVE ARE IN VIOLATION OF THE LISTED RULE (S).**

| | |
|---|---|
| *E. SHIELDS* | *5.16.2019* |
| TITLE AND NAME OF DISCIPLINARY AUTHORITY | DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE |
| 5/16/15 | Sgt W Dean 5/16/19 |
| EMPLOYEE'S SIGNATURE & DATE (Indicates receipt ONLY not agreement with action) | WITNESS SIGNATURE AND DATE |
| Form APD-834 revised 1/1/2000 | |

P-

# ATLANTA POLICE DEPARTMENT
## ADVERSE ACTION CONTINUATION
### NOTICE OF PROPOSED ADVERSE ACTION          OPS CONTROL #: 19-C-0210-UAF

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| HINES, JAMES | 3669 | | SGT |

## NARRATIVE (REASONS FOR EMERGENCY ACTION)

**GENERALLY:** You are charged with violating Rule 4.2.33 of the Employee Work Rules of this Department. Said Rules states:

### Conformance to Directives

Employees are required to familiarize themselves with, and conform to, the rules, regulations, directives, and standard operating procedures of the Department.

**SPECIFICALLY:** On May 1, 2019, you encountered Ms. Maggie Thomas as she sat in her vehicle at 657 Boulevard Northeast. After a struggle, you arrested Ms. Thomas for a City of Atlanta FTA warrant and Disorderly Conduct. BWC footage of your encounter with Ms. Thomas illustrates you searching Ms. Thomas' vehicle after her arrest. You did not have a warrant to search Ms. Thomas' vehicle at the time you conducted the search.

Ms. Thomas was not operating her vehicle as you encountered her, and no probable cause existed to justify a warrantless search of Ms. Thomas' vehicle without her consent. Additionally, there was no reasonable articulable suspicion that would suggest that evidence or contraband related to Ms. Thomas arrest was inside her vehicle.

Your actions and/or inaction as described above are in violation of work rule, 4.2.33 / APD.SOP. 3020 (Search and Seizure) Section 4.3.1.

1. There is a constitutional preference for searches to be conducted pursuant to a warrant rather than without one. Searches conducted without a warrant are per se unreasonable and subject to only a few specifically well-delineated exceptions.

2. Probable Cause must exist to make a warrantless search. Specifically, to justify a warrantless search, two essential elements must exist:

   a. It must be established that the exigent circumstances at the time of the search were sufficient to require immediate action, which necessitated not complying with the restrictions of the warrant requirement of the Fourth Amendment.

   b. The manner and scope of the search that was conducted must be reasonably related to the justification of the search.

E. SHIELDS

TITLE AND NAME OF DISCIPLINARY AUTHORITY

5/16/19

EMPLOYEE'S SIGNATURE & DATE (Indicates receipt ONLY not agreement with action)

Form APD-834 revised 1/1/2000

DISCIPLINARY AUTHORITY SIGNATURE AND DATE

Sgt W/Dean 5/16/19

WITNESS SIGNATURE AND DATE

P.

**NOTICE OF PROPOSED ADVERSE ACTION     OPS CONTROL #: 19-C-0210-UAF**

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| HINES, JAMES | 3669 | | SGT |

## NARRATIVE (REASONS FOR EMERGENCY ACTION)

**GENERALLY:**   You are charged with violating Rule 4.2.33 of the Employee Work Rules of this Department. Said Rules states:

**Conformance to Directives**
**Employees are required to familiarize themselves with, and conform to, the rules, regulations, directives, and standard operating procedures of the Department.**

**SPECIFICALLY:** On May 1, 2019, you observed a vehicle at 657 Boulevard Northeast matching the description of a vehicle driven by suspects allegedly responsible for several crimes in Zone 6. You approached the vehicle which was occupied by Ms. Thomas and a child. You documented the tag information from the vehicle and checked the vehicle registration. You indicate to Ms. Thomas that the vehicle does not have active insurance. You left the location and returned moments later after learning that the registered owner of the vehicle possessed an active warrant for Failure to Appear on City of Atlanta traffic charges. Upon your arrival back to the location, you requested the driver's license of Ms. Thomas and request her to exit the vehicle. You attempted to handcuff Ms. Thomas and a struggle ensued. During your attempt to take Ms. Thomas into custody you administered your taser twice on Ms. Thomas in drive stun mode to gain compliance. At some point after handcuffing Ms. Thomas, you punched her in the face causing her to fall to the ground.

A review of Body Worn camera (BWC) footage of the incident revealed that during the detainment, struggle and arrest of Ms. Thomas you never informed Ms. Thomas of the active warrant for her arrest or reasons for her arrest as required by Atlanta Police Standard Operating Procedure.

Moreover, during your statement provided to OPS, you were asked if you confirmed that Ms. Thomas was the wanted person listed in the FTA city traffic warrant prior to using force to arrest her. You responded, "No".

By your actions you failed to conform to APD.SOP.3030 Arrest Procedures, section 4.1.6. which requires in pertinent part as follows: **#3. All persons will be treated courteously, humanely, and with regard for their legal rights. #5 At the time of the arrest, the arresting officer(s) will (b.) Inform the arrestee of the reason for their arrest.**

E. SHIELDS

TITLE AND NAME OF DISCIPLINARY AUTHORITY

DISCIPLINARY AUTHORITY'S SIGNATURE AND DATE

EMPLOYEE'S SIGNATURE & DATE (indicates receipt ONLY not agreement with action)

WITNESS SIGNATURE AND DATE

Form APD-834 revised 1/1/2000

P-____ - ____ - ____

**NOTICE OF PROPOSED ADVERSE ACTION**      **OPS CONTROL #: 19-C-0210-UAF**

| NAME (LAST, FIRST, MI) HINES, JAMES | 4 DIGIT ID 3669 | POSITION # | CLASSIFICATION SGT |
|---|---|---|---|

## NARRATIVE (REASONS FOR EMERGENCY ACTION)

**GENERALLY:** You are charged with violating Rule 4.1.1 of the Employee Work Rules of this Department. Said Rules states:

### Appropriate Action Required

1. Employees shall respond in an appropriate manner to all situations by:
2. Being considerate of the rights, feelings, and interests of all persons.

3. Taking action in each situation to provide the necessary and appropriate service and insuring the proper notification of supervisors when appropriate.

4. Requesting the assistance of supervisors when the appropriate action required is unclear, not possible given circumstances, or not within the scope of authority of the employee of whom such action was requested.

5. Performing official acts in a lawful, restrained, dignified, impartial, and reasonable manner.

**SPECIFICALLY:** On May 1, 2019, you encountered Ms. Maggie Thomas as she sat in her vehicle at 657 Boulevard Northeast accompanied by her young daughter. After a struggle, you arrested Ms. Thomas for a City of Atlanta (Municipal Court) FTA warrant and Disorderly Conduct. During the course of your interaction with Ms. Thomas, you administered your taser on Ms. Thomas twice to gain control of her and punched her in the face causing her to fall to the ground. Video footage of the incident show you refusing to answer reasonable questions posed to you by Ms. Thomas. Additionally, you are overheard telling Ms. Thomas it was none of her business as to why you were checking her vehicle tag.

Your refusal to answer reasonable questions posed by a citizen seem to only agitate the situation and reflected your inability and/or refusal to de-escalate the encounter. Your actions were not taken in a manner considerate of the rights, feelings, and interests of Ms. Thomas or her daughter, and your official acts were not performed in a lawful, restrained, impartial and reasonable manner.

Your actions in the aforementioned instance is contrary to APD.SOP 2010 (Work Rules), section 4.1.1 (Appropriate Action Required.

Your actions as described above are in direct violation of said listed work rules.

| | |
|---|---|
| *E. SHIELDS* | *EJIL* |
| TITLE AND NAME OF DISCIPLINARY AUTHORITY | DISCIPLINARY AUTHORITY SIGNATURE AND DATE |
| 5/16/19 | Sgt W. Dee 5/16/19 |
| EMPLOYEE SIGNATURE & DATE (indicates receipt ONLY not agreement with action) | WITNESS SIGNATURE AND DATE |

Form APD-834 revised 1/1/2000

Original to OPS, photocopy: to employee; to employee's supervisor; to Personnel and Human Resources; to Personnel Section (2) & to Chief of Police

ORDER OF EXTENSION OF TIME
FOR FURTHER INVESTIGATION AND/OR CONSIDERATION

RE: 19-C-0210-UAF

Pursuant to the Labor-Management Relations Ordinance, I am extending the prescribed time

period for further investigation and/or proper consideration of an Proposed Adverse Action

involving  Sgt. James Hines      .
            Name of Employee

This extension of time shall not exceed ten (10) days.  Accordingly, the proposed effective date of the

Adverse Action shall be extended to _____.

Date_____

_____

         Signature of Disciplinary Authority
              or Designee

# ATLANTA POLICE DEPARTMENT
## APPEAL WAIVER

**Sgt. James Hines**          OPS CONTROL #: **19-C-0210-UAF**

I, James Hines, accept full responsibility for violation of the following employee work or other rule(s) or ordinance(s): **4.2.50 Maltreatment or Unnecessary Force, 4.1.1 Appropriate Action Required, 4.2.33 Conformance to Directives (2 counts)**

Of the Atlanta Police Department or City of Atlanta, as outlined in Office of Professional Standards Complaint File Number 19-C-0210-UAF. I concur with the disciplinary action of:

imposed by the Atlanta Police Department in my disciplinary case. With this my concurrence, I voluntarily, without coercion or duress, waive any and all of the right(s) I may have to appeal the above described disciplinary action taken in this case, either to the Civil Service Board of the City of Atlanta, or by way of administrative grievance, or by use of any other administrative or judicial remedy that may be available to me.

### EMPLOYEE AND WITNESS SIGNATURES

EMPLOYEE SIGNATURE                          DATE

WITNESS SIGNATURE                           DATE

### APPROVED BY DISCIPLINARY AUTHORITY

DISCIPLINARY AUTHORITY SIGNATURE AND TITLE          DATE

P - _____ - _____ - _____

# MEMORANDUM

TO:        Major C. Tyus

FROM:    Lieutenant H. Zenelaj

DATE:    May 15, 2019

RE:        Investigation and Disposition
            **OPS File # 19-C-0210-UAF**

An investigation of the allegations of this complaint and any other allegations, which arose during the investigation, has been completed.

The following represents the findings of this investigation:

## I.        INVESTIGATIVE DISPOSITION

Of the Complaint against:                Sergeant James Hines

**[X] Sustained**                **4.2.50 Maltreatment or Unnecessary Force**

**[X] Sustained**                **4.1.1 Appropriate Action Required**

**[X] Sustained**                **4.2.33 Conformance to Directives**
                                            (APD.SOP.3030 Arrest Procedures 4.1.6)

**[X] Sustained**                **4.2.33 Conformance to Directives**
                                            (APD.SOP.3020 Search and Seizure 4.3 4.5.10)

## II.       POLICY OR PROCEDURAL CHANGES, TRAINING, RECOMMENDATIONS, AND/OR COMMENTS

The department requires an investigation into the allegation that Sergeant James Hines used unnecessary force during the arrest of Maggie Thomas on 5/2/2019.

The investigation did produce sufficient factual evidence to indicate that Sergeant James Hines did violate the listed work rules as alleged. Ms. Maggie Thomas alleged that Sergeant James Hines tried to arrest her, didn't tell her what she was being arrested for, tased her, threw her to the ground, placed his knee on her and punched her in the face during the arrest. Sergeant James Hines was on patrol on 5/1/2019 when he went behind the building located at 657 Boulevard Northeast. Sergeant Hines indicated that

he saw a vehicle that fit the description of a vehicle given out in a lookout by Investigator Olsen that may have been involved in thefts from auto in the Boulevard area. Sergeant Hines walked behind the vehicle obtain the tag number and spoke with the occupant of the vehicle Ms. Thomas as seen on BWC. BWC footage captures the interaction in which Ms. Thomas asks Sergeant Hines why he is running the vehicle and Sergeant Hines refused to answer her questions. Sergeant Hines stated that it wasn't any of her business about the investigation and that he didn't want to tip her off. Although it is understandable that Sergeant Hines would not want to jeopardize an investigation he may have been conducting by answering her questions as to why he was running her tag, Ms. Thomas' questions were not unreasonable and could have been answered in a general non-confrontational manner. Sergeant Hines' demeanor and sarcastic tone gives a strong indication that he is condescending to Ms. Thomas and takes that of a childish tone when he tells her "I'm, not telling you, cause I don't have to" (as captured on BWC) hardly the standard of professionalism that should be exhibited by a veteran Atlanta Police Officer or supervisor in Sergeant Hines' case. Sergeant Hines' choice of tone and demeanor when speaking to Thomas does nothing more than turn a casual police-citizen encounter contentious, and would stand to explain why, as Sergeant Hines stated, "Thomas became agitated at his presence". Not absolving her of responsibility of her own negative rhetoric (which does not start until Sergeant Hines takes a condescending sarcastic stance with her), Thomas does engage Sergeant Hines and makes reference to white police officers in the area, however Sergeant Hines' position as a police officer requires that he rise to a higher standard of professionalism than he exhibited in this instance. Sergeant Hines does not take into account Ms. Thomas' feelings rights or interests, nor those of her young child, when he spoke to her in the manner he chose to, nor does he exemplify the performing of official acts in a lawful, restrained, dignified, impartial, and reasonable manner, the manner expected of an Atlanta Police Sergeant, which places him in violation of *"APD.SOP.2010 Work Rules 4.1.1 Appropriate Action Required Employees shall respond in an appropriate manner to all situations by 1. Being considerate of the rights, feelings, and interests of all persons; 2. Taking action in each situation to provide the necessary and appropriate service and ensuring the proper notification of supervisors when appropriate; 3. Requesting the assistance of supervisors when the appropriate action required is unclear, not possible given circumstances, or not within the scope of authority of the employee of whom such action was requested; and 4. Performing official acts in a lawful, restrained, dignified, impartial, and reasonable manner."* After checking the vehicle registration status Sergeant Hines does call out to Ms. Thomas by name and she does respond to him as he tells her that the vehicle does not have active insurance in place. Sergeant Hines leaves the location but returns a short time later as he explained he forgot to run the registered owner and did so while he was gone from the scene, to learn that the registered owner may be wanted for failure to appear on a city traffic violation charge stemming from 2018. Sergeant Hines returned to the location and as he pulled into the parking lot voiced his pleasure stating "yeas, sweet" and tells the dispatcher "that's affirmative radio she still back here" (as captured by BWC footage) referring to Ms. Thomas still beig at the location with her vehicle.

During the arrest of Maggie Thomas, Sergeant Hines BWC footage shows and confirms that Sergeant Hines approaches Thomas, asks for her driver's license and

never tells Thomas that she is wanted, under arrest, nor does he tell her what she is under arrest for, placing Sergeant Hines in violation of *"APD.SOP.2010 Work Rules 4.2.33 Conformance to Directives 1. Employees are required to familiarize themselves with, and conform to, the rules, regulations, directives, and standard operating procedures of the Department.* with the specific violated policy being *"APD.SOP.3030 Arrest Procedures 4.1.6 Arrest Procedures 1. Employees will use only that force which is reasonable and necessary to effect an arrest or restraint and to ensure the safety of the arrestee, the officers, and others. 2. Only restraining devices issued by the Department and techniques authorized by the Training Unit will be utilized in the restraint, transportation, and detention of arrestees.* <u>*3. All persons will be treated courteously, humanely, and with regard for their legal rights.*</u> *4. Handcuffs should be used whenever a suspect is physically arrested, both at the time of arrest and during transport, regardless of the offense being charged. Handcuffs will be applied before a person is searched and should be double locked, with the arrestee's hands placed behind the back. Arrestees should remain handcuffed until placed in the custody of the appropriate detention facility personnel. 5.* <u>*At the time of arrest, the arresting officer(s) will: a. Identify himself or herself as a police officer, visually and/or verbally; b. Inform the arrestee of the reason for their arrest; c.*</u> *Handcuff the person with the handcuffs "double locked"; d. Immediately upon handcuffing, pat down the arrestee for weapons; e. As soon as reasonable and practical, but prior to being transported or placed in a vehicle or secure location, search the arrestee for weapons and/or contraband."* Ms. Thomas' line of questions inquiring about why she was being handcuffed and arrested is not unreasonable and Sergeant Hines was obligated to notify her of her imminent arrest. At no time during the ensuing struggle does Sergeant Hines, attempt to deescalate the situation by trying to communicate the reason for Thomas' detention and/or arrest nor did he appear to take into consideration that Thomas' young child was in the vehicle and present for the entirety of the incident. Sergeant Hines confirms in his OPS statement that he was not absolutely sure of Ms. Thomas' identity nor was she was positively identified as the wanted person he received a wanted notification on (prior to him making the arrest), until he checked her driver's license photo via Omnixx (after the arrest) on his in-car computer, an action Sergeant Hines should have taken prior to trying to affect the arrest on Thomas. Sergeant Hines does elude to having called her by first name (as seen on his BWC footage) during his first encounter with her as he notifies her that her vehicle is uninsured; however, this would hardly amount to that of a positive identification of the wanted person and rises to the equivalence of an assumption or a hunch by Sergeant Hines, as to her identity. It was during this seizure and arrest of Ms. Thomas, after placing one handcuff on her left wrist, a struggle ensued, and Sergeant Hines allows Thomas to remain partially inside of the vehicle as her daughter held on to her other arm. Sergeant Hines did call for a backup unit to come and assist on the warrant arrest, however, as he indicated in his report he feared she would get away. Rather than wait for his back up unit to arrive, Sergeant Hines elected instead to move in and make the arrest alone, on charges of a traffic warrant for failing to appear in city court. It should be noted as indicated previously that during their initial encounter, Sergeant Hines demeanor toward and responses to Thomas and her questions and conversation was condescending in nature, which very well contributed to the provoking and escalating nature of this encounter. As seen on BWC footage Sergeant Hines is able to remove Ms. Thomas from the

vehicle and throw her on the ground where his body worn camera falls only capturing sound and a distorted view of the incident. While on the ground as seen on the video provided by a citizen on the scene, Sergeant Hines administered his taser twice in drive stun mode in order to gain compliance from Thomas as he orders her to place her hands behind her back, which she does. When asked about how he was positioned over Thomas while she was on the ground Sergeant Hines stated: "oh, I don't know". Once handcuffed Sergeant Hines stands Thomas up and as he stated in his report she bent over and tried to bite his right hand to which he responded by punching Thomas in the face causing her to fall to the ground. Sergeant Hines indicated in his report that he did not have any visible injury to his hand (as seen in the crime scene photos) nor did he seek treatment for the alleged bite. During his statement to OPS, Sergeant Hines indicated that Ms. Thomas attempted (described what amounts to an attempt) to bite his hand and "barely got her teeth on me" at which point he reacted and punched her in the face. When asked if he had a firm grip control of Thomas and was asked to describe how he was controlling Ms. Thomas once she was in handcuffs, Sergeant Hines simply answered, "I don't know". When asked if Thomas latched onto his hand with her bite, Sergeant Hines indicated "no". When Sergeant Hines was asked if he was still in danger of being bitten when he punched Thomas he stated, "I don't know". The absence of notification that she is under arrest, the ensuing struggle and the post-arrest punch to Thomas' face present an unreasonable application of force in this instance. Furthermore, Punching Thomas to the face while in handcuffs indicates that Sergeant Hines' strike was punitive in nature and places him in violation of *"APD.SOP.2010 Work Rules 4.2.50 Maltreatment or Unnecessary Force" which stipulates "1. Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property 2. Employees shall only use that force which is <u>reasonable and necessary to effect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself/herself or another from physical assault, or to accomplish other lawful objectives.</u> The reasonableness inquiry refers to whether the employee's actions are "objectively reasonable" in light of the facts and circumstances confronting him or her, without regard to their underlying intent or motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation (Graham v. Connor, 490 U.S. 386 (1989)."*

Sergeant Hines gave no indication in his report or his statement to OPS as to his reasoning for searching Thomas' vehicle absent a search warrant other than to say he was looking for the keys or her identification. A plain view search of the vehicle would have sufficed for this purpose, however further intrusion required a search warrant as the vehicle was no longer at risk of going mobile nor was there an exigency to support an immediate search without a warrant. If Sergeant Hines truly believed that the vehicle might be one in the same as the vehicle he indicated that he believed was being used in thefts from vehicles in the area of Boulevard, he should have made every effort to secure a search warrant prior to the search in the event fruit of the aforementioned crimes were located, limiting the risk of suppression should this have been presented in court for the future prosecution of these theft-related crimes. Ms. Thomas was not

operating the vehicle at the time of the encounter with Sergeant Hines, nor was she arrested for a crime involving the vehicle at the time she was arrested.

Sergeant Hines never indicates in his report or his statement to OPS that his search of the vehicle was meant to safeguard or inventory the vehicle to ensure that any valuable items were rendered safe. Sergeant Hines ultimately leaves the vehicle where it was located after locking the doors, never impounding it nor does he conduct an inventory for valuables that may have been placed at risk of future theft. There is no indication that probable cause to search the vehicle existed as the crimes involved in this specific instance was a warrant for the arrest of Thomas and the following obstruction charge that arose during the arrest. Neither of the charges indicate that the vehicle would contain contraband related to the arrest, furthering the necessity for a search warrant as the vehicle was similar in make and model to the vehicle involved in thefts in the area, which in itself should have indicated to Sergeant Hines that a requirement for a warrant to conduct a search of the interior and additional compartments of the vehicle should have been obtained. Sergeant Hines never dispels nor confirms if this vehicle is one in the same as the suspect vehicle but does indicate in his statement that the suspect vehicle was driven and occupied by two black males and had a drive out tag affixed to the rear. Sergeant Hines does indicate that this vehicle could very well have had a drive out tag affixed to it as this is common with these types of crimes and the vehicles used to commit them but never furthers his investigation. Sergeant Hines' failure to adhere to the established department policy garnering vehicle searches places him in violation of *"APD.SOP.2010 Work Rules 4.2.33 Conformance to Directives 1. Employees are required to familiarize themselves with, and conform to, the rules, regulations, directives, and standard operating procedures of the Department."* with the specific directive violated being *"APD.SOP.3020 Search and Seizure 4.3 Searches without a warrant 4.3.1 Generally 1. There is a constitutional preference for searches to be conducted pursuant to a warrant rather than without one. Searches conducted without a warrant are per se unreasonable and subject to only a few specifically well-delineated exceptions. 2. Probable Cause must exist to make a warrantless search. Specifically, to justify a warrantless search, two essential elements must exist: a. It must be established that the exigent circumstances at the time of the search were sufficient to require immediate action, which necessitated not complying with the restrictions of the warrant requirement of the Fourth Amendment. b. The manner and scope of the search that was conducted must be reasonably related to the justification of the search. 3. In a lawful search without a warrant, officers may seize any contraband, stolen property, or mere evidence of a crime which is in plain view and which is immediately recognizable as such, provided that the scope of the search was strictly tied to and justified by the circumstances that rendered it permissible when initiated. In this case, the officer/investigator should make every effort to "Freeze" the scene and obtain a warrant before searching the premises more thoroughly. 4.5.10 Vehicles 1. The following exceptions or limitations may apply to the rule requiring a search warrant for a motor vehicle: a. Search incident to a lawful arrest where evidence of the offense may be present inside the vehicle or if an unrestrained arrestee must be left inside the vehicle and may access weapons. b. When there is probable cause to search; c. When the car is impounded or placed in storage; d. When there is consent to the search; e. Search of a car at or near a border of the United States; or f. Search of an abandoned vehicle. 2. Officers*

*may search a motor vehicle without a warrant, by consent, or when the following two factors exist simultaneously: a. The officer has probable cause to believe that evidence or contraband is contained in the vehicle or containers therein. b. The officer possesses knowledge that the motor vehicle has the capability to become mobile. 3. When there is a reasonable and articulable suspicion that a vehicle contains illegal drugs, an officer is authorized to walk a drug dog around the vehicle to see if the dog alerts for drugs. If the dog alerted for drugs, that factor, combined with the other factors prompting the use of the drug dog may establish probable cause authorizing the search of the vehicles interior. 4. An officer who has made a lawful arrest of an occupant of a motor vehicle may, at the time of that arrest, search the passenger compartment of that vehicle. This right to search also applies to containers located in the passenger compartment. An officer may search a vehicle incident to the lawful arrest of an occupant if the arrest offense leads to the belief that evidence of the offense may be found in the vehicle. An officer may also search a vehicle incident to arrest if the arrestee is left unrestrained inside the vehicle beyond the point of arrest and the officer must search the vehicle in order to prevent the arrestee from accessing weapons. Since allowing arrested persons unrestrained movement compromises officer safety, this exception is generally prohibited. See APD SOP 3030 "Arrest Procedures", section 4.1.6. 5. Officers may search a stopped automobile without a warrant if there is probable cause to believe that contraband or other evidence of crime is within the vehicle and it is not practicable to secure a search warrant. The probable cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the officer. 6. When probable cause exists, officers may search every part of the vehicle and its contents that may conceal contraband. The scope of the warrantless search of a vehicle is not defined by the nature of the container in which the contraband is secreted; rather it is defined by the object of the search and the places in which there is probable cause to believe the contraband may be found. 7. When a driver is arrested, and there is probable cause to believe that evidence pertaining to the crime is in the vehicle, the officer may require passengers to get out so that the officer can safely and effectively search the vehicle. Officers may search the passengers based on probable cause to arrest as a search incident to a lawful arrest. 8. Abandoned vehicles may be searched without a warrant as the owner has no standing or expectation of privacy. A vehicle may be temporarily abandoned, may be abandoned if given to another person, by leaving at a location for an unreasonable period of time, or after the driver of that vehicle flees the vehicle. 9. Officers may conduct an inventory of an impounded vehicle for the purpose of: a. Protecting the owner's property while they are in custody or elsewhere; b. Protecting the officer against claims of the owner for alleged missing property; c. Protecting the public and the police from illegal weapons which might be contained in the car; d. Determining whether the vehicle has been stolen 10. In conducting an inventory, an officer may check all areas of the automobile for which reasonable probable cause exists to believe might contain any of the items to be inventoried. Inventory searches serve two purposes: a. To protect the vehicle and the property in it; or b. Safeguard the officer or other officers from claims of lost possession.*

Sergeant Hines was not able to confirm the status of the warrant on the night of the arrest, but Atlanta Municipal court confirmed that the warrant was active for failure

to appear on previous traffic charges Thomas was cited for in 2018. Atlanta Municipal court also confirmed that the traffic charges that the warrant was issued for along with the obstruction charge stemming from this arrest, are set to be heard in city court on 6/20/2019.

Based upon my review of this investigation, I recommend that the allegation against Sergeant James Hines for the alleged violation of work rule **4.2.50 Maltreatment or Unnecessary Force** be **Sustained.**

Based upon my review of this investigation, I recommend that the allegation against Sergeant James Hines for the alleged violation of work rule 4.1.1 Appropriate Action Required be Sustained.

Based upon my review of this investigation, I recommend that the allegation against Sergeant James Hines for the alleged violation of work rule **4.2.33 Conformance to Directives** (APD.SOP.3030 Arrest Procedures 4.1.6)be **Sustained.**

Based upon my review of this investigation, I recommend that the allegation against Sergeant James Hines for the alleged violation of work rule **4.2.33 Conformance to Directives** (APD.SOP.3020 Search and Seizure 4.3 4.5.10) be **Sustained.**

_____
Lieutenant H. Zenelaj
Commander, Internal Affairs Unit

This Investigation is:     [✓] Approved     [ ] Disapproved

By:     _____     _____
            Major C. Tyus                                    5/15/2019
            OPS Commander                                    Date

Comments: _____

# ATLANTA POLICE DEPARTMENT
## DISCIPLINARY COMPLAINT FOLDER INDEX

EMPLOYEE NAME:   James HINES       OPS CONTROL #: 19-C-0210-UAF

| Item No. | Item | Number of Pages | Initials | Date |
|---|---|---|---|---|
| 1 | Disciplinary Complaint Folder Index | 1 | | 05/15/19 |
| 2 | Supervisor Complaint Investigation Checklist | 1 | | 05/15/19 |
| 3 | Preliminary Complaint Form | 1 | | 05/13/19 |
| 4 | Complaint Transmittal Summary Memorandum | 13 | | 05/14/19 |
| 5 | OPS Preliminary Investigative Summary | 1 | | 05/03/19 |
| 6 | Complainant Statement | 8 | | 05/03/19 |
| 7 | Accused Officer / Sgt. James Hines | 15 | | 05/12/19 |
| 8 | Witness (es) Statement (s) / Salirian Thomas | 1 | | 05/13/19 |
| 9 | Witness (es) Statement (s) / Off. Dekonti Davis | 4 | | 05/14/19 |
| 10 | Atlanta Police Incident Report #: 18-026-1243 | 3 | | 05/01/19 |
| 11 | Copy of Arrest Citations / Arrest Warrant | 2 | | 05/14/19 |
| 12 | Communications Audio / Request for Tape Recordings | 1 | | 05/13/19 |
| 13 | Use of Force Report / Lt. Bighon | 4 | | 05/13/19 |
| 14 | Sergeant Hines' Body Worn Camera Footage #1 & 2 | 1 | | 05/13/19 |
| 15 | Salirian Thomas' Cellphone Video | 1 | | 05/03/19 |
| 16 | Officer Dekonti Davis' Body Worn Camera | 1 | | 05/13/19 |
| 17 | Photographs of Ms. Thomas' injuries /Ms. Thomas | 1 | | 05/03/19 |
| 18 | Photographs of / Atlanta Police ID Unit | 1 | | 05/13/19 |
| 19 | 911 Communications Audio Tape | 1 | | 05/14/19 |
| 20 | Larceny Email / Investigator Mark Olson | 1 | | 05/14/19 |
| 21 | Relief From Duty Form #: 19-C-0210-UAF | 1 | | 05/12/19 |
| 22 | Axon Audit Trail Video / Sgt. J. Hines BWC | 7 | | 05/13/19 |
| 23 | Atlanta Police Calls for Service Log | 5 | | 05/13/19 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## P- 1 - 1 - 1

## ATLANTA POLICE DEPARTMENT
## SUPERVISOR COMPLAINT INVESTIGATION CHECKLIST

EMPLOYEE NAME: James HINES                    OPS CONTROL #:19-C-0210-UAF

### INVESTIGATIVE FOLDER

| | |
|---|---|
| X | 1. Disciplinary Complaint Folder Index |
| X | 2. Supervisor Complaint Investigation Checklist |
| X | 3. Preliminary Complaint Form (For all formal complaints) |
| X | 4. Citizen Statements (Where applicable) |
| X | 5. Employee Statements |
| | 6. Complaint Investigation Disposition Form (Command Investigations) OR |
| X | Complaint Transmittal Summary Memorandum (OPS Investigations) |
| | 7. Any Supporting Documentation (See below list) |

| | | | | |
|---|---|---|---|---|
| X | Offense Report | | | Lab Results |
| | Accident Report | | X | Photos |
| | Medical Release | | X | Video Tape/Audio Tape |
| | Other: time sheets | | | Other: Daily Activity Sheet; Horizon printout |

_Gantrell Walton_                    _May 15, 2019_
**Investigation Completed By**              **Date Completed**

### DETERMINE DISCIPLINARY ACTION

_____ 8. Disciplinary Worksheet (Filled out by supervisor)

### NON-ADVERSE ACTION

_____ 9. Oral Admonishment given to (Employee) _____ by

(Supervisor) _____ for rule _____ on

_____ 10. Written Reprimand given to (Employee) _____ by

(Supervisor) _____ for rule _____ on

I have received a copy of this form. _____ on _____
                              (Employee Name)        (Date)

### ADVERSE DISCIPLINARY ACTION

_____ 11. Notice of Proposed Adverse Action (NPAA) issued          (Date) _____

_____ 12. Extension of time form (When applicable)

_____ 13. Notice of Final Adverse Action (NFAA) issued          (Date) _____
        NFAA issued by (Name)

### PROACTIVE CORRECTIVE ACTION

_____ 14. Memorandum on Corrective Action (If applicable, includes counseling)

_____ 15. Training given on _____ for _____

_____ 16. Other

 

# ATLANTA POLICE DEPARTMENT
## PRELIMINARY COMPLAINT FORM

| [X] OPS INVESTIGATION | [ ] COMMAND INVESTIGATION | COMPLAINT NUMBER 180261243 | OPS CONTROL NUMBER 19-C-0210-UAF |
|---|---|---|---|

| DATE & TIME COMPLAINT RECEIVED | | | DATE OF INCIDENT | | | | ADDRESS OF OCCURRENCE |
|---|---|---|---|---|---|---|---|
| MO | DAY | YR. | TIME | MO | DAY | YR. | TIME |
| 05 | 13 | 2019 | 0829 | 05 | 01 | 2019 | 1839 |

ADDRESS OF OCCURRENCE
### 653 BOULEVARD NE
### ATLANTA, GA 30308

**BRIEFLY DESCRIBE ALLEGATIONS**

| AUDIO AND VIDEO TAPES THAT ARE PART OF THIS FILE | | |
|---|---|---|
| VIDEO TAPES OF INTERVIEWS | AUDIO TAPES OF 911 RADIO | OTHER TAPES |

THE DEPARTMENT REQUESTS AN INVESTIGATION INTO THE ALLEGATION THAT SERGEANT JAMES HINES USED UNNECESSARY FORCE DURING THE ARREST OF THE COMPLAINANT ON 05/01/2019.

APD.SOP.2010/4.2.50    MALTREATMENT OR UNNECESSARY FORCE

"C" FOR COMPLAINANT, USE "P" FOR PARENT OR GUARDIAN, USE "W" FOR WITNESS, USE "S" FOR SUPERVISOR

| CODE | NAME (LAST, FIRST, MI) | RACE | SEX | DOB |
|---|---|---|---|---|
| C | THOMAS, MAGGIE MALIKA | B | F | 07/22/1988 |

| RESIDENT ADDRESS | CELL PHONE | BUSINESS PHONE |
|---|---|---|
| 657 BOULEVARD NE #125 ATLANTA, GA 30308 | | |

| DESCRIBE INJURIES | HOSPITAL TAKEN TO | PHOTO ID #. | SUSPECT WEAPON | WEAPON SERIAL # |
|---|---|---|---|---|
| | - | - | - | - |

| BIASED BASED INCIDENT DESCRIPTION | TYPE OF BIASED ALLEGATION | | | | |
|---|---|---|---|---|---|
| | AGE | RACE | SEXUAL ORIENTATION | GENDER | CLASS |
| N/A | - | - | - | - | - |

| CODE | NAME (LAST, FIRST, MI) | RACE | SEX | DOB |
|---|---|---|---|---|
| W | | | | |

| RESIDENT ADDRESS | CELL PHONE | BUSINESS PHONE |
|---|---|---|
| | | |

| DESCRIBE INJURIES | HOSPITAL TAKEN TO | PHOTO ID #. | SUSPECT WEAPON | WEAPON SERIAL # |
|---|---|---|---|---|
| | - | - | - | - |

| BIASED BASED INCIDENT DESCRIPTION | TYPE OF BIASED ALLEGATION | | | | |
|---|---|---|---|---|---|
| | AGE | RACE | SEXUAL ORIENTATION | GENDER | CLASS |
| N/A | - | - | - | - | - |

| ACCUSED #1 NAME (LAST, FIRST, MI) | RANK | RACE | SEX | DOB | DOE | 4 DIGIT ID NO |
|---|---|---|---|---|---|---|
| HINES, JAMES | SGT | W | M | 04/06/77 | 12/03/02 | 3669 |

| ASSIGNMENT | | | DUTY STATUS | | | | FIREARMS DISCHARGE ONLY | | |
|---|---|---|---|---|---|---|---|---|---|
| DIVISION | SECTION | WATCH | ON DUTY | OFF DUTY | TMP ASGN | XTRA JOB | WEAPON | WEAPONS SERIAL # | # SHOTS |
| FOD | Z6 | EW | X | - | - | - | - | - | - |

| DESCRIBE INJURIES | HOSPITAL TAKEN TO | PHOTO ID NO. | TYPE OF DRUG TEST |
|---|---|---|---|
| NONE | - | - | - |

| ACCUSED #2 NAME (LAST, FIRST, MI) | RANK | RACE | SEX | DOB | DOE | 4 DIGIT ID NO |
|---|---|---|---|---|---|---|
| | | | | | | |

| ASSIGNMENT | | | DUTY STATUS | | | | FIREARMS DISCHARGE ONLY | | |
|---|---|---|---|---|---|---|---|---|---|
| DIVISION | SECTION | WATCH | ON DUTY | OFF DUTY | TMP ASGN | XTRA JOB | WEAPON | WEAPONS SERIAL # | # SHOTS |
| | | | | | | | - | - | - |

| DESCRIBE INJURIES | HOSPITAL TAKEN TO | PHOTO ID NO | TYPE OF DRUG TEST |
|---|---|---|---|
| | - | - | - |

| SUPERVISOR RECEIVING COMPLAINT | INVESTIGATOR ASSIGNED | DATE ASSIGNED | DATE COMPLETE |
|---|---|---|---|
| SGT. W. DEAN | INV. G. WALTON | 05/13/19 | |

Form APD-822 revised 1/1/2000          P  -  3  -  1    1



# City of Atlanta     Internal Correspondence
### Atlanta Police Department

**TO:**     **LIEUTENANT H. ZENELAJ**
**INTEGRITY UNIT**
**OFFICE OF PROFESSIONAL STANDARDS**

**I.**     **COMPLAINT CONTROL NUMBER:**     19-C-0210-UAF

    **A.**     **DATE OF COMPLAINT:**     May 13, 2019

    **B.**     **DATE OF OCCURRENCE:**     May 1, 2019

    **C.**     **COMPLAINT:**     APD.SOP.2010/WR: 4.2.50 Maltreatment or Unnecessary Force

    **D.**     **COMPLAINANT:**     Maggie Thomas

    **E.**     **ACCUSED:**     Sergeant James Hines

    **F.**     **WITNESS(ES):**     Salirian Thomas
Officer Dekonti Davis

**II.**     **DOCUMENTS:**

    A.  See Investigative Index

**III.**     **INVESTIGATIVE SUMMARY:**

    **A.**     **COMPLAINT ALLEGATION:**

The Department requires an investigation on the allegation that Sergeant James Hines used unnecessary force during the arrest of the complainant (Maggie Thomas) on May 1, 2019.

B.      **COMPLAINANT STATEMENT:**

<u>Maggie Thomas</u>
Ms. Thomas stated it was May 1, 2019, on a Wednesday afternoon at approximately 7:30 pm that Sergeant Hines came to the back parking lot of her residence at 657 Boulevard NE. Ms. Thomas said that she was sitting inside of her vehicle (silver Infinity FX), the engine was off, and she didn't have the keys on her at that time. Ms. Thomas stated that she was on her cell phone and her daughter was playing in the parking lot when Sergeant Hines got out of his car, walked to the rear of her vehicle and got back in his car while smirking.

Ms. Thomas said that Sergeant Hines let his window down and asked her if she allowed someone else to drive her car? Ms. Thomas stated that she advised him, "No, why would you ask me that?" Ms. Thomas said that Sergeant Hines replied: "No reason I just asked." Ms. Thomas stated that Sergeant Hines repeated his question, and her answer was the same as before.

Ms. Thomas said that Sergeant Hines asked if he was bothering her by asking her questions. Ms. Thomas stated that she told him, no, but she wanted to know why was he asking. Ms. Thomas said that she told him it was odd that he pulled in back of her apartment building without knowing if he received a call, but he just came directly to her car and looked at her tag. Ms. Thomas stated that she was sure that Sergeant Hines ran her license plate because he called her by name (Ms. Thomas). Ms. Thomas said that Sergeant Hines told her that her vehicle wasn't insured, and she told him that was the reason the vehicle was parked.

Ms. Thomas stated that she again asked Sergeant Hines what his reason for questioning her was, and he did not answer. Ms. Thomas said that she asked, "You don't have to answer me?" and he replied, "No, I'm just not gonna answer." Ms. Thomas stated that she requested his supervisor's information, and he gave her the name of Vasquez (Major) and some other person she guessed was the captain. Ms. Thomas said she asked for a supervisor to respond on the scene and Sergeant Hines told her that they were not at work and she could search Google for information about the Zone Six Precinct and call on the following day.

**INVESTIGATIVE SUMMARY:**
**ACCUSED:**
**DATE:**
**PAGE 3**

#: 19-C-0210-UAF
SGT. JAMES HINES
May 14, 2019

Ms. Thomas stated that Sergeant Hines advises her to have a good and drives away.

Ms. Thomas said Sergeant Hines returned about 10 to 15 minutes later and got out of his car and asks her for her name. Ms. Thomas stated that she looked confused because Sergeant Hines had already called her by her name and told her that her car wasn't insured during their first encounter. Ms. Thomas said that Sergeant Hines already knew her name, and he asked for an identification card or a driver's license. Ms. Thomas stated that she told Sergeant Hines her purse was in the house, and he said: "So you're not gonna tell me your name?" Ms. Thomas stated that she replied: "You already know my name." Ms. Thomas said that she was upset and asked Sergeant Hines, "Why are you bothering me?" Ms. Thomas stated that she stepped out of the car, but her cellphone was still connected to a friend who was listening, and the friend asked: "Are you being arrested." Ms. Thomas said that Sergeant Hines replied: "Well now she is," and he grabs her arm.

Ms. Thomas stated that her baby (daughter) is holding onto her, and Sergeant Hines pulls out his taser and sticks it in her back while her friend is still on the phone. Ms. Thomas said that Sergeant Hines told her to give him her arm and hang up the phone. Ms. Thomas stated that she was not going because she didn't trust Sergeant Hines at this point, and she dialed 911, activated the speakerphone, and threw the phone over on the passenger seat of her vehicle. Ms. Thomas said that was speaking to the operator (911) as she is struggling with Sergeant Hines and he's still trying to get her handcuffed. Ms. Thomas stated that Sergeant Hines threatens to tase her if she didn't let go (of her daughter's hand) and she yells for the operator to get someone out to her location because she was being arrested by a white officer in a black neighborhood and he's by himself.

Ms. Thomas said that the operator advised her to calm down, she said that Sergeant Hines had her pinned up against her daughter and he threatens to tase her while her baby is present. Ms. Thomas stated that Sergeant Hines said "You gonna make me do it," and he hits her with the taser. Ms. Thomas said that her daughter let go of her arm. Sergeant Hines placed her in a chokehold, threw her on the ground and put his foot on her back to handcuff her. Ms. Thomas stated by this time, people were coming outside, and the footage was captured on video.

Ms. Thomas said that Sergeant Hines tries to walk her to his car and she resisted because she did not want to be alone with him, she told him she wasn't going anywhere until he another officer arrived on the scene. Ms. Thomas stated that

Sergeant Hines punched her in her left eye, put her in another chokehold and threw her back on the ground where he tases her again while she's handcuffed.

Ms. Thomas said at that time, two other officers (Davis and Rhames) arrived and ran over to her and asked her to calm down. Ms. Thomas stated that she is a 30-year-old female, and Sergeant Hines is a white police officer who weighed more than 200 pounds beat her up.

Ms. Thomas said that she placed in the back seat of a patrol car and she continued to ask why was she being arrested and no one tells her until she is approached by a Captain (Clay). Ms. Thomas stated that Captain Clay advised her that she was arrested because she had an FTA (failure to appear) traffic warrant for a speeding ticket, which was issued back in February. Ms. Thomas said that Captain Clay advised her that the warrant could not be confirmed, but it shows in the system.

Ms. Thomas stated that she was beaten up over a traffic ticket and if he (Sergeant Hines) would have said "Ms. Thomas you have a warrant for your arrest for an FTA," she would've compiled from the beginning without hesitation. Ms. Thomas said that her 4-year-old baby was out there and she was arrested and beat up for a $300 traffic ticket.

Ms. Thomas stated that she was provoked in the situation, now she's being charged in something that she had no control over while in the comfort of her home, and she still doesn't know why Sergeant Rines came back there (parking lot).

Ms. Thomas said that because the warrant could not be confirmed, she was charged with disorderly conduct and sent to the pretrial detention.


C.      ACCUSED EMPLOYEE'S RESPONSE:


**Sergeant James Hines**
Sergeant Hines stated that he is a supervisor and that he is currently assigned to the Zone Six Evening Watch.

Sergeant Hines stated that on May 1, 2019, he was on patrol and went behind the apartments at 657 Boulevard Northeast, and saw a black female sitting in a silver Infinity E35 bearing license plate #: RIV7561. Sergeant Hines said that he had received an earlier lookout on a silver infinity. Therefore he pulled out on the radio to speak with the driver (Maggie Thomas). Sergeant Hines said that he asked

**INVESTIGATIVE SUMMARY:**
**ACCUSED:**
**DATE:**
**PAGE 5**

**#: 19-C-0210-UAF**
**SGT. JAMES HINES**
**May 14, 2019**

Ms. Thomas if the car was hers, and she said it was. Sergeant Hines stated that he told her that the vehicle was uninsured and not to drive it. Sergeant Hines said that Ms. Thomas became agitated and asked him why was he looking at her car and what was he doing behind her apartment. Sergeant Hines stated that he told Ms. Hines that he wasn't going to say to her why he was checking her car out. Sergeant Hines said Ms. Thomas asked him for his supervisor's names and he gave her the information about his lieutenant, captain,major, and that he worked in Zone Six. Sergeant Hines stated that Ms. Thomas wanted to know if the major was black or white, and he gave her the information and left the parking lot.

Sergeant Hines said that he wondered why Ms. Thomas was so agitated at his mere presence and ran her name, and she came back with a warrant for her arrest from the City of Atlanta for a Failure To Appear on a speeding ticket. Sergeant Hines stated that he requested back up from Unit #3604 (Davis) and headed back to 657 Boulevard to make sure that Ms. Thomas wasn't going to get away.

Sergeant Hines said that he entered the parking lot and saw Ms. Thomas still sitting inside her car with her daughter, who was standing in the passenger's seat. Sergeant Hines stated that he asked Ms. Thomas for her driver's license, and she did not have it. Sergeant Hines said he asked Ms. Thomas her name, and she refused to tell him while talking on her cellular phone. Sergeant Hines said that he asked Ms. Thomas to get off the phone, and she refused to do so. Sergeant Hines stated that he took one of her hands and handcuffed it, he then asked her for her other hand, and she did not comply. Sergeant Hines said that Ms. Thomas grabbed onto her daughter  while dialing the phone with the other hand. Sergeant Hines stated that he held Ms. Thomas' left arm behind her back and asked the dispatcher to advise Unit #3604 to hurry up. Sergeant Hines said that he could not take Ms. Thomas to the ground because of her daughter. Therefore he had to continue to hold her hand behind her back until back up arrived while Ms. Thomas was on the phone with 911 telling them to send an officer.

Sergeant Hines stated that one of the ladies (Salirian Thomas) that came out got Ms. Thomas' daughter and phone. Sergeant Hines said he took Ms. Thomas to the ground, and she still refused to give him her right hand, and he took out his Taser and drive stunned her on her back. Sergeant Rines stated that Ms. Thomas began to comply, and he eventually got both of her hands handcuffed.

Sergeant Hines said that as he was standing Ms. Thomas up and walking her to his car, she began to resist again and said that she was not getting in his police car.

**INVESTIGATIVE SUMMARY:**                    **#: 19-C-0210-UAF**
**ACCUSED:**                                  **SGT. JAMES HINES**
**DATE:**                                     **May 14, 2019**
**PAGE 6**

Sergeant Hines stated that Ms. Thomas continued to struggle as he attempted to direct officers to his location, while she was still struggling with him, she bent over and bit him on his right hand. Sergeant Hines said that he immediately punched Ms.Thomas in the face and she fell to the ground. Sergeant Hines stated that Officer Davis and Officer Rahmes arrived on the scene and were able to take control of Ms. Thomas. Sergeant Hines said that Ms. Thomas continued to fight the officers and refused to get in his police car, but she did get into the back of Officer Davis' vehicle.

Sergeant Hines stated that he searched Ms. Thomas' vehicle and did not find her ID or keys to the car. Sergeant Hines said that he secured the car and left it in the parking lot, and they relocated to 536 North Avenue at the Pinnacle Credit Union. Sergeant Hines stated that he was able to confirm Ms. Thomas' identity from a driver's license picture from OMNIX. However, he was not able to confirm the warrant due to the computers being down for the City of Atlanta. Sergeant Hines said that he charged Ms. Thomas with Disorderly Conduct, Physical Obstruction 106-817, and he called Grady EMS 518 to treat Ms. Thomas' injuries. Sergeant Hines said that he also called ID out to take photographs of Ms. Thomas swollen left eye and pictures of his right hand that had noticeable bite marks.

Sergeant Hines stated that Captain Clay was on the scene and spoke with Ms. Thomas, and afterward, she was transported to the city jail.

Sergeant Hines said that he did not tell Ms. Thomas why he was questioning her, and he did not tell her she was under arrest. Sergeant Hines stated later in the interview that Ms. Barely got teeth on him because he yanked his hand out before she had the chance to hurt him. Sergeant Hines said that he didn't know if he was in danger when he punched Ms. Thomas in the face.

Sergeant Hines stated that he didn't feel anything when he punched Ms. Thomas in the face. He said it was just his reaction.

**INVESTIGATIVE SUMMARY:**
**ACCUSED:**
**DATE:**
**PAGE 7**

**#: 19-C-0210-UAF**
**SGT. JAMES HINES**
**May 14, 2019**

**D.**  **WITNESSES STATEMENTS:**

<u>**Salirian Thomas**</u>
Ms. Thomas stated that she was the cousin of Maggie Thomas, and she was at the scene during the incident. Ms. Thomas said that she recorded the event and witnessed Officer Hines (sergeant) on top of Maggie while she was face down on the ground in handcuffs. Ms. Thomas stated that he (Sergeant Hines) tased Maggie 3 times in her back, and she asked him why he was going that, and he stopped. Ms. Thomas said Sergeant Hines then picked Maggie up off the ground and punched her in her left eye while throwing her back on the ground, landing on her back. Ms. Thomas stated that Sergeant Hines absolutely used too much force, and unnecessarily abused Ms. Thomas while she was handcuffed.

<u>**Officer Dekonti Davis**</u>
Officer Davis stated that he is a Senior Patrol Officer and assigned to the Zone Six Evening Watch.

Officer Davis said that on May 1, 2019, he responded to 657 Boulevard to assist Sergeant Hines. Officer Davis stated that he observed Sergeant Hines forcefully plant Ms. Thomas face first onto the concrete while she was handcuffed, but he did not see him punch her in the face.

Officer Davis stated that he saw abrasions and redness on the left side of Ms. Thomas' face, and he firmly believes that Ms. Thomas' eye turned black. Officer Davis said that he did not see Ms. Thomas resisting Sergeant Hines.

Officer Davis said that he only signed the ticket as the transporting officer and not the arresting officer as Sergeant Hines suggested.

INVESTIGATIVE SUMMARY:                                     #: 19-C-0210-UAF
ACCUSED:                                                SGT. JAMES HINES
DATE:                                                   May 14, 2019
PAGE 8

**E.**     **PHYSICAL EVIDENCE:**

Statement of Maggie Thomas

Statement of Sergeant James Hines

Sergeant James Hines Body Worn Camera Videos

Salirian Thomas Video

Atlanta Police Incident Report #:180261243

Photographs of Maggie Thomas

Photographs of Sergeant Hines' hand

Investigator Mark Olson's BOLO

Officer Dekonti Davis Body Worn Camera Video

| **Video CD Timer Log (Labeled: May 1, 2019) Sgt. James Hines Body Worn Camera #1** |
| --- |

**Times**

**01:25**  Sgt. Hines arrives at 657 Boulevard

**01:54**  Sgt. Hines parks his vehicle and pulls out on radio.

**02:14**  Sgt. Hines approaches Ms. Thomas who is sitting inside of her vehicle while her daughter is standing standing outside near Ms. Thomas.

**02:18**  Sgt. Hines asks Ms. Thomas if the vehicle belongs to her and she answered yes.

**02:20**  Sgt. Hines walks to rear of Ms. Thomas' car and records the tag number.

**02:29**  Sgt. Hines asks Ms. Thomas if she has allowed anyone to drive her car. Ms. Thomas replied "No, why?'

**03:40**  Sgt. Hines informs Ms. Thomas that her vehicle is uninsured.

**03:49**  Ms. Thomas asked Sgt. Hines was there a reason why he was investigating her

**04:30**  Sgt. Hines asked Ms. Thomas if she was upset because he was behind her residence.

**04:48**  Sgt. Hines tells Ms. Thomas he's not telling her why he is investigating her.

**04:59**  Sgt. Hines Hines replied "Sure."

**05:00**  Sgt. Hines asked Ms. Thomas "Do you think you have the right to have the information?"

**05:02**  Ms. Thomas replied "Yeah I do."

**05:03**  Sgt. Hiines replied "Nah, you don't."

**07:39**  Ms. Thomas again asks Sgt. Hines why was he investigating her.

**07:40**  Sgt. Hines replied "I'm not gonna tell ya."

<u>**Video CD Timer Log (Labeled: May 1, 2019) Sgt. James Hines Body Worn Camera #2**</u>

<u>**Times**</u>

00:33 Sgt. Hines returns to 657 Boulevard.

00:41 Sgt. Hines whispers "Yes." When he sees discovers Ms. Thomas was at the location.

00:43 Sgt. Hines said "Sweet." He seems elated that Ms. Thomas is there.

00:55 Sgt. Hines approaches Ms. Thomas and states "I did you a disservice." He asks her for her
Driver's license and name. Ms. Thomas asks him why he needed her information and replied
"No."

01:13 Ms. Thomas again asked Sgt. Hines why was he questioning her.

01:17 Sgt. Hines instructs Ms. Thomas to exit her vehicle as her daughter was standing on the
Passengers seat.

01:38 Ms. Thomas appears to be confused, and moves slowly out of the car. She tells Sgt. Hines not
to touch her phone. Sgt. Hines replied I'm gonna do a lot of things if you don't get out of the car
like I asked ya."

01:47 Ms. Thomas stated "I'm getting out of the car." She complies and Sgt. Hines handcuffs her left
Hand. Ms. Thomas starts to resist and Sgt. Hines not to do this in front of her child.

02:15 Sgt. Hines asks Ms. Thomas not to fight as she is passively resisting while he is attempting to get
her right hand.

02:24 It appears that Ms. Thomas' daughter is crying and holding onto Ms. Thomas' hand. Sgt. Hines
Instructs Ms. Thomas to let go.

02:38 Sgt. Hines again orders Ms. Thomas to give him her right arm, but Ms. Thomas won't comply
and asks him several times why is he doing this to her. It appears Ms. Thomas was
on her cellular phone talking to a friend when Sgt. Hines approached and the call was still
connected. Ms. Thomas can be heard yelling out to her friend who was on speaker phone.

03:39 Ms. Thomas disconnects with her friend and dials 911 while Sgt. Hines is still pushing her left
arm upward into her back. Ms. Thomas pleads with the operator to send another officer or a
major to her location.

05:17 Sgt. Hines tells Ms. Thomas not to kick him, Ms. Thomas denies kicking him, and Sgt. Hines
tells Ms. Thomas "I'm just gonna tase you." Sgt. Hines grabs his Taser and states "I'm gonna
tase you, I'm gonna tase you."

05:25 Sgt. Hines asks Ms. Thomas "Are you ready (to be tased)?" "Are you ready to be tased?" Sgt.
Hines began to count with his Taser pointed on Ms. Thomas' back. (He reholsters his Taser)

05: 55 Sgt. Hines advises dispatcher that he's fighting with Ms. Thomas and asks for an ETA on back
up.

**Video CD Timer Log (Labled: May 1, 2019) Sgt. James Hines BWC #2 contined**

**Times**

**05:56** Ms. Thomas pulls her left arm away and yells "Let me fucking go!" "Stupid ass Cracker!"

**06:24** Sgt. Hines to come with him and he is still holding her arms.

**06:39** Salirian Thomas appears in the video and begans to video record with her cellphone. Sgt. Hines instructs her to stand over by the stairs.

**06:58** Ms. Thomas instructs her daughter to carry her cellphone over to Salirian.

**07:12** Ms. Thomas stands upright and no longer resisting. Ms. Thomas call Sgt. Hines a "Pussy ass Nigga!" "You a pussy ass cop!"

**07:12** They both fall on the ground and Sgt. Hines' BWC falls off his breast plate, the camera screen is dark and appears to have landed underneath them. However, Ms. Thomas' voice sounded starined as if she was choking "You a pussy ass." "You trying to kill me." As she cries. (video is dark)

**07:24** Ms. Thomas yell "I'm fear of my life!"

**07:29** Sgt. Hines arc's his Taser and Ms. Thomas screams in pain. (video is dark)

**07:41** The camera screen returns and Sgt. Hines is shown standing over Ms. Thomas pointing his Taser at her back as she is laying face down on the ground.

**08:03** Sgt. Hines paces his camers back on his plate.

**08:17** Sgt. Hines brings Ms. Thomas to her feet and he attempts to place her in the backseat of his partrol car. Ms. Thomas resists and tells Sgt. Hines she won't go with him and requests another officer.

**08:20** Ms. Thomas resists and Sgt. Hines' camera falls on the ground and the screen becomes dark Sgt. Hines struggles to control Ms. Thomas.

**08:46** Ms. Thomas screams "Oh my God, he just punched me in my eye!"

**09:17** Sgt. Hines picks up his camera and places it back on his plate, but the camera is upside down.

**09:19** Officer Davis had arrived on the scene and takes control of Ms. Thomas.

**09:36** Ms. Thomas is still refusing to get into Sgt. Hines' patrol car.

**10:49** Sgt. Hines instructs Officer Davis to put Ms. Thomas in his car and she complies.

**14:20** Sgt. Hines begans a full search of Ms. Thomas' vehicle.

**18:32** Sgt. Hines completes his search of the vehicle.

**INVESTIGATIVE SUMMARY:**
**ACCUSED:**
**DATE:**
**PAGE 12**

**#: 19-C-0210-UAF**
**SGT. JAMES HINES**
**May 14, 2019**

**INVESTIGATIVE FINDINGS:**

This investigation finds that:

On May 1, 2019, Sergeant James Hines was on routine patrol behind the apartment complex at 657 Boulevard NE. While at the location he encountered Maggie Thomas, a resident at the apartment complex, sitting inside of her silver Infinity vehicle. Sergeant Hines decided to investigate the car based on information from Zone Six, Investigator Mark Olson's lookout for a silver Infinity that was being used in crimes and frequented the Fourth Ward area. Although the suspects were listed as two black males in their 20' to '30s, Sergeant Hines wrote down the license plate number and ran the tag which revealed to him that the car was uninsured.

Sergeant Hines asked Ms. Thomas a series of questions during his investigation and refused to tell Ms. Thomas why after she asked him what his purpose for the inquiry. After a series of verbal exchanges and Sergeant Hines advising Ms. Thomas to google the Zone Six Precinct for the phone number to call a supervisor, he left the scene.

Sergeant Hines said that after he left the scene, he wondered why Ms. Thomas seemed agitated at his mere presence, and he decided to run her name (Maggie Thomas). Sergeant Hines discovered that Ms. Thomas had a Failure To Appear (FTA) warrant issued by the City of Atlanta Traffic Court for a speeding ticket she didn't pay. Sergeant Hines went back to Ms. Thomas' residence and found her sitting inside her car in the same exact spot. Sergeant Hines approached Ms. Thomas for the second time and told her, "I did you a disservice." As he soon after ordered her to step out of her vehicle. Ms. Thomas' 4-year-old daughter was in the car as well.

Ms. Thomas asked Sergeant Hines why was he doing this, and she resisted. Sergeant Hines stated that he threw Ms. Thomas on the ground and Tased (drive stunned) her to get her handcuffed. Sergeant Hines attempted to escort Ms. Thomas to his patrol, and she resisted, and according to Sergeant Hines, Ms. Thomas bit him on his right hand, leaving marks. Sergeant Hines stated that it was his reaction to punch Ms. Thomas in her left eye and throw her on the ground. Officer Davis arrived on the scene with his video camera activated, but it captured no footage of Sergeant Hines using force, said that he witnessed Sergeant Hines plant Ms. Thomas face first into the concrete. Sergeant Hines stated that he never advised Ms. Thomas that she was under arrest and why he was arresting her. Sergeant Hines said he did not confirm the warrant before he took Ms. Thomas into custody, nor did he ever confirm the warrant.

Sergeant Hines stated that he doesn't know why he never told Ms. Thomas that she was under arrest and he said that Ms. Thomas barely touched his hand, and although he wasn't sure if she was a danger to him, his reaction was to punch her in the face.

Ms. Thomas stated that she would've cooperated with Sergeant Hines if he would've told her what she was being arrested for. According to Municipal Court Records, Ms. Thomas is scheduled to appear in court in June of 2019.

This file is being submitted for your review and recommendations.

Respectfully,

*Gentrell Walton*

Investigator G. Walton
Integrity Unit
Office of Professional Standards

## Summary of Complaint

On May 3rd Ms. Maggie Thomas called to report that Sgt. Hines had assaulted her during an arrest.

Ms. Thomas advised that while sitting in her car in her complex watching her 4yo play, Sgt. Hines drives in to a hidden driveway and circles her car on foot. Then asked her a few questions. He leaves and then returns about 15 minutes later and ask her what her name was. Ms. Thomas was irritated by the question because he had just called her by her name on the last visit. He then asks for her license which is in the house. She said she was more irritated at this point.

Ms. Thomas said that Sgt. Hines proceeds to place handcuffs on her as she steps out the car. Her daughter is pulling on the other arm and Sgt. Hines tased her, throwed her to the ground, placed his foot on her and tased her again.

Ms. Thomas said all she wanted to know what she had done, and can she call someone for her daughter.

Ms. Thomas said that she managed to call 911 before being pulled out the car. When they all arrived, she was being placed in a patrol car put she resisted and Sgt. Hines punched her in the eye, threw her to the ground and tased her again.

Finally, she was taken to a bank where she met a Captain and a Lieutenant who explained to her that she had an FTA for speeding that had not been confirmed and that Sgt. Hines did not have his BWC on. She was then told that she was being charged with Disorderly Conduct with physical harm.

Ms. Thomas feels that there were many different ways that Sgt. Hines could have handled that situation.

☒ Do you feel this is a valid complaint? YES

Form Completed: Sgt. L.S. Giles

5 - 1 - 1

1
2
3
4
5
6
7 **INTERVIEW WITH MAGGIE THOMAS**
8 **Q=Sgt. L. Giles**
9 **A=Maggie Thomas**
10
11
12 A:      ...involved in a APD sheriff or sergeant.
13
14 Q:      Okay give me one second please.
15
16 A:      Okay.
17
18 Q:      Uh, is this gonna be an APD officer or Fulton County Sheriff?
19
20 A:      It was an APD officer.
21
22 Q:      Okay give me one second.
23
24 A:      Harley put him up in here.
25
26 Q:      Okay can I have your name?
27
28 A:      My name is Maggie, M-A-G-G-I-E last name is Thomas. (Ma), put that down.
29
30 Q:      Okay and a phone number for you?
31
32 A:      My cell phone number's 404...
33
34 Q:      Uh-huh.
35
36 A:      953-8994.
37
38 Q:      Okay and you wanna tell me what happened?
39
40 A:      Um, I think what is this May 1?
41
42 Q:      Today is May s- 3rd.
43
44 A:      Yeah so it was May 1 Wednesday afternoon, uh, probably around about 7:30,
45      um, the address where we were located is 657 Boulevard NE in Atlanta, this is

| | | |
|---|---|---|
| 46 | | where I stay at, I was in my back parking lot. Um, an officer - Sergeant - |
| 47 | | Sergeant (Hines) if I'm not mistaken... |
| 48 | | |
| 49 | Q: | Okay. |
| 50 | | |
| 51 | A: | He pulled into my parking lot, he pulled into my cut, like, where I stay at it's a |
| 52 | | long driveway and then the back is like a parking lot, you wouldn't be able to |
| 53 | | tell this cut off the street and if the police does get a call out here they park on |
| 54 | | the street and then they walk to the building 'cause I've been living out here |
| 55 | | for some time. So he pulls to the back of my cut I'm sitting in the side of my |
| 56 | | car, the car is off I don't even think I had the keys. I was just sitting in the car |
| 57 | | I was on the phone 'cause my daughter was outside playing in the parking lot. |
| 58 | | I was on the phone with my home girl, um, we was talking. He pulls inside the |
| 59 | | place, he get out of his car he walks around his car and as he's coming around |
| 60 | | his car my daughter's coming back to my car and he speaks to my daughter. |
| 61 | | He walks - he circles around my car, look at my tag and he smirks and he gets |
| 62 | | back in his car. He rolls down his window and he said, "Ms. Thomas has |
| 63 | | somebody been driving your car?" I'm like, "No why would you ask me |
| 64 | | that?" He's, like, "No reason I just asked," he's like, "Are you sure that no |
| 65 | | one's been driving your car?" I'm like, "Yeah positive nobody's been driving |
| 66 | | I've been sitting back here in the car on the phone for a minute." So he's, like, |
| 67 | | "Okay," he rolled back up his window, he reversed and then he - he reversed |
| 68 | | on the side of me, rolled down his passenger window he was, like, "Um, you |
| 69 | | sure nobody was driving your car?" I'm like, "Yeah I'm positive nobody's |
| 70 | | been driving the car." I said, "Why do you keep asking me that?" He said, |
| 71 | | "Am I bothering you by asking you these questions?" I said, "No not really |
| 72 | | just kinda odd that you just pulled back here, I don't know if you got a call or |
| 73 | | what but you just pulled back here and come directly up to my car and you |
| 74 | | circle my car, you looked at my tag, I'm sure you ran my tag and everything |
| 75 | | but you called out my last name." So he was, like, um, "No I'm just asking," I |
| 76 | | said, "Okay," um, he was like, "Well I'm just making sure, like, you know |
| 77 | | that car isn't insured." I'm like, "Yeah that's why it's parked." I said, "Have |
| 78 | | you seen somebody driving the car?" He's, like, "No," I was, like, "Okay," I |
| 79 | | say, "What is your reason for coming back here questioning me?" He didn't |
| 80 | | answer so I said, "You don't have to answer me?" He's, like, "No I'm just not |
| 81 | | gonna answer," I said, "Okay fine can I have your superior's information?" |
| 82 | | He gave me, um, a name (Vasquez) and some other person I guess his captain. |
| 83 | | I was, like, "Well do they have a contact number? Could you call them back |
| 84 | | here?" He's, like, "Well they're not at work, they off of work right now you |
| 85 | | can Google on 6th Precinct and get the number and call tomorrow." I said, |
| 86 | | "Okay that's fine." He, um, pulls out, he said, "Have a good day," and rolls up |
| 87 | | his window and he leaves. Maybe 10, 15 minutes later he comes back, he pull |
| 88 | | straight into my cut, gets out of his car again, he approaches me I'm still |
| 89 | | sitting in my car and had my leg, um, up on my door 'cause the door was |
| 90 | | open. By this time my daughter was in the car with me, she was on the |

91 passenger side playing. He walks up to my door I sit up in the car, he says,
92 "What's your name?" I looked at him confused 'cause I'm like, you just came
93 back here and you called out my name I know you ran my tag 'cause you told
94 me it wasn't insured so you know who I am so I was, like, "Why was you," I
95 said, "Why did you - why ask me that when you already know my name?"
96 He's, like, "Do you have your ID or your license?" I said, "Well my purse is
97 in the house I don't have it on me," he's like, "So you're not gonna tell me
98 your name?" I said, "You already know my name," by this time I had really
99 got upset because I'm like, "Why are you bothering me?" He's, like, "Well
100 step out of the car." So I'm on the phone with my friend and she asks him - he
101 hear her say, "Are you being arrested?" And he's, like, "Well now she is," he
102 grabs me by my arm - by my left arm, twist it behind my back, snatching me
103 up out of the car, put the cuffs on my left arm. My daughter, which is 4, she
104 jumps across the seat and she grabs my right arm and she's, like, holding onto
105 me she's crying, screaming and he was, like, "Give me your other arm - give
106 me your other arm," I'm like, "I can't you see my kid is standing right here,
107 she - she's holding on to me." He pulls out his taser he sticks it in my back, all
108 the time my friend is still on the phone. I grabbed my phone because he was
109 trying to take my phone 'cause he's, like, "Give me your - let me, uh, hang up
110 the phone," I'm like, "No I'm not gonna hang up the phone 'cause I don't
111 trust you at this point." I dialed 911, I threw my phone in my passenger seat so
112 he wouldn't be able to get the phone and put it on speakerphone. The operator
113 picks up and him and I still struggling, he's trying to get my other hand, my
114 baby's holding onto me she's crying and he's just, like, yelling he's, like, "I'm
115 gonna tase you if you don't, um, let go," and I'm like, "Well my baby's right
116 here," the operator picks up I say, "Can you please get someone out here
117 because I'm being arrested by a white officer in a black neighborhood and I
118 don't know and he's by his self, he came back here twice not once, but he
119 came back here twice and he said something to me now he's coming back to
120 lock me up, get somebody out here." The operator tell me she's, like, "Calm
121 down," you know? And I'm trying to calm down because I can't 'cause I got
122 my baby right here, he's pinning me up against my baby and then he tases me.
123 No he says, "I'm gonna tase," so I said, "Are you - you're gonna tase me
124 while my baby's right here?" He's, like, "You gonna make me do it," soon as
125 he said that he hit me with the taser, my baby let me go he put me in a choke
126 hold, he threw me on the ground, put his foot in my back, grabbed my right
127 arm, put me in cuffs, picks me up off the ground. By this time people started
128 coming outside so I have a whole foot - a whole video footage of all this going
129 on. He picks me up, tries to put me in his car I did resist on getting in his case
130 because I was not getting in the car with him by myself and he was the only
131 officer, no. So I said, "No I'm not getting in the car with you, I'm not going
132 away," you can hear me saying it's on the video, "I'm not going nowhere until
133 you get another officer out here." He then punches me dead in my left eye - I
134 have the biggest black eye, punches me in my left eye put me in another choke
135 hold so I was back on the ground, he tases me - you hear the taser in the video.

136 He tases me again, all of the while I'm in cuffs and then he puts his foot in my
137 back and while he's doing that the other two officers coming up the driveway,
138 they run over turning me over and they're, like, "Calm down," they're trying
139 to pick me up off the ground I'm like, a 30 year-old female you have this
140 white police officer who was, like, I know weighs more than 200 pounds just
141 beating me up out here like this. So they finally pick me up off the ground,
142 take me to their car and sit me in the back of their car at this point I'm like,
143 hysterical, my feelings are hurt I'm like, felt battered out there and I still
144 didn't know what I was being arrested for. The whole time I keep asking,
145 "Why am I being arrested? Why are you locking me up?" No one tells me
146 why I'm being locked up well probably - I don't know exactly what time it
147 was but they left a couple more police officers pulled up, they left from - from
148 my cut and they pulled around to the thing, this what they call the captain and
149 the lieutenant. We sit there for a while, the lieutenant and the captain come to
150 me and you know, and I'm still, like, "Why am I being arrested?" The other
151 officers that are drive - transporting me they're, like, "We don't know we still
152 trying to figure out too." So when the captain finally calls he's, like, "What's
153 your name?" I told him my name, I gave him my information he went and he
154 ran my name he said, "Well you do have a FTA traffic, uh, warrant for a
155 speeding ticket" He's, like, "The warrant was issued back in February," and
156 he's, like, "(Unintelligible) I guess the judge issued a warrant in February but
157 we cannot confirm if the warrant is active," so I say, "What does that mean?"
158 He's, like, "Well we haven't got con- confirmation if it's an active warrant
159 now it just shows in the system you have a warrant." So I said, "I'm - I just
160 got beat up for a traffic ticket? Which he could have simply said, "Ms.
161 Thomas you have a warrant for your arrest for a FTA," and I would've
162 complied at the beginning with no hesitation but it's like he, ah was hot ah,
163 this, all like he's tryin' to trip. My 4 year-old baby was out there so I was
164 arrested and beat up for a $300 traffic ticket? That's not - that was not cool
165 and I was bothered by the whole situation. Yeah, I'm cryin' now. But
166 something has to be done about it. So the captain said, "Well he'll give you -
167 he - he, I'm placing you under arrest for disorderly conduct, uh, and, uh, with
168 physical assault." I said, "What? You're not arresting me when - he's
169 supposedly a risk to pay back - that's what it was for - an FTA that he didn't
170 even get confirmation was active or not. But you telling me I was pretty much
171 provoked in a situation and now I'm being slapped with a charge that I really
172 didn't have no control over?" I - I had no - it was a lose-lose for me, one I'm
173 in - I'm in the comfort of my home from that thinking nothing like that, you
174 didn't get a call back there so I don't know what just possessed you to come
175 back and I still don't know what made him come back there. But you come
176 back there and you not come back there once you left. So if you wanted to
177 arrest me why wouldn't you come back with another officer or another female
178 officer or something? Like, help me make sense of how I - I have so many
179 other scenarios how that could've played out. You come back there and you
180 still did not tell me what you was arresting me for, you didn't say, um, "I need

| 181 | | you to step out of the car because it's coming back that you have a warrant, |
|---|---|---|
| 182 | | you told me to step out of my car and when I said - I asked you why - why |
| 183 | | you asking me this, you snatch me up so it was no more conversation at that |
| 184 | | point it was you yelling at me and me yelling back at you and my baby crying |
| 185 | | so we had no time to figure out why am I being arrested and you telling me |
| 186 | | two hours later I'm arrested for a FTA but you're really not arresting me for a |
| 187 | | FTA now because you can't confirm the FTA, hit me with disorderly conduct |
| 188 | | and send me to pretrial. I go to pretrial - pretrial don't even take me because I |
| 189 | | wasn't even assessed properly I did medically, but we have to go to |
| 190 | | (unintelligible). Then I have to bail out, pay money that I don't have to pay to |
| 191 | | get out of jail off of something that I really didn't even have no control over, |
| 192 | | that I'm asking information about how do I go and reach somebody like this, I |
| 193 | | have reached out to a lawyer and he has told me that we're gonna get the body |
| 194 | | cam but supposedly his captain says his body cam wasn't even on so I don't |
| 195 | | even know how that work or what's going on at this point but I really think |
| 196 | | somebody in a higher head should be handling this with some type of urgency |
| 197 | | because it's not cool for whoever (unintelligible) to ride around doing and I |
| 198 | | don't know if he had some type of personal vendetta towards black people or |
| 199 | | whatever it is because it's how I felt, I mean did you look at my face and |
| 200 | | watch the video personally? I - I would think you would think the same thing |
| 201 | | too. |
| 202 | | |
| 203 | Q: | Ms. Thomas... |
| 204 | | |
| 205 | A: | So I don't know what his issue is. |
| 206 | | |
| 207 | Q: | Ms. Thomas? |
| 208 | | |
| 209 | A: | And somebody needs to do something about that. |
| 210 | | |
| 211 | Q: | Ms. Thomas? |
| 212 | | |
| 213 | A: | Yes. |
| 214 | | |
| 215 | Q: | Uh, were you charge - was one of your citations for failure to appear? Did - |
| 216 | | did you get... |
| 217 | | |
| 218 | A: | No... |
| 219 | | |
| 220 | Q: | ...did you get a... |
| 221 | | |
| 222 | A: | ...it wasn't for a failure to appear for no that wasn't the citation. I still don't |
| 223 | | have a ticket... |
| 224 | | |
| 225 | Q: | So... |

226
227 A: The officer who transported me to (unintelligible) or the ticket that Sergeant
228 (Hines) write this long paragraph out saying that he came to - he didn't even
229 say he came - but he didn't say why he came but he said that Maggie had a
230 FTA and, um, in quotation marks, "For speeding," and after fighting with her
231 I was able to get her in cuffs 'cause she wouldn't obey command and in the
232 process of me doing that I received - she bit me but I don't have any marks, no
233 visible marks. Like that's a whole lie, he's lying and he's covering up
234 something. I did not get a citation for that, when I got to pretrial the lady was,
235 like, being that I do have, um, I had two missed court dates she's, like,
236 "(Unintelligible) you have two missed court dates? You're gonna have to pay
237 the (unintelligible) on those," which was for discharging a firearm on back in
238 March when I had to shoot at my child's father after kicking him out the door
239 and beating me up. The I had a - a - for a speeding ticket but I did not get a
240 citation for that, my citation wasn't for that I got a charge for disorderly
241 conduct with physical harm is what the original citation was for and it was
242 only one citation and I don't have it and I can't get it.
243
244 Q: Okay so let me ask you this, uh, you said video was taken I guess...
245
246 A: Yes I have video.
247
248 Q: ...I guess your neighbors, uh, recorded the incident?
249
250 A: Yes my neighbors, my friend that was on the phone she was on the phone with
251 me from the beginning from when he pulled up at the first time.
252
253 Q: Okay do - do...
254
255 A: (Unintelligible).
256
257 Q: Do something for me Ms. Thomas?
258
259 A: Yes.
260
261 Q: Just answer my questions so that I can get what I need from you okay?
262
263 A: Okay.
264
265 Q: So you have recorded video?
266
267 A: Yes.
268
269 Q: And you have pictures of your eye?
270

| 271 | A: | Yes. |
|---|---|---|
| 272 | | |
| 273 | Q: | You have a copy of your citation? |
| 274 | | |
| 275 | A: | No. |
| 276 | | |
| 277 | Q: | Uh, they didn't give you a copy of, uh, the ticket that they arrested you on? |
| 278 | | |
| 279 | A: | No. |
| 280 | | |
| 281 | Q: | Uh, do you have the report number or the case number? |
| 282 | | |
| 283 | A: | No - no. |
| 284 | | |
| 285 | Q: | Okay can you get me the pictures of your eye and the recorded video? Is there |
| 286 | | any way you can email that to me or bring it to me? |
| 287 | | |
| 288 | A: | I could. |
| 289 | | |
| 290 | Q: | Okay, um, I'm gonna write this up and submit it for, uh, investigation I'm |
| 291 | | gonna look through the system right now, I don't know if you wanna hold or |
| 292 | | do you want me to call you back? |
| 293 | | |
| 294 | A: | It doesn't matter, whichever works for you. |
| 295 | | |
| 296 | Q: | I'm gonna look for it, the body cam video and see if... |
| 297 | | |
| 298 | A: | Okay. |
| 299 | | |
| 300 | Q: | ...anybody's camera was on and I'm gonna look for... |
| 301 | | |
| 302 | A: | Okay. |
| 303 | | |
| 304 | Q: | ...a report to see if I can get a case number. You need your own case number |
| 305 | | so I'm gonna see if I can find it for you to have... |
| 306 | | |
| 307 | A: | Okay. |
| 308 | | |
| 309 | Q: | ...and for me to have, uh... |
| 310 | | |
| 311 | A: | Okay. |
| 312 | | |
| 313 | Q: | ...I think it'd be best if I just call you back I'm gonna repeat this number for |
| 314 | | you it's 404-953-8594? |
| 315 | | |

316    A:        Yes mam.
317
318    Q:        Okay give me about 5 minutes.
319
320    A:        Okay.
321
322    Q:        Okay.
323
324    A:        Thank you.
325
326    Q:        Thank you Ms. Thomas.
327
328
329    The transcript has been reviewed with the audio recording submitted and it is an accurate
330    transcription.
331    Signed _____

Q:     It's Sunday, May 12, 2019. I am Investigator Gartrell Walton.
       G-A-R-T-R-E-L-L, last name Walton, W-A-L-T-O-N of the Office of
       Professional Standards. Today I will take a recorded statement from James
       Hines in regard to OPS Investigation Number 19-C as in Charlie - 0209-UAF.
       Present with Off-- I'm sorry -- with Sergeant Hines today is representative Ms.
       Anna Abato. First name spelling, A-N-N-A, last name spelling A-B-A-T-O.
       Sergeant (Himes), please -- Hines -- please state and spell your first and last
       name for the record.

A:     James Hines, J-A-M-E-S H-I-N-E-S.

Q:     And your current rank?

A:     Sergeant.

Q:     How long have you been a supervisor?

A:     Since April 12, 2012.

Q:     What is your current assignment?

A:     Zone 6 evening watch.

Q:     On May 1, 2019, you arrested Ms. (Maggie Thomas) at 653 Boulevard
       Northeast. Please explain in full detail what occurred.

A:     While patrolling the Boulevard area I went behind the apartments at 657
       Boulevard Northeast. I saw a black female sitting in a silver Infinity E35,
       Georgia tag number Robert, Ida, Victor 7561. I had gotten an earlier lookout on
       a silver Infinity, so I pulled out my radio and talked to the driver (Maggie
       Thomas). I asked Ms. (Thomas) if the car was hers and she said it was. I then
       told her that the car had no insurance, to make sure that she did not drive it. She
       then became agitated and asked why I was looking at her car and what was I

7 - 1 - 15

46    doing behind her apartments? I then told her I wasn't going to tell her why I was
47    checking her car out. She then asked me my supervisor's names and I gave her
48    all the information about my lieutenant, captain, major, and that I worked in
49    Zone 6. She said something about there shouldn't be a white officer harassing
50    her, and then she wanted to know if my major was white or black. I gave her the
51    information and then left the parking lot. As I got a block or so away I began to
52    wonder why she became so agitated at my mere presence and ran her name. She
53    came back with a warrant for her arrest from the City of Atlanta for an FTA on
54    a speeding ticket. I then asked radio for another unit, and 3604, Officer (Davis)
55    said he was headed to the area. I then told him I was going to go back to the
56    parking lot to make sure that Ms. (Thomas) did not get away. As I entered the
57    parking lot I saw that - that Ms. (Thomas) was still sitting in her car with her
58    daughter (Marlie Monroe) -- excuse me -- (Marlie Moore), birthday 11/24/14
59    standing in the passenger's seat. I asked Ms. (Thomas) for her driver's license
60    and she stated that she didn't have it. I then asked her her name and she refused
61    to give it to me. She was talking on the phone at the time and I asked her to get
62    off the phone and get out of the car. She refused to do so. I then took one of her
63    hands and put a handcuff on it. I then asked her to give me her other hand. She
64    did not give me her hand. She instead held on to her daughter while dialing the
65    phone with the other hand. I held her left arm behind her back and I asked radio
66    to have 3604 hurry up. I then asked for any other unit in the area to respond. I
67    could not take Ms. (Thomas) to the ground because of her daughter, so I had to
68    just continue holding -- excuse me -- so I had to just continue to hold her hand
69    behind her back and wait for back up. Meanwhile Ms. (Thomas) called 911 and
70    asked for them to send an officer and told the operator what was happening. Ms.
71    (Thomas) then began to honk her horn with her head and eventually got people
72    to come out of the apartments. One of the ladies that came out got Ms.
73    (Thomas)'s daughter and the daughter took Ms. (Thomas)'s phone. I then took
74    Ms. (Thomas) to the ground and she still refused to give me her right hand. I
75    took out my Taser and dry stunned her to the back. She then began to comply
76    and I eventually was able to get both hands cuffed. As I was standing Ms.
77    (Thomas) up and walking her to my car she began to resist again and said that
78    she was not getting in my police car. She continued to strug- struggle as I
79    attempted to direct officers to where I was. As she was struggling she bent over
80    and bit my right hand. I immediately punched her in the face and she fell to the
81    ground. At this time Officer D. (Davis) and Officer R. Rahmes, 3604 arrived on
82    scene and were able to take control of Ms. (Thomas). She continued to fight
83    them and refused to get in my police car. Officer Rahmes brought his car to the
84    back of the lot and was able to get Ms. (Thomas) into the car. Her daughter was
85    left with the father, (Brandon Thomas), 7/8/91. Upon searching the car I did not
86    find on ID for Ms. (Thomas) or keys for the vehicle. I rolled up all the windows,
87    locked the doors, and left the vehicle in the parking lot. During the altercation a
88    small crowd had gathered and they were filming the scene and shouting. I had a
89    few other officers respond and they helped keep the crowd out of the crime
90    scene. As soon as we got Ms. (Thomas) under control I had everyone relocate to


| 91 | | 536 North Avenue at the Pinnacle Credit Union. While there I completed the |
|---|---|---|
| 92 | | arrest ticket and attempted to confirm the warrant. I also pulled up Ms. |
| 93 | | (Thomas)'s driver's license picture on (OMIX) and confirmed her identity. The |
| 94 | | warrant for her arrest was unable to be confirmed due to the computers being |
| 95 | | down for the City of Atlanta. Ms. (Thomas) was charged with disorderly |
| 96 | | conduct, physical obstruction, 106-817, Sergeant D. (Jones), 3692 and Captain |
| 97 | | A. (Clay), Unit 600 arrived on scene and spoke with Ms. (Thomas). She |
| 98 | | complained to them that her face her and Grady EMS 518 responded to the |
| 99 | | location, treated and released her. ID Unit 7334 (Walder) responded to the Zone |
| 100 | | 6 precinct and took pictures of Ms. (Thomas)' swollen left eye. She also - he |
| 101 | | also took a picture of my right hand that had noticeable marks from being |
| 102 | | bitten. Ms. (Thomas) was then transported to city jail. |
| 103 | | |
| 104 | Q: | Again, why did you approach Ms. (Thomas) initially? |
| 105 | | |
| 106 | A: | Oh, because the car, uh, again a lookout from, uh, Investigator (Olsen) that we |
| 107 | | were looking for a silver Infinity matching that that, um, I believe was involved |
| 108 | | in car break-ins or burglaries. It was supposed to be in the fourth ward area. |
| 109 | | |
| 110 | Q: | Describe the vehicle that was wanted and the suspected crimes again, please. |
| 111 | | |
| 112 | A: | Uh, it was a silver Infinity. Um, I thought it was like an FX35, but it turned out |
| 113 | | it was an EX35, which was her car. Uh, her car exactly matched the description |
| 114 | | of the picture. And, uh, I gave that information later to Investigator (Olsen). |
| 115 | | |
| 116 | Q: | And where exactly did you receive the information from? |
| 117 | | |
| 118 | A: | It was an e-mail. |
| 119 | | |
| 120 | Q: | Okay, do you still have that e-mail? |
| 121 | | |
| 122 | A: | I do. |
| 123 | | |
| 124 | Q: | Will you please forward it to this office? |
| 125 | | |
| 126 | A: | I will. |
| 127 | | |
| 128 | Q: | Thank you. You asked Ms. (Thomas) had she let anyone drive her vehicle. Why |
| 129 | | did you ask her that specific question? |
| 130 | | |
| 131 | A: | Uh, because it was two black males that were supposed to be driving that |
| 132 | | vehicle and, you know, if she had two black males I would asked her further - if |
| 133 | | she would have given the names to somebody else I would have tried to |
| 134 | | ascertain their name as well, so I could give it to Investigator (Olsen). |
| 135 | | |



| 136 | Q: | Did you see two black males on the scene? |
| 137 | | |
| 138 | A: | No. |
| 139 | | |
| 140 | Q: | Ms. (Thomas) asked you why you were inquiring... |
| 141 | | |
| 142 | A: | Mm-hm. |
| 143 | | |
| 144 | Q: | ...and you refused to answer any of her questions. Why? |
| 145 | | |
| 146 | A: | It was none of her business, um, about the investigation. And then also didn't |
| 147 | | want her to tip off, you know, just in case her car was the car. |
| 148 | | |
| 149 | Q: | So if you come and ask a person a question... |
| 150 | | |
| 151 | A: | Mm-hm. |
| 152 | | |
| 153 | Q: | ...and begin to investigate them you don't think it's your responsibility to let |
| 154 | | someone know why you're asking them questions? |
| 155 | | |
| 156 | A: | No. |
| 157 | | |
| 158 | Q: | Okay. After you left the scene you returned. Why? |
| 159 | | |
| 160 | A: | I had not ran her name while I was, uh, in the parking lot. And I ran her name |
| 161 | | and saw that she had a warrant for an FTA on a speeding ticket. |
| 162 | | |
| 163 | Q: | As you approached Ms. (Thomas) you said to her, "I did you a disservice." |
| 164 | | Please explain your statement to her. |
| 165 | | |
| 166 | A: | I hadn't ran her name. |
| 167 | | |
| 168 | Q: | So by not running her - her name you felt as if you did her a disservice? |
| 169 | | |
| 170 | A: | Yes, sir. |
| 171 | | |
| 172 | Q: | And how is that? |
| 173 | | |
| 174 | A: | Because I didn't find out that she had a warrant. |
| 175 | | |
| 176 | Q: | So by finding out that she had a warrant you were now servicing her? |
| 177 | | |
| 178 | A: | I believe so, yes. |
| 179 | | |
| 180 | Q: | Okay. You asked Ms. (Thomas) for her identification. Is that true? |


| 181 | | |
|---|---|---|
| 182 | A: | It is. |
| 183 | | |
| 184 | Q: | She asked why. Why didn't you explain to her why you needed to see her |
| 185 | | identification? |
| 186 | | |
| 187 | A: | What's the question? |
| 188 | | |
| 189 | Q: | She asked you why you needed to see her identification. |
| 190 | | |
| 191 | A: | Right. |
| 192 | | |
| 193 | Q: | Why didn't you explain why? |
| 194 | | |
| 195 | A: | Oh, I don't know. |
| 196 | | |
| 197 | Q: | Did you feel a need to answer her question? |
| 198 | | |
| 199 | A: | I may have at the time, you know, telling somebody who has a warrant that's |
| 200 | | also about to go ahead and start a fight, so I was trying to detain her and then |
| 201 | | after you get somebody under control then you tell 'em what you got. But if you |
| 202 | | tell somebody they're warranted now you've already got 'em in an agitated |
| 203 | | state. Now you're gonna have to fight 'em anyway, but it just, you know, either |
| 204 | | way. |
| 205 | | |
| 206 | Q: | So as a supervisor and a veteran of the Atlanta Police Department you couldn't |
| 207 | | think of a different way to explain to her why you needed to see her license? |
| 208 | | |
| 209 | A: | I probably - I may have - could have. |
| 210 | | |
| 211 | Q: | How were you able to confirm that Ms. (Thomas) was the warranted person |
| 212 | | before the city traffic warrant? |
| 213 | | |
| 214 | A: | I pulled up her picture on (OMIX) center driver's license. |
| 215 | | |
| 216 | Q: | Did you confirm that before you used force to arrest her? |
| 217 | | |
| 218 | A: | No. |
| 219 | | |
| 220 | Q: | Okay. If you knew Ms. (Thomas) to be the warranted person that you were |
| 221 | | looking for why did you ask her for identification? |
| 222 | | |
| 223 | A: | To make sure - the owner of the car was Ms. (Thomas). She said she was the |
| 224 | | owner of the car, so she's said that she's the person that owns the car, which is |
| 225 | | Ms. (Thomas). But if you have her ID and then I can compare her ID then I can |

| 226 | | positively identify that she is indeed Ms. (Thomas) and the person. But since |
| 227 | | she wouldn't do that then I had to, uh... |
| 228 | | |
| 229 | Q: | And when did she tell you that it was her vehicle? |
| 230 | | |
| 231 | A: | That was the first time that I came up. |
| 232 | | |
| 233 | Q: | That was the first encounter. In your 17 you stated that when Ms. (Thomas) |
| 234 | | requested a supervisor you told her the names of the lieutenant, captain and the |
| 235 | | major, is that correct? |
| 236 | | |
| 237 | A: | Yes. |
| 238 | | |
| 239 | Q: | However, the video showed that in your initial response you said to her that |
| 240 | | you're not telling her and you had no supervisor, is that true? |
| 241 | | |
| 242 | A: | I don't think I said that I was not telling her. But I was the ranking supervisor on |
| 243 | | duty, so I was as high as it went. My lieutenant had already gone home for the |
| 244 | | day. |
| 245 | | |
| 246 | Q: | You wrote in your 17 as you got a block away or so Ms. (Thomas) became |
| 247 | | agitated. Can you explain your statement? |
| 248 | | |
| 249 | A: | Oh, is that what I said? I said I began to wonder why she became so agitated out |
| 250 | | of my mere presence and ran her name. |
| 251 | | |
| 252 | Q: | Oh. You wrote in your 17 that you asked Ms. (Thomas) for her license and you |
| 253 | | said that she did not have it. However in the video she asked you why you |
| 254 | | needed to see her license. She never told you that she didn't have it. Can you |
| 255 | | explain that statement? |
| 256 | | |
| 257 | A: | No. |
| 258 | | |
| 259 | Q: | Before you cuffed Ms. (Thomas) were you sure that she was the wanted person |
| 260 | | that you were looking for? |
| 261 | | |
| 262 | A: | Not 100%, no. |
| 263 | | |
| 264 | Q: | Before you handcuffed Ms. (Thomas) did you confirm the warrant once again? |
| 265 | | |
| 266 | A: | No. |
| 267 | | |
| 268 | Q: | Before you handcuffed Ms. (Thomas) did you tell Ms. (Thomas) that she was |
| 269 | | under arrest? |
| 270 | | |

| | | |
|---|---|---|
| 271 | A: | No. |
| 272 | | |
| 273 | Q: | Did you tase Ms. (Thomas)? |
| 274 | | |
| 275 | A: | I did. |
| 276 | | |
| 277 | Q: | Can you explain the position she was in when you tased her? |
| 278 | | |
| 279 | A: | She was, uh, laying on her stomach. |
| 280 | | |
| 281 | Q: | And where were her hands? |
| 282 | | |
| 283 | A: | Uh, I think I still had the left hand and her right hand was under her. |
| 284 | | |
| 285 | Q: | And why did you tase Ms. (Thomas)? |
| 286 | | |
| 287 | A: | To - so I didn't have to fight her anymore. She just gave me her right hand after |
| 288 | | that. |
| 289 | | |
| 290 | Q: | Couldn't you have just waited for another unit to arrive? |
| 291 | | |
| 292 | A: | I had already been waiting I think I'd say 10 minutes. |
| 293 | | |
| 294 | Q: | And since you had already had Ms. (Thomas) on the ground how were you |
| 295 | | positioned over here? |
| 296 | | |
| 297 | A: | Oh, I don't know. |
| 298 | | |
| 299 | Q: | You don't remember how you were positioned over her? |
| 300 | | |
| 301 | A: | No. |
| 302 | | |
| 303 | Q: | According to your report your knee was in her back, is that true? |
| 304 | | |
| 305 | A: | It says that in my report? |
| 306 | | |
| 307 | Q: | No, I'm asking you. I just want you to be sure. |
| 308 | | |
| 309 | A: | What are you asking, sir? |
| 310 | | |
| 311 | Q: | I'm asking you how were you positioned over Ms. (Thomas) when she was face |
| 312 | | down on the ground before you tased her? |
| 313 | | |
| 314 | A: | Oh, I don't know. I couldn't tell you. |
| 315 | | |



| | | |
|---|---|---|
| 316 | Q: | Did you have control of Ms. (Thomas)? |
| 317 | | |
| 318 | A: | Uh, no, not really, not yet. |
| 319 | | |
| 320 | Q: | What would you consider control of Ms. (Thomas)? |
| 321 | | |
| 322 | A: | Control of Ms. (Thomas) would be her in handcuffs sitting in the back of my |
| 323 | | car. |
| 324 | | |
| 325 | Q: | Okay. In your 17 you indicated you were escorting Ms. (Thomas) to your car at |
| 326 | | some point. Please explain how you were escorting her. |
| 327 | | |
| 328 | A: | Just walking her to my car. |
| 329 | | |
| 330 | Q: | Where were your hands placed? |
| 331 | | |
| 332 | A: | Oh, I don't recall. |
| 333 | | |
| 334 | Q: | Did you have a firm grip control? |
| 335 | | |
| 336 | A: | I - I don't know. |
| 337 | | |
| 338 | Q: | How were you trying to get Ms. (Thomas) into the vehicle? |
| 339 | | |
| 340 | A: | Uh, I don't think I ever - I ever got there, so I never got to the part where I was |
| 341 | | gonna her in the vehicle. |
| 342 | | |
| 343 | Q: | Okay. I think in your 17 you just stated as you were trying to seat her in the |
| 344 | | vehicle... |
| 345 | | |
| 346 | A: | No, sir. |
| 347 | | |
| 348 | Q: | ...she bit you, correct? |
| 349 | | |
| 350 | A: | No, sir. |
| 351 | | |
| 352 | Q: | Okay, please explain how the bite occurred again. |
| 353 | | |
| 354 | A: | Uh, I was - I believe I was trying to get the other officers. Let's see what this |
| 355 | | says. (Unintelligible). Oh, "She continued to struggle as I attempted to direct |
| 356 | | officers to where I was. As she was struggling she bent over and bit my right |
| 357 | | hand." |
| 358 | | |
| 359 | Q: | And I'm sorry, and when did this occur? While she was in - this was after she |
| 360 | | was handcuffed, correct? |

7 - 8 - 15

| 361 | | |
|---|---|---|
| 362 | A: | Correct. |
| 363 | | |
| 364 | Q: | Was she still on the ground? |
| 365 | | |
| 366 | A: | No. |
| 367 | | |
| 368 | Q: | Okay, so please explain to me how did this occur? Was it in transition to the |
| 369 | | car? From the ground to the car? |
| 370 | | |
| 371 | A: | Well, we were talking towards the car... |
| 372 | | |
| 373 | Q: | So I'm asking you how were you holding her? Did you have a firm grip |
| 374 | | comply? Did - were your hands on her... |
| 375 | | |
| 376 | A: | Oh. |
| 377 | | |
| 378 | Q: | ...during the time? |
| 379 | | |
| 380 | A: | I don't recall. |
| 381 | | |
| 382 | Q: | So how did the struggle ensue if she was cooperating with you and walking to |
| 383 | | the car? |
| 384 | | |
| 385 | A: | Well, she's struggling. She doesn't wanna go to the car, so then I guess I'm also |
| 386 | | trying to, "Hey..." The guys are across the street, trying to tell them. And in that |
| 387 | | process of trying to direct them in talking on the radio she bends over and bites |
| 388 | | my hand. So I don't know exactly where my hands were. I was doing a bunch of |
| 389 | | different things at once. |
| 390 | | |
| 391 | Q: | Okay. So is it safe to say that you didn't have your hands on her during that |
| 392 | | time? |
| 393 | | |
| 394 | A: | I don't know. |
| 395 | | |
| 396 | Q: | Please explain how - once again how Ms. (Thomas) bit you on the hand. |
| 397 | | |
| 398 | A: | She bent over and bit my hand right on my thumb. |
| 399 | | |
| 400 | Q: | Did she have to turn around or was she facing you or where were your hands... |
| 401 | | |
| 402 | A: | I don't know. |
| 403 | | |
| 404 | Q: | ...positioned when she bit you? |
| 405 | | |

7 - 9 - 15



| | | |
|---|---|---|
| 406<br>407 | A: | Uh, I think they were like kind of down on my side. I'm not sure. |
| 408<br>409 | Q: | And tell - and tell me what - what you did after she bit you, sir. |
| 410<br>411 | A: | I punched her in the face. |
| 412<br>413<br>414 | Q: | When she bit you in the hand did she - was her bite like grabbing? Was she latching on to your hand or... |
| 415<br>416 | A: | No, I didn't give her time. |
| 417<br>418 | Q: | So did she stand up or stood up after she bit your hand? |
| 419<br>420<br>421<br>422 | A: | No. It was an immediate reaction, so she was still bent over, I punched her in the face, she fell immediately. And then the officers finally came up the hill and they took her into custody after that. |
| 423<br>424 | Q: | Did anyone witness you punch Ms. (Thomas) in the face? |
| 425<br>426<br>427 | A: | Uh, I believe - yeah, the people that were in the back of the, uh, apartments should have. And maybe the officers coming up. I didn't ask 'em. |
| 428<br>429 | Q: | Which officers came up? |
| 430<br>431 | A: | Uh, that would be Officers (Davis) and Rahmes. |
| 432<br>433 | Q: | Rahmes. Can you spell that for me? |
| 434<br>435 | A: | R-A-H-M-E-S. |
| 436<br>437 | Q: | Did you suffer any injuries from the bite? |
| 438<br>439 | A: | No. |
| 440<br>441 | Q: | Did you call for EMS for yourself? |
| 442<br>443 | A: | No. |
| 444<br>445<br>446 | Q: | If you believe that her vehicle was involved in a crime, why did you not seize the vehicle and get a warrant to search it? |
| 447<br>448<br>449 | A: | Because I didn't know for sure that that was the car. I had nothing saying that that was definitely the car. |
| 450 | Q: | Did you get a tag number? |

7- 10 -15

451
452     A:      I did.
453
454     Q:      With the lookout for the vehicle...
455
456     A:      Oh, it had a drive out tag.
457
458     Q:      ...in the e-mail?
459
460     A:      It had a drive out tag.
461
462     Q:      Did Ms. (Thomas)'s vehicle have a drive out tag?
463
464     A:      No.
465
466     Q:      So why did you run the vehicle?
467
468     A:      Because they were putting the drive - supposedly according to the e-mail they
469             were putting a drive out tag on it and driving it around.
470
471     Q:      And what was the description of the suspects again that was driving the silver
472             Infinity committing these crimes?
473
474     A:      Uh, two black males.
475
476     Q:      Was Ms. (Thomas) a black male?
477
478     A:      She was not.
479
480     Q:      Did she have two black males with her?
481
482     A:      She did not.
483
484     Q:      Can you tell me who was with her at the time?
485
486     A:      Her daughter.
487
488     Q:      Did you search Ms. (Thomas)'s vehicle?
489
490     A:      I looked through it to see if I could find the keys or a driver's license.
491
492     Q:      What area of the vehicles did you search?
493
494     A:      Uh, the center console. I opened the back. There was nothing back there. Yeah,
495             I didn't find it.

7 - 11 - 15


496

497 Q: So it's safe to say that you searched the entire vehicle?

498

499 A: Yes.

500

501 Q: Okay, why didn't you code 10 the vehicle?

502

503 A: Well, it was her car, it was parked at her residence, so there was no reason to
504 code 10 it.

505

506 Q: I'm sorry, I don't know if I asked you, did you ever confirm the warrant?

507

508 A: Yes.

509

510 Q: Okay, and what did you charge Ms. (Thomas) with?

511

512 A: I charged -- wait, I did not confirm the warrant. The warrant could not be
513 confirmed because they said their computers were down. I checked the warrant,
514 you know, I tried to confirm it, but they never confirmed it. But I charged her
515 with, uh - uh, physical obstruction.

516

517 Q: Did you ever go back to confirm the warrant?

518

519 A: I tried to later in the night it still - they still said the computers were down.

520

521 Q: Okay, so that would have been May 1, correct?

522

523 A: Correct.

524

525 Q: Have you checked since then? From then to now.

526

527 A: I have not. Uh, some officers - she was actually driving the car -- I don't know
528 what day it was -- they pulled her over and impounded her car and ran her
529 name. They said she didn't have a warrant anymore, so I assume it's been, you
530 know, while she was in jail they also took care of that. That's all I know.

531

532 Q: All right, excuse me for one second. Excuse me, Miss.

533

534 A1: Oh, I'm sorry.

535

536 Q: Oh.

537

538 A1: Sorry, darlin'.

539

540 Q: Oh. Okay, Sergeant Hines, you stated that Ms. (Thomas) bit you, therefore you

| 541 | | punched her in the face, correct? |
|---|---|---|
| 542 | | |
| 543 | A: | Correct. |
| 544 | | |
| 545 | Q: | Okay, considering the fact that you had to use force, you had to apply force to |
| 546 | | Ms. (Thomas) for biting you, why didn't you upgrade her charges to a more |
| 547 | | serious offense, such as battery on a police officer? |
| 548 | | |
| 549 | A: | Uh, she didn't leave any actual physical marks, so I felt the charge was |
| 550 | | appropriate. |
| 551 | | |
| 552 | Q: | Can you explain the severity of the bite, how you felt at the time? |
| 553 | | |
| 554 | A: | Uh, she just put her - basically barely got her teeth on me. I yanked it out before |
| 555 | | she had the chance to hurt me. |
| 556 | | |
| 557 | Q: | Okay, so when you yanked your hand away were you still in danger from the |
| 558 | | bite or for her attempt - did she continue to attempt to bite you? |
| 559 | | |
| 560 | A: | Oh, I don't know. |
| 561 | | |
| 562 | Q: | So did you feel the punch to the face was necessary? |
| 563 | | |
| 564 | A: | I didn't feel anything. It was just a reaction. |
| 565 | | |
| 566 | Q: | Okay. Initially when you first encountered Ms. (Thomas) you asked her a series |
| 567 | | of questions. Why did you feel it unnecessary to answer or respond to her |
| 568 | | questions? |
| 569 | | |
| 570 | A: | What questions? |
| 571 | | |
| 572 | Q: | Such as, "Why are you investigating?" |
| 573 | | |
| 574 | A: | Oh, because... |
| 575 | | |
| 576 | Q: | What was the purpose of your investigation? |
| 577 | | |
| 578 | A: | ...because, uh, I didn't wanna jeopardize the investigation. |
| 579 | | |
| 580 | Q: | Did you feel that you were being condescending to Ms. (Thomas)? |
| 581 | | |
| 582 | A: | No, sir. |
| 583 | | |
| 584 | Q: | Did you feel that you were being professional and courteous? |
| 585 | | |

| 586 | A: | Yes, sir. |
| 587 | | |
| 588 | Q: | Although you never mentioned why - why you were investigating Ms. |
| 589 | | (Thomas), you never told her she was under arrest... |
| 590 | | |
| 591 | A: | Mm-hm. |
| 592 | | |
| 593 | Q: | ...and you never told her that she could possibly be a warranted person and you |
| 594 | | needed to confirm the warrant and you also needed her i- her identification. If |
| 595 | | you would have told these things to Ms. (Thomas) did you feel that she would |
| 596 | | have been more cooperative if she knew why you were there? |
| 597 | | |
| 598 | A: | No. |
| 599 | | |
| 600 | Q: | And what gave you that impression? |
| 601 | | |
| 602 | A: | She was already agitated from the first time me just looking at her car and |
| 603 | | getting the tag. |
| 604 | | |
| 605 | Q: | And how did you come to that conclusion? |
| 606 | | |
| 607 | A: | Which part? |
| 608 | | |
| 609 | Q: | That she was already agitated. |
| 610 | | |
| 611 | A: | Because she was saying, "Why are white people back here?" And, um, "Is your |
| 612 | | major black?" And, you know, "I can't trust white people." And all this stuff. |
| 613 | | |
| 614 | Q: | Was that before or after you refused to answer any of her questions? |
| 615 | | |
| 616 | A: | I don't know. |
| 617 | | |
| 618 | Q: | Well, I'll tell you, it was after you refused to answer any of her questions. Is |
| 619 | | there anything I have failed to ask you that might be vital to this investigation, |
| 620 | | sir? |
| 621 | | |
| 622 | A: | Not that I know of. |
| 623 | | |
| 624 | Q: | Have you been honest in your answers? |
| 625 | | |
| 626 | A: | I have. |
| 627 | | |
| 628 | Q: | Be advised that should it become necessary in this investigation you may be |
| 629 | | directed to submit to a Computer Voice Stress Analysis Exam per APDSOP |
| 630 | | 3120. Do you acknowledge this? |

7- 14 -15

631
632    A:          I do.
633
634    Q:          Is there anything else you wish to add to your statement?
635
636    A:          I do not.
637
638    Q:          Thank you. That will conclude this interview.
639
640
641 The transcript has been reviewed with the audio recording submitted and it is an accurate
642 transcription.
643 Signed_____

7 - 15 - 15



Employee: James HINES          APD ID # 3669          OPS#: 19-C-0209-UAF

---

**Allegation: (Type Allegation and Work Rule #)**
The Department requests an investigation on the allegation that Sergeant James Hines used uncessary force during the arrest of the complainant Maggie Thomas on May 1, 2019

---

According to APD.SOP.2020 your responsibilities, restrictions, and rights as an employee are:

**3.4 Employee Responsibilities**
All employees must answer questions and/or make available any relevant materials or sworn statements concerning an investigation of employee misconduct when directed to do so by a disciplinary authority or duly appointed investigator. Employees will provide all relevant information and materials and answer all questions honestly, completely, and to the best of their ability. **An employee's refusal to cooperate and provide sworn statements, answers, or relevant materials during an authorized administrative investigation will result in disciplinary action, up to and including dismissal.**
Any employee reporting for duty under the influence of any substance such as prescription medications, alcohol, over the counter medications, or other substances that, while legal, may adversely affect the judgment or performance of that employee during duty hours, must notify his or her immediate supervisor prior to commencing work.

**3.5 Employee Restrictions**
Except as authorized, in an investigation into employee misconduct, employees may not:
Interfere with the complaint investigation in any manner
Independently participate in the investigation
Be present during any investigative contact with a complainant or with witness involved in the investigation
Contact the complainant or witness concerning the allegations; or
Discuss the existence or facts of a complaint with anyone except designated Department authorities conducting the investigation. This restriction will not be construed to prohibit an employee from discussing any aspects of a complaint with his or her attorney or other representative, or to prevent his or her attorney from developing information for his or her defense.

**3.6 Employee Rights**
All employees have the right to have an attorney or other representative present during questioning in an administrative investigation. However, any employee who is either an accused employee or a witness in a complaint investigation may not act in the capacity of representative for any other employee being questioned as an accused or witness in that complaint investigation. An employee's representative shall be allowed to consult with the employee, and to object to questions, but shall not delay or interfere with the questioning process. Any objections to the form or content of the questions will be noted, but the employee shall still be required to answer fully and completely any and all questions presented during the investigation. An employee cannot delay questioning for more than three hours beyond the time he or she was given notice to appear for the questioning.
The employee being questioned as the accused will be issued the Written Notice of Allegations form (Form APD 848), which includes, but is not limited to a written statement of the allegation(s) and the employee's rights and responsibilities relative to the investigation against him/her prior to any questioning.
All employees who are subject to any form of discipline, whether non-adverse or adverse action, will be given written documentation of the disciplinary action taken. This written documentation must state the work rule which applies to the disciplinary action taken, information and/or documentation supporting the alleged work rule violation, and the disciplinary action that was taken. Employees must sign the written documentation stating that they have been notified of the disciplinary action taken. The employee's signature does not constitute an admission of guilt or wrongdoing, it serves only as receipt of the written documentation of disciplinary action and notification of the same.

The employee against whom a complaint has been filed may review the investigative folder upon completion of that investigation. The OPS commander will designate the area where the folder is to be reviewed and establish rules governing the review of the folder.

If the employee is being questioned as a suspect in a criminal investigation, the employee will be afforded complete Miranda Rights.

Administrative statements made by employees and evidence gained as a result of such statements shall not be used against the employee in criminal proceedings involving the employee except in cases of perjury.

---

I have received a copy of the allegation(s) and my rights and responsibilities relative to the investigation against me as the accused prior to any questioning.


Employee Signature/Date                                    Witness/Date



# ATLANTA POLICE DEPARTMENT
## Awareness Statement: Truthfulness

OPS Complaint # <u>19-C-0209-UAF</u>

This statement form will be completed for every employee, accused or witness, in its entirety by the interviewer, and will be signed by the employee, prior to obtaining a statement for any allegation being investigated by the investigating authority.

I am aware that I may be <u>**dismissed**</u> for a Sustained violation of **APD.SOP.2010, "Employee Work Rule" 4.1.03 (Truthfulness)** which reads:

*"Employees will be truthful in their written and spoken words at all times."*

Do you understand this statement?   ☑ Yes    ☐ No

---
James Hines
(Employee's Printed Name)

---
(Employee's Signature)

---
5/6/15 12:50
(Date/Time)

---
Gartrell Walton
(Interviewer's Printed Name)

---
(Interviewer's Signature)

---
05/12/19   12:52
(Date/Time)

---
Anna Avato
(Witness Representative's Printed Name)

---
(Witness/Representative's Signature)

---
5/12/19   12:51
(Date/Time)

Form APD 853   Revised 2/22/06

## Walton, Gartrell

Hi. My name is Salirian Thomas I am cousin of Maggie Thomas. I was at the scene on May 1,2019 with officer J. Hines when I arrived I hand my phone out to record I saw officer J. Hines on top of Maggie while she was faced down in handcuffs and he tazzed her 3times in her back I asked him why was he doing such and he stopped, picked her up off the ground and again while in handcuffs punched in her left eye while throwing her back onto the ground she landed on her back and cried. I can witness and say that he absolutely used too must force and unnecessary abuse while handling a handcuffed female.

Sent from my iPhone

8 - 1 - 1

# ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

EMPLOYEE:                                        OPS #: 19-C-0210-UAF

| EMPLOYEE NAME (LAST, FIRST, MI) | | | CLASSIFICATION | POSITION NUMBER | DATE & TIME OF STATEMENT | |
|---|---|---|---|---|---|---|
| DAVIS, Dekonti | | | SPO | 4765 | 14MAY19 | |
| RACE | SEX | DOB | DATE OF EMPLOYMENT | 4 DIGIT ID NO. | DIVISION | SECTION / WATCH |
| B | M | | 20MAR07 | 4765 | FOD | Z-6 / EVE |

| | |
|---|---|
| Investigator's Name | of the Atlanta Police |
| I am Sergeant Robert J. Albertini | Department |
| | You are being questioned as a |
| | TYPE STATUS: WITNESS |

in an official investigation by the Department. Also present is: REPRESENTATIVES NAME: N/A

All employees must answer questions and make available relevant materials or sworn statements concerning an investigation of allegations of employee misconduct when directed to do so by a disciplinary authority or duly appointed investigator. Employees may obtain representation but cannot delay questioning for more than three hours beyond the time he or she was notified of the questioning. Except as authorized or required, an employee shall not interfere with nor contact persons involved in an internal investigation nor disclose or discuss with anyone except the designated Departmental authority the existence or facts of an internal investigation. This restriction will not be construed to prohibit an employee from discussing any aspect of the investigation with his or her representative. Administrative statements made by employees and evidence gained by reasons of such statements may not be used against the employee in criminal proceedings involving the employee except in cases of perjury.

Q. What is your name?

A. Dekonti Davis

Q. In what capacity are you employed by the city of Atlanta?

A. Senior Patrol Officer Zone 6 Evening Watch

Q. How long have you been employed by the Atlanta Police Department?

A. 12 years

Q. What is your current rank and assignment?

A. Senior Police Officer Zone 6, but I operated as Unit #3604 on that date.

8I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Dekonti G. Davis_
EMPLOYEE SIGNATURE

Sworn and subscribed to me this ___14th___ day of ___MAY___ in the year ___2019___

Dekonti Davis
PRINT EMPLOYEE NAME                                    NOTARY PUBLIC

P - 9 - 1 - 4

Form APD826 revised 1/1/2000




# ATLANTA POLICE DEPARTMENT
## EMPLOYEE STATEMENT

Q. On May1, 2019, were you working on this date?

A.      Yes

Q. Did you assist Sergeant James Hines on a call at 657 Boulevard, NE?

A. Yes

Q. Did Sergeant Hines have a black female in his custody?

A. Yes

Q. Did you later establish that the identity of the female was Maggie Thomas?

A. Yes

Q. Did you witness Sergeant Hines use physical force on Ms. Thomas?

A. Yes

Q. Please explain in detail what you observed?

A. I observed Sgt. Hines forcefully plant the Ms. Thomas face first onto the concrete. I noticed she also was handcuffed.

Q. Did you see any injuries on Ms. Thomas?

A. Yes, abrasions and redness on the left side of her face I strongly believe. As she was in custody from transport to the jail and back to precinct for ID pictures, the area eventually became blackened.

---

8I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Dekonti A. Davis_
EMPLOYEE SIGNATURE

Sworn and subscribed to me this ___14th___ day of ___MAY___ in the year ___2019___

__Dekonti Davis__
PRINT EMPLOYEE NAME                                              NOTARY PUBLIC

P  -  _9_  -  _2_  -  _4_

Form APD826 revised 1/1/2000

Q. Did Ms. Thomas tell that she was punched in the face by Sergeant Hines?

A. Yes

Q. Did you see Ms. Thomas resisting arrest?

A. No I did not

Q. Did Sergeant Hines tell that he punched Ms. Thomas in the face?

A. No

Q. Did you sign the arrest ticket for the purpose of the stat as Sgt. Hines instructed?

A. No, I only signed as the transporting officer.

Q. Is there anything that I have failed to ask you that might be helpful in this investigation?

A. No

Q. Have you been honest in your statement today?

A. Yes

Q. Be advised that should it become necessary in this investigation you may be directed to submit to a computer voice stress analysis exam per APD.SOP3120. Do you acknowledge this official notification?

A. Yes

8I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_Dekonti J. Davis_
EMPLOYEE SIGNATURE

Sworn and subscribed to me this  __14th__  day of  __MAY__  in the year  __2019__

Dekonti Davis
PRINT EMPLOYEE NAME                           NOTARY PUBLIC

P - 9 - 3 - 4




# ATLANTA POLICE DEPARTMENT
# EMPLOYEE STATEMENT

Q. Is there anything else you wish to add at this time?

A. No

8I have read or had read to me the above statement and I swear or affirm that it is true to the best of my knowledge and belief.

_____
EMPLOYEE SIGNATURE

Sworn and subscribed to me this ___14th___ day of _____MAY_____ in the year ___2019___

_____
Dekonti Davis
PRINT EMPLOYEE NAME                                    NOTARY PUBLIC

P - *9* - 4 - *4*



# ATLANTA POLICE DEPARTMENT
## Awareness Statement: Truthfulness

OPS Complaint #     19-C-0210-UAF

This statement form will be completed for every employee, accused or witness, in its entirety by the interviewer, and will be signed by the employee, prior to obtaining a statement for any allegation being investigated by the investigating authority.

I am aware that I may be **dismissed** for a Sustained violation of **APD.SOP.2010, "Employee Work Rule" 4.1.03 (Truthfulness)** which reads:

*"Employees will be truthful in their written and spoken words at all times."*

Do you understand this statement?     ☑ Yes     ☐ No

_____
Dekonti Davis
(Employee's Printed Name)

_____
(Employee's Signature)

5/14/19   3:49 pm
(Date/Time)

_____
Gartrell Walton
(Interviewer's Printed Name)

_____
(Interviewer's Signature)

05/14/19   3:50 PM
(Date/Time)

_____
(Witness Representative's Printed Name)

_____
(Witness/Representative's Signature)

_____
(Date/Time)

Form APD 853   Revised 2/22/06



**Workflow Status: Report Approved by Central Records**

## Incident Info

| Incident # | | Report Date | Time | Date Occurred | | Time | Poss. Date | | Time | Beat |
|---|---|---|---|---|---|---|---|---|---|---|
| 180261243-00 | | 5/1/2019 | 2039 | 5/1/2019 | | 1839 | 5/1/2019 | | 2048 | 603 |
| Shift | Zone | Location | | | | Location Type | Rpt. District | | Rpt. Officer | Inv. Officer |
| | 06 | 653 BOULEVARD NE | | | | 13 | 603 | | 3669 | |
| Children Inv. | Family Inv. | Gang Related | Prev. Complaints | | Prior Court Orders | | Disposition | | Dispo. Date | Time |
| 0 | | 2 | | | | | | | | |

| How Committed |
|---|
| SUBJECT HAD A TRAFFIC WARRANT AND FOUGHT THE POLICE |

| Reason No Arrest | | Relationship of Parties | Weather |
|---|---|---|---|
| | | | |

## Offenses

| | Offense | | Offense | | | | | # of Victims |
|---|---|---|---|---|---|---|---|---|
| **1** | 4802 | | OBSTRUCT CRIM INVEST | | | | | 1 |
| | IBR Code | Att/Comp | UCR | UCR Arson | UCR Status | Bias Incident | Method of Entry | Family Violence |
| | 4802 | C | 2600 | 0 | | | | |

No Involved Parties to Display!

No Suspects to Display!

## Arrests



| | Name Type | Name | | Location | | | | | County | |
|---|---|---|---|---|---|---|---|---|---|---|
| **1** | Arrest | THOMAS, MAGGIE MALIKA | | | | | | | | |
| | Address | | | | Bldg. | Apt. # | Home Phone | | | |
| | 657 BOULEVARD, ATL, GA 30308 | | | | | 125 | | | | |
| | DOB | Age | DL Number | DL State | DL Expire | Sex | Race | Height | Weight | Hair | Eyes |
| | 7/22/1988 | 30 | | | | F | B | | | | |
| | SSN | | Occupation | | | | | | | |
| | | | | | | | | | | |
| | Employer | | | Employer Address | | | | Work Phone | | Wk. Ext. |
| | | | ... | | | | | | | |

| Charge Type | Charge Num | Section | Remarks |
|---|---|---|---|
| GC | 1 | 106-81.7 | |
| GC | 2 | 99-WAR-ATL | |

10 - 1 - 3


## Vehicles

| 1 | Owner | | | Record Type | | | | | VIN | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | OTHER | | | | | JNKAJ09EX8M300941 | | |
| | Year | Make | Model | | Style | Color #1 | Color #2 | Tag Type | Tag State | Tag # | |
| | 2008 | INFI | | | LL | SILVER | | P | GA | RIV7561 | |
| | Date Stolen | Time Stolen | Date Reported | | Time Rprt. | Date Recov. | Time Recov. | | Value Stolen | Value Recov. | |
| | 5/1/2019 | 2040 | 5/1/2019 | | 2039 | | | | | | |

| Total Vehicle Values | Total Value Stolen | Total Value Recovered |
|---|---|---|
| | | |

No Property to Display!

## Narrative

While patrolling the Boulevard area I went behind the apartments at 657 Boulevard NE. I saw a black female sitting in a silver Infiniti E35 GA tag #RIV7561. I had gotten an earlier lookout on a silver Infiniti so I pulled out on radio and talked to the driver Maggie Thomas. I asked Ms Thomas if the car was hers and she said it was. I then told her that the car had no insurance and to make sure that she did not drive it. She then became agitated and asked why I was looking at her car and what was I doing back behind her apartments. I then told her I wasn't going to tell her why I was checking her car out. She then asked me my supervisors name and I gave her all the information about my Lieutenant, Captain, Major, and that I worked in Zone 6. She said something about there shouldn't be a white officer harrasing her and then she wanted to know if my Major was white or black. I gave her the information and then left the parking lot.

As I got a block or so away I began to wonder why she became so agitated at my mere presence and ran her name. She came back with a warrant for her arrest from the City of Atlanta for an FTA on a Speeding Ticket. I then asked radio for another unit and 3604 Officer Davis said he was headed to the area. I then told him I was going to go back to the parking lot to make sure Ms. Thomas did not get away. As I entered the parking lot I saw that Ms. Thomas was still sitting in her car with her daughter (Marlee Moore,11/24/14) standing in the passenger seat.

I asked Ms, Thomas for her driver's license and she stated that she didn't have it. I then asked her name and she refused to give it to me, She was talking on the phone at the time, and I asked her to get off the phone and get out of the car. She refused to do so. I then took one of her hands and put a handcuff on it. I then asked her to give me her other hand, She did not give me her hand. She instead held onto her daughter while dialing the phone with the other hand. I held her left arm behind her back and asked radio to have 3604 hurry up. I then asked for any other unit in the area to respond. I could not take Ms. Thomas to the ground because of her daughter so I had to just continue to hold her hand behind her back and wait for backup. Meanwhile Ms. Thomas called 911 and asked for them to send an officer and told the operator what was happening.

Ms. Thomas then began to honk her horn with her head and eventually got people to come out of the apartments. One of the ladies that came out got Ms. Thomas' daughter and the daughter took Ms. Thomas' phone. I then took Ms. Thomas to the ground and she still refused to give me her right hand. I took out my Taser and drive-stunned her to her back. She then began to comply and I eventually was able to get both hands cuffed. As I was standing Ms. Thomas up and walking her to my car she began to resist again and said she was not getting in my police car. She continued to struggle as I attempted to direct officers to where I was. As she was struggling she bent over and bit my right hand, I immediately punched her in the face and she fell to the ground. At this time Officer D. Davis and Officer R. Rahmes 3604 arrived on scene and were able to take control of Ms. Thomas. She continued to fight them and refused to get in my police car. Officer Rahmes brought his car to the back of the lot and was able to get Ms. Thomas into the car. Her daughter was left with the father. (Brandon Thomas 7/8/91) Upon searching the car I did not find an ID for Ms. Thomas or the keys for the vehicle. I rolled up all the windows, locked the doors, and left the vehicle in the parking lot.

During the altercation a small crowd had gathered and they were filming the scene and shouting. I had a few other officers respond and they helped keep the crowd out of the crime scene. As soon as we got Ms. Thomas under control I had everyone relocate to 536 North Ave at the Pinnacle Credit Union. While there I completed the arrest ticket and attempted to confirm the warrant. I also pulled up Ms. Thomas' Driver's License picture on OMNIXX and confirmed her identity. The warrant for her arrest was unable to be confirmed due to the computers being down

10 - 2 -3


for the City of Atlanta. Ms. Thomas was charged with Disorderly Conduct Physical Obstruction 106-81(7).

Sgt. D. Jones 3692 and Captain A. Clay 600 arrived on scene and spoke with Ms. Thomas. She complained to them that her face hurt and Grady EMS 518 responded to the location, treated, and released her. ID Unit 7334 Walder responded to the Zone 6 precinct and took pictures of Ms. Thomas' swollen left eye. He also took picture of my right hand that had no visible marks from being bitten. Ms. Thomas was then transported to City Jail.

AD9X-00281259 NCIC1 20190501 21:11:56 20190501 21:11:55 0AF301DC33
1L010AF301DC332QWA
GAAPD4003

***MESSAGE KEY QWA SEARCHES ALL NCIC PERSONS FILES WITHOUT LIMITATIONS.
MKE/WANTED PERSON
EXL/D - NO EXTRADITION - INSTATE PICK-UP ONLY. SEE MIS FIELD FOR LIMITS
ORI/GAAPD4143 NAM/TH0MAS,MAGGIE MALIKA SEX/F RAC/B POB/GA
DOB/19880722 HGT/505 WGT/160 EYE/HAZ HAI/BLK FBI/FHVPPAD5A CTZ/US
SMT/TAT BACK
MNU/PI-GA4627590P SOC/260658310
OLN/051502813 OLS/GA OLY/2025
OFF/FAILURE TO APPEAR - SEE MIS
OOC/TRAFFIC OFFENSE
DOW/20190211 OCA/18TR007409
WNO/18TR007409
MIS/N0EX/PICKUP METR0 50 MILE RADIUS/COMMITTED THE 0FFENSE 0F FAILURE T0
MIS/APPEAR/B0ND $300 SIGN 0WN BOND/0RG CHARGE SPEEDING 11 T0 14 MPH 0VER/APD
MIS/0CA#180261243/CIT#A1631000527/ADDL B0ND $500 SIGNATURE/ADDL WN0
MIS/18TR052571/0RG CHARGE PERM UNLAW/VEH 0PER/APD
MIS/0CA#182000276/CIT#A0781000492/C0NFIRM WITH GCIC UNIT AT 4045464242/LKA 657
MIS/B0ULEVARD NE APT 105 ATLANTA GA 30308
DNA/N
ORI IS ATLANTA POLICE DEPARTMENT 404 546-2385
AKA/TH0MAS,MAGGIE
SMT/TAT L ARM
SMT/TAT L HND
NIC/W476054974 DTE/20190213 1428 EST DLU/20190213 1433 EST
IMMED CONFIRM WARRANT AND EXTRADITION WITH ORI

THE UNDERSIGNED, BEING DULY SWORN, UPON HIS OR HER OATH, DEPOSES AND STATES THAT THE FOREGOING IS TRUE, CORRECT, COMPLETE AND LEGIBLE TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF.

| Reporting Officer (Elec. Sig.) | ID # | Assignment | Gender | Signed Date |
|---|---|---|---|---|
| HINES  (YES ) | 3669 | 603 | | 5/2/2019 |
| Supervisor (Elec. Sig.) | ID # | Assignment | Gender | Signed Date |
| HINES  (YES ) | 3669 | 603 | | 5/2/2019 |

| Clerk ID # | 0089 | | File Date | 5/2/2019 10:26:24 AM |
|---|---|---|---|---|

10 - 3 - 3



# CITY OF ATLANTA
## ARREST CITATION

| 1. Incident / CICA Number: | 2. GA Code(s): | 3. UCR: | 4. Family Violence: |
|---|---|---|---|
| 1:8 0: 2 :6 1:2: 4:3 | | | ☐ Yes ☑ No |

| 5. ☐ Reported Case ☑ Witnessed Case | Off Days: S M T W T F (S) | Court Day: M | Time: 1500 |
|---|---|---|---|

| 6. Incident Report Made? | ☑ Yes ☐ No | If yes, indicate report type | ☑ Original ☐ Supplement | ☑ Computer ☐ Handwritten |
|---|---|---|---|---|

**DEFENDANT**

7. Name: (last) Thomas (first) Maggie (middle) Melike (alias)

8. Address: St. No. 657 Street Name Boulevard Type Apt. ☐ NW ☑ NE ☐ SW ☐ SE

9. City Atlanta, GA State GA Zip 30308 Telephone # — ☑ Physical Arrest ☐ Copy of Charges

10. Race/Sex B/F DOB 07/22/88 ☑ DL# 05150 2813 ☐ SSN — If DL# issuing State: GA

**VIOLATION**

11. On 5/1/19 at 8:40 AM/PM in the City of Atlanta, Fulton County the above accused did commit the offense(s) of: NOTE: (If arrest is based on a warrant; list the warrant #, and issuing jurisdiction in block 12.)

a. Atlanta Police Warrant #18TR007403 — against section ( ) state law ( ) city of ordinance

b. Disorderly Conduct 106-87(7) — against section (X) state law ( ) city of ordinance

c. — against section ( ) state law ( ) city of ordinance

12. In that the accused did: have a warrant for her arrest for a Traffic Offense (Speeding) When I attempted to take her into custody she refused to obey commands. After fighting with her which is the presence of her children I drive stunned her once and she Hand me to handcuff

13. Place of Offense: (Street address) 653 Boulevard ☐ NW ☑ NE ☐ SW ☐ SE Beat 603

14. Place of Arrest: (Street address) 653 Boulevard ☐ NW ☑ NE ☐ SW ☐ SE Beat 603 at 8:40 AM/PM on 5/1/19

**SUMMONS**

15. YOU ARE HEREBY COMMANDED to appear at the Municipal Court, General Division of the City of Atlanta, to be held at 150 Garnett St., S.W. on: 2 day of M, 20 19, at 8:00 AM/PM.

Signature Jc1

16. Arresting Officer: (print) Jey Hims APD ID # 5665 Radio # 3614

17. Arresting Officer: APD ID # Radio #

18. Investigating Officer: APD ID # Radio #

19. Transporting Officer: D. Davis APD ID # 64765 Radio # 3604

20. Codefendants (list name, first initial) List all on this line: Ticket #

**VICTIM / WITNESS**

21. Name (Victim/ Witness/Business Name): City of Athens Telephone # Race/ Sex Rel Code 3 Hospital

22. Name (Victim/Witness/Business Name): Telephone # Race/ Sex Rel Code Hospital

23. Rel Code: (1)Domestic (2)Acquaintance (3)Stranger (4)Bias Crime (W)Witness Check block if victim sent to hospital

**CERTIFICATION**

24. ARRESTING OFFICER'S CERTIFICATION: The undersigned, being duly sworn, upon his/her oath, deposes and states that he/she has just and reasonable grounds to believe, the person named herein has committed the offense(s) herein set forth, contrary to law. Affiant states that the foregoing is true, complete and legible to the best of his/her knowledge and belief.

OFFICER'S SIGNATURE _____

These charges, have been reviewed for accuracy (under the laws of the State of Georgia and the City of Atlanta) and have been sworn and subscribed before me this ____ day of _____ Yr __

SUPERVISOR'S SIGNATURE _____

25. Security Risk

COURT COPY

Form APD 600, 9/14

THE MUNICIPAL COURT OF ATLANTA Atlanta, Fulton County, Georgia:

Personally appeared the undersigned affiant who, being sworn on oath says that MAGGIE MALIKA THOMAS (the accused) described as:

Race:  **BLACK**                        Sex:  **FEMALE**                Date of Birth:  July 22, 1988

Address:    657 BLVD NE APT 105, ATLANTA, GA 30308

accused herein, did commit the offense of **Failure to Appear** in said City and County on or about January 9, 2019 as prohibited by Atlanta City Code §62-71 in that the accused did fail to appear before the HONORABLE JUDGE GARY E JACKSON on Wednesday, January 9, 2019 at 10:00 AM in courtroom 6D.

**OFFENSE(S)**                                                                  **CITATION #**
SPEEDING 11 TO 14 MPH OVER                                                      A1631000527

        Officer: SYLVIA ZAZUETA the undersigned affiant make this affidavit that a warrant may issue for this arrest.

_____
                                                        Affiant Signature

Sworn and subscribed before me this 11th day of February, 2019

_____
                                                        Judge, Municipal Court of Atlanta

**ARREST WARRANT**

ATLANTA, Fulton County, Georgia:

To the Chief of Police of Atlanta, or any duly authorized officer of the City of Atlanta, or his deputy, and to any Sheriff or his deputy, Coroner, Constable, or Marshall of said State, GREETINGS:

Affiant SYLVIA ZAZUETA makes an oath before me that on **January 9, 2019**, in the City and County aforesaid, the above named accused did commit the offense of **Failure to Appear** in Municipal Court in violation of Atlanta City Code §62-71, the place of the occurrence being Municipal Court of Atlanta, 150 Garnett Street SW, Atlanta, Fulton County, GA 30303.

You are therefore hereby commanded to arrest the body of the said accused, based on probable cause provided by the affiant, and bring him before me or some other judicial officer of this City to be dealt with as the law directs.

Herein fail not this 11th day of February, 2019

SIGN OWN BOND

_____
                                                        Judge, Municipal Court of Atlanta

                                                        Warrant #18TR007409
                                                        Bond Amount:

                                Signature bond: Yes / No per: _____

11 - 2 - 2



# Atlanta Police Department
Incident Recording Request Form

## REQUEST FOR TAPE RECORDINGS

Atlanta Police Department audio recordings are preserved for a minimum of 120 days. A Police Officer must request tape recordings through their Supervisor. The records are captured via DVD recording. All fields must be filled in completely before this request can be processed, return to the Communications Administrative Office.

(Circle choice)

| Citizen/Supervisor/Investigator Name: | Investigator Gartrell Walton | | Shift: DW |
|---|---|---|---|
| Today's Date: 13MAY19 | | Assignment: OPS/Integrity Unit | |
| Contact Telephone #: 404-546-5945 | (404) 546-5945  or (404) 317-8293 | | |

| Location and CAD Incident #: | 653 Boulevard NE / Incident #:191212150 | | |
|---|---|---|---|
| Date of the Incident: | 01MAY19 | Time of Incident: | 1839 |
| Times needed on Tape: | Entire Incident | | |
| Employees / Units Involved: | Sergeant James Hines | | |
| Circle selection requested: | Audio Tape Yes | Printout of Incident Needed  **Yes** | Request # 1 |

### ****Office Use Only****

| Received via what method: | Fax: | Mailed: | Walk-In: | Date: | Time: |
|---|---|---|---|---|---|
| Request Assigned to: CADS Room | | | Deadline: | | |

### TAPE ROOM / CAD PERSONNEL

If information not available, please explain:

| Tape #: | # of tapes attached: | Person Completing Tape: |
|---|---|---|
| Time spent processing: | Cost: $ | (Computed by Public Affairs) |
| Date / Time Notified for pickup: | Office Personnel Making Call: | |

### Receipt / Release Information (Must sign before releasing information)

For Public Affairs Personnel:

| Tapes Released to: | Date Released: |
|---|---|
| Information Received by: | Date: |

**Print and Sign Name:** *Gartrell Walton*

**Date:** *13MAY19*

Revised 8/2004

12 - 1 - 1

# Atlanta Police Department
## Supervisor's Use of Force Incident Supplement Form

**Control Number:**

| Officer's Name (Last) | First | MI | Unique ID | Incident/CICA Number |
|---|---|---|---|---|
| Hines | James | W | 3669 | 180261243 |
| Rank | Officer's Gender | Officer's Race | Officer's Age | Officer's Years of Service |
| Sgt. | Male | White | 42 | 17 |
| Initial Signal on call? | Division | Section | Unit/Watch | Final Signal on Call? |
| 54 | FOD | Zone 6 | Evening | 17F |
| Suspect's Name (Last) | First | MI | Race | Gender |
| Thomas | Maggie | M. | Black | Female |
| Date of Birth | Age | Height | Weight | |
| 7/22/1988 | 30 | 5'6 | 165 | |

## Force Used

Method of Force Used: ☒ Physical Force ☐ OC ☐ ASP ☐ Firearm ☒ CEW ☐ Other (describe): _____

| Were any other officers involved in the use of force? ☐ Yes ☒ No (if yes, list below) _____ | Did force ease arrest? (explain below) ☒ Yes ☐ No |
|---|---|
| | After Offficer administered a drive stun to the subject, she then immediately complied to his commands. |

Did the officer attempt to deescalate the situation?  ☒ Yes ☐ No

If yes, please describe: Responding officers asked Ms. Thomas to get into the car, however she fought with them.

Was audio and video data downloaded from the body camera to Evidence.com ☒ Yes ☐ No | If yes, downloaded by whom: _____

If no, why not? _____

## Physical Force

Did any other officer use physical force? ☐ Yes ☒ No (if yes, who?) _____

| List officers involved: Sgt. James Hines | Did physical force ease arrest? (explain below) ☐ Yes ☒ No |
|---|---|
| | Ms. Thomas continued to fight with officer after being placed into handcuffs. |
| Describe physical force used? Sgt. Hines took Ms. Thomas to the ground by force due to her continued fighting with him. Ms. Thomas was also struck in the face by Sgt. Hines fist after she attempted to bite him. | Were you or other officers affected by physical force? ☐ Yes ☒ No _____ |

Describe injuries: Swollen left eye

## OC Spray

Did any other officer spray? ☐ Yes ☒ No (if yes, who?) _____

| Were any bystanders affected by spray? ☐ Yes ☐ No (if yes, explain below) | Did spray ease arrest? (explain below) ☐ Yes ☐ No |
|---|---|
| Did canister operate properly? ☐ Yes ☐ No (if no, explain below) | Were you or other officers affected by spray? ☐ Yes ☐ No _____ |

Describe injuries: _____

## ASP Baton

Did any other officer use ASP during arrest? ☐ Yes ☒ No

| List officers involved: _____ | Did ASP usage ease arrest? (explain below) ☐ Yes ☐ No |
|---|---|
| Did ASP operate properly? ☐ Yes ☐ No (if no, explain below) | Injuries? ☐ Yes ☐ No |

Describe injuries: _____

## Conducted Electrical Weapon (CEW)

CEW Serial Number: _____

Did the deployment of the CEW bring the Suspect under control?

☐ Yes ☒ No (explain below)

Ms. Thomas was not struck by the taser projectiles. Ms. Thomas complied after Sgt. Hines drive stunned her with his taser.

| CEW Deployment Method Used ☐ Probes ☒ Drive Stun ☐ Both ☐ Other (if no, explain below) | How many probes made contact with the skin or clothing of the Suspect? None |
|---|---|

What was the approximate distance in feet the officer was from suspect at time of CEW deployment?  1 foot or less

List Medical Personnel that removed probes from Suspect: N/A

List all (if any) physical effects the probes had on the Suspect: N/A

APD Form 809, Revised 08/01/2017

13 - 1 - 4

| Was Audio and Video data downloaded from the deployed CEW to Evidence.com ☒ Yes ☐ No<br>If yes, downloaded by whom: Viewed |  | 1. Use a "X" on diagram to indicate the points of impact of all probes that made contact with the Suspect.<br>2. Comments: Probes were not extracted. The subject was drive stunned to gain compliance. |

| **Forced Entry** |
|---|

**Address Breeched:** N/A

| Individual Officers/Investigators involved in Operation (Non-Unit Operation):<br>☐ Officers (List Below)<br>_____ | Units involved in Operation:<br>☐ SWAT<br>☐ APEX<br>☐HIDA Task Force<br>☐Narcotics Unit<br>☐Fugitive Unit<br>☐Vice Unit<br>☐Gang Unit<br>☐ Zone Discretionary Unit<br>List: _____<br>☐ATTF<br>☐ Other (List:_____) |

Equipment used in Breech (Check all that apply)
☐ Chemical Agent
☐ Flash Bang
☐ Incendiary devices
☐ Battering Ram
☐ Other

Burglar Bar at Location? ☐ Yes  ☐ No (If yes, answer the following) -  1. Unlocked ☐ Yes  ☐ No  2. Number of Locking Points: ___
3. Estimated time to breech location (Time) - _____ Seconds

| Material of Entry Door? ☐ Wood  ☐ Steel ☐ Other Material _____  Number of Locking Points ___<br>Unlocked ☐ Yes ☐ No   One Person Ram ☐ Yes ☐ No   Number of Hits for Entry ___ | Was Entry Door Barricaded? (explain below) ☐ Yes ☐ No<br>Wood Beams ☐Yes ☐No   Steel Beams ☐Yes ☐ No<br>Other ☐Yes ☐No   Type: |
|---|---|
| Were Dogs Present? ☐ Yes ☐ No  (if no, explain below) Other type of Animal: _____<br>Number of Dogs/ Animals Present: ____<br>Was Animal Control called to the Scene? ☐Yes ☐No,   Did Animal Control Cite Owner ☐Yes ☐No<br>Animal Control arrival Time ____ Minutes<br>Were the Dogs/ Animals removed from Location ☐Yes ☐No | Were any interior doors breeched? ☐ Yes  ☐ No,<br>Number of interior doors breeched: ___<br>Were there any toilets damaged? ☐Yes ☐No<br>Number of toilets damaged: ___<br>Were Narcotics recovered? ☐Yes ☐No    Weight (grams) ____ |

Were any furnishing or other property damaged? ☐Yes ☐ No   Explain the item(s) damaged and the extent of the damage: _____

Were any windows ported? ☐Yes ☐No    Number of windows: ____
Location of windows ported ☐Front ☐ Side (☐Left ☐Right) ☐Rear ☐Basement / Cellar ☐ Attic ☐ Garage (Check all that apply)
What was the reason for the ported window(s)? Explain: _____

Was the porting beneficial to the mission? ☐Yes ☐No

Was a video surveillance system present? ☐Yes ☐No   Was video surveillance system turned into APD Property? ☐Yes ☐No
Was the video surveillance system damaged? ☐Yes ☐No  (if yes) Explain: _____

13 - 2 - 4

Do you feel any Damage was necessary and authorize[d] [pur]suant to OCGA 17-5-27" Use of force in the execution of [a sear]ch warrant" and APD.SOP.3020 "Search & Seizure" Section 4.2.8 (6) ☐ Yes ☒ No

Explain: N/A

## Firearms

Department issued weapon? ☐ Yes ☐ No                Approved extra weapon? ☐ Yes ☐ No                Other? ☐ Yes ☐ No (explain) _____

| Weapon: make / model / serial number / caliber / capacity | Other: |
| --- | --- |

| Did weapon operate properly? ☐ Yes ☐ No (if no, explain below) | How many officers involved in incident? | Injury to officer? ☐ Yes ☐ No |
| --- | --- | --- |

Describe injuries: _____

## Firearm Discharge

| Type of Discharge: ☐ Accidental ☐ Intentional | Number of Hits: _____ Number of Misses: _____ | Range: _____ |
| --- | --- | --- |

| | Target Hit: | | Person Wounded: | Person Deceased: | Location of Wound: | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| None | Yes ☐ | No ☐ | | | Head ☐ | Arm ☐ | Side ☐ |
| Person | Yes ☐ | No ☐ | Yes ☐     No ☐ | Yes ☐     No ☐ | Chest ☐ | Leg ☐ | |
| Vehicle | Yes ☐ | No ☐ | | | Stomach ☐ | Back ☐ | |
| Structure | Yes ☐ | No ☐ | Animal Deceased: | | | | |
| Animal | Yes ☐ | No ☐ | Yes ☐  No ☐      If yes what kind? _____ | | | | |
| Other | Yes ☐ | No ☐ | | | | | |

## Injury to Officer

Were any officers injured? ☐ Yes ☒ No

List officers involved: Sgt. Hines

Describe injuries:  None

Describe treatment received: (On/Off Scene) None

Investigating Supervisor's Findings: On 5/1/19 Sgt. Thomas encountered Ms. Thomas sitting in her car in the parking lot of 653 Boulevard NE in a silver/gray Infinity. A lookout was given earlier advising that vehicle was involved in auto break-ins. According to Sgt. Hines Ms. Thomas was very irritated and or agitated upon his presence. Sgt.Hines did run Ms. Thomas who in turns came back wanted with out of the City of Atlanta for a speeding violation FTA. Sgt. Hines asked Ms. Thomas to exit her vehicle and she refused and fought with Sgt. Hines. Ms. Thomas continued to fight and tried to bite Sgt. Hines as he was cuffing her. As a result of the continued fighting Sgt. Hines drive stunned her in the back area where she then complied by placing her hands behind her. Shortly thereafter, Ms.Thomas bit Sgt. Hines and as a result of the bite, Ms. Thomas was struck in the face causing swelling to her left eye.

Did Officer pull –in with correct disposition to Communications?

☐ Yes ☐ Code – 17F ☒ Code – 17T ☐ Other (List )

☐ No (If No, list reason) The taser was not administered where projectiles would enter the body. The subject was drive stunned by Sgt. Hines.

13 - 3 - 4

| Form to be Completed by Supervisor |

Investigating Supervisor's signature
Unique ID 1269

Date

Watch Commander's signature
Unique ID 1269

Date

Assistant Zone Commander's signature
Unique ID _____

Date

Section Commander's signature
Unique ID _____

Date

**Forward original supplement form to:** ☐ Central Records

*13 - 4 - 4*

## Walton, Gartrell

**From:** Hines, James W
**Sent:** Sunday, May 12, 2019 1:37 PM
**To:** Walton, Gartrell
**Subject:** Fwd: Vehicle involved in auto thefts and larcenies

Get Outlook for iOS

**From:** Olson, Mark
**Sent:** Wednesday, May 1, 2019 6:17:17 PM
**To:** *APD Investigators; *APD Officers; *APD SERGEANTS; *APD Command Staff
**Subject:** Vehicle involved in auto thefts and larcenies

This Vehicle frequents the 4th Ward. It has a GA tag on it normally. The perps replace it with the D/O Tag when they are being bad. Perps are two black males in their 20's-30's. Stop and FIF if located. My contact information is on the bottom of the email. If the tag is in the vehicle, you can charge for Concealing the Identity of a Motor Vehicle. Place D/O tag into evidence.

40-2-7 - Removing or affixing license plate with intent to conceal or misrepresent



V/R

**Detective Mark A. Olson**
**Zone 6 Auto Theft Investigator**
**2025 Hosea L. Williams Dr S.E.**
**Atlanta, GA 30317**
**Office: (404) 546-5725**
**Cell: (470) 658-4029**
**Fax: (404) 373-5695**
**Email: Molson@atlantaga.gov**

20-1-1

# ATLANTA POLICE DEPARTMENT
## RELIEF FROM DUTY

OPS CONTROL #: _19-C-0210-UAF_

**TO:**      Sergeant James Hines #3669

**FROM:**    Sergeant W. Dean

**DATE:**    May 12, 2019

**RE:**      **Relief From Duty Notice**

You are hereby suspended from duty with pay effective ___May 12, 2019___ for the following reason(s):
(Give specific reason(s); also, state any conditions and restrictions concerning the suspension with pay. Include the restriction prohibiting all extra job employment.)

**REASON:**    Unauthorized use of force investigation.

**CONDITION:**   You will provide a home telephone number and any pager number where you may be reached. You will make yourself available for interview Monday through Friday from 0900 to 1700. Should you be away from your listed home phone number for more than two (2) hours during this time, you will contact and advise **Sgt. W. Dean** of the Office of Professional Standards where you can be reached. If he or she is unavailable, you will then advise a supervisor at OPS of the information. **You are <u>forbidden</u> to work any extra jobs during your relief of duty.**

**EMPLOYEE TELEPHONE NO.** _770 377-8371_ **PAGER:** _____

| ITEM NO. | This notice acknowledges receipt of the following Departmental property relinquished by you: (List inventory and description of property; include serial number of weapons, badge number, etc.) DESCRIPTION (Include model & serial number, if applicable) | QUANTITY |
|---|---|---|
|  | Glock 17 # ABY Y442, live rounds |  |
|  | 9mm Magazines (3) |  |
|  | APD Identification #2 |  |
|  |  |  |
|  |  |  |

_____    5/10/15  1248    _____    _____
**AFFECTED EMPLOYEE'S**    **DATE/TIME**    **WITNESS SIGNATURE**    **DATE/TIME**
**SIGNATURE**

P- _21_ . _1_ . _1_

Form APD-828 revised 1/1/2000



## EVIDENCE AUDIT TRAIL

| Evidence | | Source | |
|----------|------|--------|------|
| Evidence ID | **180261243** | Device Type | **Axon Body 2** |
| Categories | **ARREST** | Device Name | **X81200534** |
| Title | **83** | Serial Number | **X81200534** |
| | | Other | **Axon Body 2** |

| | | | |
|----------|------|--------|------|
| CheckSum | **Sha2-9a55874335d65906531fd54ae13881ef1e10b3adbee8f60ad206d62faca93444** | | |
| Record Start | **01 May 2019 17:39:14** | | |
| Uploaded | **01 May 2019 19:49:10** | Usage | |
| Uploader | **Hines, James (Badge ID: 3669)** | | |
| Unique ID | **EEED2210FA8D4DC8BE1CEDC7EB79EA66** | Page views | **26** |
| | | File downloads | **8** |
| | | Video playbacks | **27** |
| | | Last Viewed Or Downloaded On | **13 May 2019 05:59:47** |

| # | Date | Time | User | Activity |
|---|------|------|------|----------|
| 1 | 01 May 2019 | 17:39:14 (-07:00) | **System** | Recording started due to event button press |
| 2 | 01 May 2019 | 18:38:20 (-07:00) | **System** | Recording stopped due to event button hold |
| 3 | 01 May 2019 | 19:37:13 (-07:00) | **System** | Evidence successfully uploaded using Axon Dock |
| 4 | 01 May 2019 | 19:49:10 (-07:00) | **System** | Evidence automatically deleted from camera after successful upload using Axon Dock |
| 5 | 01 May 2019 | 19:49:10 (-07:00) | **System** | Evidence Record Created |
| 6 | 01 May 2019 | 20:29:59 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Evidence Record Accessed. Client IP Address: 65.82.136.222 |
| 7 | 01 May 2019 | 20:30:00 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 8 | 01 May 2019 | 20:30:23 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Evidence title updated to '83' |
| 9 | 01 May 2019 | 20:30:24 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | External ID '180261243' added |
| 10 | 01 May 2019 | 20:30:26 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Category 'ARREST' Added Deletion is now scheduled for 29 Apr 2024 17:39:14 (-07:00) |
| 11 | 01 May 2019 | 20:30:26 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Retention Level Updated Deletion is now scheduled for 29 Apr 2024 17:39:14 (-07:00) |

| # | Date | Time | User | Activity |
|---|------|------|------|----------|
| 12 | 01 May 2019 | 21:25:38 (-07:00) | **Hines, James (Badge ID: 3669)**<br>Username: Jwhines<br>User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 13 | 01 May 2019 | 21:25:39 (-07:00) | **Hines, James (Badge ID: 3669)**<br>Username: Jwhines<br>User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Media File Buffered by System at Page Load. Client IP<br>65.82.136.222 |
| 14 | 01 May 2019 | 21:25:51 (-07:00) | **Hines, James (Badge ID: 3669)**<br>Username: Jwhines<br>User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Evidence Record Streamed. Client IP Address:<br>65.82.136.222 |
| 15 | 01 May 2019 | 21:31:21 (-07:00) | **Hines, James (Badge ID: 3669)**<br>Username: Jwhines<br>User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Media File Buffered by System at Page Load. Client IP<br>65.82.136.222 |
| 16 | 01 May 2019 | 23:46:49 (-07:00) | **Jones, Rodney (Badge ID: 5452)**<br>Username: rejones<br>User ID: d8687a8e7c2c48cc9780dfbc8bf4e4dd | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 17 | 02 May 2019 | 00:02:00 (-07:00) | **Charles, Abdias (Badge ID: 4896)**<br>Username: abcharles<br>User ID: 860cf8518f5f494ba665952149b5f9d4 | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 18 | 02 May 2019 | 00:02:01 (-07:00) | **Charles, Abdias (Badge ID: 4896)**<br>Username: abcharles<br>User ID: 860cf8518f5f494ba665952149b5f9d4 | Media File Buffered by System at Page Load. Client IP<br>65.82.136.222 |
| 19 | 02 May 2019 | 00:02:06 (-07:00) | **Charles, Abdias (Badge ID: 4896)**<br>Username: abcharles<br>User ID: 860cf8518f5f494ba665952149b5f9d4 | Evidence Record Streamed. Client IP Address:<br>65.82.136.222 |
| 20 | 02 May 2019 | 07:29:03 (-07:00) | **Klotzer, Neil (Badge ID: 0033)**<br>Username: nklotzer<br>User ID: fd0fc0b75aba426bb9ea2bd2df10d884 | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 21 | 02 May 2019 | 07:29:05 (-07:00) | **Klotzer, Neil (Badge ID: 0033)**<br>Username: nklotzer<br>User ID: fd0fc0b75aba426bb9ea2bd2df10d884 | Media File Buffered by System at Page Load. Client IP<br>65.82.136.222 |
| 22 | 02 May 2019 | 07:29:12 (-07:00) | **Klotzer, Neil (Badge ID: 0033)**<br>Username: nklotzer<br>User ID: fd0fc0b75aba426bb9ea2bd2df10d884 | Evidence Record Streamed. Client IP Address:<br>65.82.136.222 |
| 23 | 02 May 2019 | 07:44:43 (-07:00) | **Klotzer, Neil (Badge ID: 0033)**<br>Username: nklotzer<br>User ID: fd0fc0b75aba426bb9ea2bd2df10d884 | Evidence Record Streamed. Client IP Address: 65.82.136.2 |
| 24 | 02 May 2019 | 07:48:35 (-07:00) | **Klotzer, Neil (Badge ID: 0033)**<br>Username: nklotzer<br>User ID: fd0fc0b75aba426bb9ea2bd2df10d884 | Media File Buffered by System at Page Load. Client IP<br>65.82.136.2 |
| 25 | 02 May 2019 | 07:53:56 (-07:00) | **Klotzer, Neil (Badge ID: 0033)**<br>Username: nklotzer<br>User ID: fd0fc0b75aba426bb9ea2bd2df10d884 | Media File Buffered by System at Page Load. Client IP<br>65.82.136.2 |
| 26 | 02 May 2019 | 09:31:58 (-07:00) | **Clay, Antonio (Badge ID: 3548)**<br>Username: abclay<br>User ID: 15b43fde5df440a798e19850004f6677 | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 27 | 02 May 2019 | 09:31:57 (-07:00) | **Clay, Antonio (Badge ID: 3548)**<br>Username: abclay<br>User ID: 15b43fde5df440a798e19850004f6677 | Media File Buffered by System at Page Load. Client IP<br>65.82.136.222 |
| 28 | 02 May 2019 | 09:32:24 (-07:00) | **Clay, Antonio (Badge ID: 3548)**<br>Username: abclay<br>User ID: 15b43fde5df440a798e19850004f6677 | Media File Buffered by System at Page Load. Client IP<br>65.82.136.2 |
| 29 | 02 May 2019 | 09:32:32 (-07:00) | **Clay, Antonio (Badge ID: 3548)**<br>Username: abclay<br>User ID: 15b43fde5df440a798e19850004f6677 | Evidence Record Streamed. Client IP Address:<br>65.82.136.222 |
| 30 | 02 May 2019 | 09:46:28 (-07:00) | **Clay, Antonio (Badge ID: 3548)**<br>Username: abclay<br>User ID: 15b43fde5df440a798e19850004f6677 | Media File Buffered by System at Page Load. Client IP<br>65.82.136.2 |
| 31 | 02 May 2019 | 11:32:45 (-07:00) | **Hines, James (Badge ID: 3669)**<br>Username: Jwhines<br>User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 32 | 02 May 2019 | 11:32:45 (-07:00) | **Hines, James (Badge ID: 3669)**<br>Username: Jwhines<br>User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Evidence Record Accessed. Client IP Address: 65.82.136.2 |

22 - 2 - 7

| # | Date | Time | User | Activity |
|---|------|------|------|----------|
| 33 | 02 May 2019 | 11:32:47 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Media File Buffered by System at Page Load. Client IP 65.82.136.2 |
| 34 | 02 May 2019 | 11:33:01 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 35 | 02 May 2019 | 11:33:10 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Evidence Record Streamed. Client IP Address: 65.82.136.2 |
| 36 | 02 May 2019 | 11:39:15 (-07:00) | **Hines, James (Badge ID: 3669)** Username: Jwhines User ID: a6568e169bc54c1e92e2cdb400aa7a2c | Media File Buffered by System at Page Load. Client IP 65.82.136.2 |
| 37 | 02 May 2019 | 12:58:52 (-07:00) | **Lee-Quinn, Miranda (Badge ID: 0619)** Username: MLeeQuinn User ID: 3fbe9ce562a346e592a2ccc7b3d75f79 | Evidence Record Accessed. Client IP Address: 65.82.136.222 |
| 38 | 02 May 2019 | 12:58:53 (-07:00) | **Lee-Quinn, Miranda (Badge ID: 0619)** Username: MLeeQuinn User ID: 3fbe9ce562a346e592a2ccc7b3d75f79 | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 39 | 02 May 2019 | 12:59:03 (-07:00) | **Lee-Quinn, Miranda (Badge ID: 0619)** Username: MLeeQuinn User ID: 3fbe9ce562a346e592a2ccc7b3d75f79 | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 40 | 02 May 2019 | 13:06:39 (-07:00) | **Lee-Quinn, Miranda (Badge ID: 0619)** Username: MLeeQuinn User ID: 3fbe9ce562a346e592a2ccc7b3d75f79 | Evidence Record Accessed. Client IP Address: 65.82.136.222 |
| 41 | 02 May 2019 | 13:06:40 (-07:00) | **Lee-Quinn, Miranda (Badge ID: 0619)** Username: MLeeQuinn User ID: 3fbe9ce562a346e592a2ccc7b3d75f79 | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 42 | 02 May 2019 | 13:06:44 (-07:00) | **Lee-Quinn, Miranda (Badge ID: 0619)** Username: MLeeQuinn User ID: 3fbe9ce562a346e592a2ccc7b3d75f79 | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 43 | 02 May 2019 | 13:08:10 (-07:00) | **Lee-Quinn, Miranda (Badge ID: 0619)** Username: MLeeQuinn User ID: 3fbe9ce562a346e592a2ccc7b3d75f79 | Media File Buffered by System at Page Load. Client IP 65.82.136.2 |
| 44 | 02 May 2019 | 13:08:10 (-07:00) | **Lee-Quinn, Miranda (Badge ID: 0619)** Username: MLeeQuinn User ID: 3fbe9ce562a346e592a2ccc7b3d75f79 | Evidence Record Accessed. Client IP Address: 65.82.136.2 |
| 45 | 02 May 2019 | 13:11:11 (-07:00) | **Shedeke-Jones, Tywana (Badge ID: 2252)** Username: tshedeke User ID: f3dffa4eae25455d972182403141caed | Evidence Record Accessed. Client IP Address: 65.82.136.222 |
| 46 | 02 May 2019 | 13:11:11 (-07:00) | **Shedeke-Jones, Tywana (Badge ID: 2252)** Username: tshedeke User ID: f3dffa4eae25455d972182403141caed | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 47 | 02 May 2019 | 13:11:19 (-07:00) | **Shedeke-Jones, Tywana (Badge ID: 2252)** Username: tshedeke User ID: f3dffa4eae25455d972182403141caed | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 48 | 02 May 2019 | 13:52:03 (-07:00) | **Shedeke-Jones, Tywana (Badge ID: 2252)** Username: tshedeke User ID: f3dffa4eae25455d972182403141caed | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 49 | 02 May 2019 | 20:15:16 (-07:00) | **Clay, Antonio (Badge ID: 3548)** Username: abclay User ID: 15b43fde5df440a798e19850004f6677 | Evidence Record Accessed. Client IP Address: 67.166.239.139 |
| 50 | 02 May 2019 | 20:15:18 (-07:00) | **Clay, Antonio (Badge ID: 3548)** Username: abclay User ID: 15b43fde5df440a798e19850004f6677 | Media File Buffered by System at Page Load. Client IP 67.166.239.139 |
| 51 | 02 May 2019 | 20:15:23 (-07:00) | **Clay, Antonio (Badge ID: 3548)** Username: abclay User ID: 15b43fde5df440a798e19850004f6677 | Evidence Record Streamed. Client IP Address: 67.166.239.139 |
| 52 | 02 May 2019 | 20:30:23 (-07:00) | **Clay, Antonio (Badge ID: 3548)** Username: abclay User ID: 15b43fde5df440a798e19850004f6677 | Evidence Record Streamed. Client IP Address: 67.166.239.139 |
| 53 | 02 May 2019 | 20:45:23 (-07:00) | **Clay, Antonio (Badge ID: 3548)** Username: abclay User ID: 15b43fde5df440a798e19850004f6677 | Evidence Record Streamed. Client IP Address: 67.166.239.139 |

22 - 3 - 7

| # | Date | Time | User | Activity |
|---|------|------|------|----------|
| 54 | 02 May 2019 | 21:00:23 (-07:00) | **Clay, Antonio (Badge ID: 3548)** Username: abclay User ID: 15b43fde5df440a798e19850004f6677 | Evidence Record Streamed. Client IP Address: 67.166.239.139 |
| 55 | 03 May 2019 | 19:11:17 (-07:00) | **Smith, Gregory (Badge ID: 5506)** Username: gjsmith User ID: 90323c90dba245f9bccfb19c78086639 | Evidence Record Accessed. Client IP Address: 65.82.136.222 |
| 56 | 03 May 2019 | 19:11:18 (-07:00) | **Smith, Gregory (Badge ID: 5506)** Username: gjsmith User ID: 90323c90dba245f9bccfb19c78086639 | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 57 | 03 May 2019 | 19:11:25 (-07:00) | **Smith, Gregory (Badge ID: 5506)** Username: gjsmith User ID: 90323c90dba245f9bccfb19c78086639 | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 58 | 03 May 2019 | 21:45:59 (-07:00) | **Jones, Rodney (Badge ID: 5452)** Username: rejones User ID: d8687a8e7c2c48cc9780dfbc8bf4e4dd | Evidence Record Accessed. Client IP Address: 65.82.136.222 |
| 59 | 03 May 2019 | 21:46:00 (-07:00) | **Jones, Rodney (Badge ID: 5452)** Username: rejones User ID: d8687a8e7c2c48cc9780dfbc8bf4e4dd | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 60 | 03 May 2019 | 21:46:04 (-07:00) | **Jones, Rodney (Badge ID: 5452)** Username: rejones User ID: d8687a8e7c2c48cc9780dfbc8bf4e4dd | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 61 | 03 May 2019 | 22:01:04 (-07:00) | **Jones, Rodney (Badge ID: 5452)** Username: rejones User ID: d8687a8e7c2c48cc9780dfbc8bf4e4dd | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 62 | 06 May 2019 | 07:33:11 (-07:00) | **Vazquez, Ricardo (Badge ID: 2078)** Username: rvazquez User ID: 12f03ddbe24e498095edbe8cdf331e5f | Evidence Record Accessed. Client IP Address: 65.82.136.222 |
| 63 | 06 May 2019 | 07:33:12 (-07:00) | **Vazquez, Ricardo (Badge ID: 2078)** Username: rvazquez User ID: 12f03ddbe24e498095edbe8cdf331e5f | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 64 | 06 May 2019 | 07:33:21 (-07:00) | **Vazquez, Ricardo (Badge ID: 2078)** Username: rvazquez User ID: 12f03ddbe24e498095edbe8cdf331e5f | Evidence Record Streamed. Client IP Address: 65.82.136.2 |
| 65 | 08 May 2019 | 11:52:19 (-07:00) | **Brown, Colnita (Badge ID: 7411)** Username: ccbrown User ID: 1f704008014748c48f2d3bd37f3b1be1 | Evidence Record Added to Case '180261243' Deletion is now unscheduled |
| 66 | 09 May 2019 | 07:41:37 (-07:00) | **Reyes, Julio (Badge ID: 2670)** Username: jreyes User ID: 21530c0a712b4a76968e40b4d115d389 | Evidence Record Added to Case '180261243' |
| 67 | 09 May 2019 | 08:20:26 (-07:00) | **Strom, Justin (Badge ID: 3753)** Username: jwstrom User ID: e1b598fcfa1c4c258a94599f65c8b51d | Initiated bulk evidence download link including this evidence to jwstrom@atlantaga.gov, lrichardson@atlantaga.gov; excluding audit trails. Included Optional Message: Ms. Richardson, please see the attached Body Camera links for Case # 18-026-1243. |
| 68 | 09 May 2019 | 08:21:23 (-07:00) | **System** | Successfully sent bulk evidence download link including this evidence to jwstrom@atlantaga.gov, lrichardson@atlantaga.gov. Download link expires on 16 May 2019 08:20:26 (-07:00). |
| 69 | 09 May 2019 | 08:27:47 (-07:00) | **Client IP Address: 65.82.136.222** | Evidence downloaded in case evidence package 1 of 1 via download link emailed to tolrichardson@atlantaga.gov. |
| 70 | 09 May 2019 | 08:28:03 (-07:00) | **Client IP Address: 65.82.136.222** | Evidence downloaded in case evidence package 1 of 1 via download link emailed to anjourney@atlantaga.gov. |
| 71 | 11 May 2019 | 05:40:47 (-07:00) | **Browning, LeAnne (Badge ID: 2111)** Username: LBrowning User ID: fffc276c4aa7488f9ed4c83ba6eb44d4 | Evidence Record Accessed. Client IP Address: 24.98.212.172 |
| 72 | 11 May 2019 | 05:40:48 (-07:00) | **Browning, LeAnne (Badge ID: 2111)** Username: LBrowning User ID: fffc276c4aa7488f9ed4c83ba6eb44d4 | Media File Buffered by System at Page Load. Client IP 24.98.212.172 |
| 73 | 11 May 2019 | 05:40:54 (-07:00) | **Browning, LeAnne (Badge ID: 2111)** Username: LBrowning User ID: fffc276c4aa7488f9ed4c83ba6eb44d4 | Evidence Record Streamed. Client IP Address: 24.98.212.172 |
| 74 | 11 May 2019 | 05:44:05 (-07:00) | **Vazquez, Ricardo (Badge ID: 2078)** Username: rvazquez User ID: 12f03ddbe24e498095edbe8cdf331e5f | Evidence Record Accessed. Client IP Address: 76.17.112.66 |

22 - 4 - 7

| # | Date | Time | User | Activity |
|---|------|------|------|----------|
| 75 | 11 May 2019 | 05:44:07 (-07:00) | **Vazquez, Ricardo (Badge ID: 2078)**<br>Username: rvazquez<br>User ID: 12f03ddbe24e498095edbe8cdf331e5f | Media File Buffered by System at Page Load. Client IP 76.17.112.66 |
| 76 | 11 May 2019 | 05:44:26 (-07:00) | **Vazquez, Ricardo (Badge ID: 2078)**<br>Username: rvazquez<br>User ID: 12f03ddbe24e498095edbe8cdf331e5f | Evidence Record Streamed. Client IP Address: 76.17.112.66 |
| 77 | 11 May 2019 | 05:51:20 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Accessed. Client IP Address: 65.82.136.222 |
| 78 | 11 May 2019 | 05:51:22 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 79 | 11 May 2019 | 05:56:22 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Accessed. Client IP Address: 65.82.136.222 |
| 80 | 11 May 2019 | 05:56:23 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Media File Buffered by System at Page Load. Client IP 65.82.136.222 |
| 81 | 11 May 2019 | 05:56:43 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 82 | 11 May 2019 | 05:59:26 (-07:00) | **Vazquez, Ricardo (Badge ID: 2078)**<br>Username: rvazquez<br>User ID: 12f03ddbe24e498095edbe8cdf331e5f | Evidence Record Streamed. Client IP Address: 76.17.112.66 |
| 83 | 11 May 2019 | 06:00:24 (-07:00) | **Vazquez, Ricardo (Badge ID: 2078)**<br>Username: rvazquez<br>User ID: 12f03ddbe24e498095edbe8cdf331e5f | Media File Buffered by System at Page Load. Client IP 76.17.112.66 |
| 84 | 11 May 2019 | 06:06:04 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Downloaded; Internal Record ID: FILE:76C1794D958F4AA6AC2B6A30AD49E361@72187B AE431A455A93C4B15E0528F9E0<br>Client IP Address:<br>65.82.136.222 |
| 85 | 11 May 2019 | 06:11:43 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 86 | 11 May 2019 | 06:18:17 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Downloaded; Internal Record ID: FILE:76C1794D958F4AA6AC2B6A30AD49E361@72187B AE431A455A93C4B15E0528F9E0<br>Client IP Address:<br>65.82.136.222 |
| 87 | 11 May 2019 | 06:25:48 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Marker Added |
| 88 | 11 May 2019 | 06:25:53 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Marker Downloaded |
| 89 | 11 May 2019 | 06:28:30 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Streamed. Client IP Address: 65.82.136.222 |
| 90 | 11 May 2019 | 06:28:35 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Video Clip Edited<br>"(Clip 1) 83" (00:07:52 to 00:07:53) |
| 91 | 11 May 2019 | 06:28:35 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Video Clip Edited<br>"(Clip 1) 83" (00:07:52 to 00:09:53) |
| 92 | 11 May 2019 | 06:28:37 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Video Clip Edited<br>"(Clip 1) 83" (00:04:28 to 00:09:53) |
| 93 | 11 May 2019 | 06:28:39 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Video Clip Edited<br>"(Clip 1) 83" (00:12:47 to 00:12:48) |
| 94 | 11 May 2019 | 06:28:40 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Marker Edited |

22 - 5 - 7

| # | Date | Time | User | Activity |
|---|------|------|------|----------|
| 95 | 11 May 2019 | 06:28:45 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Marker Removed |
| 96 | 11 May 2019 | 06:30:43 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Video Clip Edited<br>"(Clip 6) 83" (00:03:27 to 00:10:21) |
| 97 | 11 May 2019 | 06:30:45 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Video Clip Edited<br>"(Clip 6) 83" (00:02:07 to 00:10:21) |
| 98 | 11 May 2019 | 06:33:17 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Downloaded; Internal Record ID:<br>FILE:76C1794D958F4AA6AC2B6A30AD49E361@72187B<br>AE431A455A93C4B15E0528F9E0<br>Client IP Address:<br>65.82.136.222 |
| 99 | 11 May 2019 | 06:46:55 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Downloaded; Internal Record ID:<br>FILE:76C1794D958F4AA6AC2B6A30AD49E361@72187B<br>AE431A455A93C4B15E0528F9E0<br>Client IP Address:<br>65.82.136.222 |
| 100 | 11 May 2019 | 06:52:22 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 101 | 11 May 2019 | 06:52:26 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Media File Buffered by System at Page Load. Client<br>65.82.136.222 |
| 102 | 11 May 2019 | 06:52:44 (-07:00) | **Zenelaj, Hajredin (Badge ID: 3257)**<br>Username: hzenelaj<br>User ID: ae5432870f764c778cbda8944b014cde | Evidence Record Downloaded; Internal Record ID:<br>FILE:76C1794D958F4AA6AC2B6A30AD49E361@72187B<br>AE431A455A93C4B15E0528F9E0<br>Client IP Address:<br>65.82.136.222 |
| 103 | 11 May 2019 | 06:53:16 (-07:00) | **Browning, LeAnne (Badge ID: 2111)**<br>Username: LBrowning<br>User ID: fffc276c4aa7488f9ed4c83ba6eb44d4 | Evidence Record Accessed. Client IP Address:<br>24.98.212.172 |
| 104 | 11 May 2019 | 06:53:17 (-07:00) | **Browning, LeAnne (Badge ID: 2111)**<br>Username: LBrowning<br>User ID: fffc276c4aa7488f9ed4c83ba6eb44d4 | Media File Buffered by System at Page Load. Client<br>24.98.212.172 |
| 105 | 11 May 2019 | 06:53:21 (-07:00) | **Browning, LeAnne (Badge ID: 2111)**<br>Username: LBrowning<br>User ID: fffc276c4aa7488f9ed4c83ba6eb44d4 | Evidence Record Downloaded; Internal Record ID:<br>FILE:76C1794D958F4AA6AC2B6A30AD49E361@72187B<br>AE431A455A93C4B15E0528F9E0<br>Client IP Address:<br>24.98.212.172 |
| 106 | 11 May 2019 | 06:54:07 (-07:00) | **Strom, Justin (Badge ID: 3753)**<br>Username: jwstrom<br>User ID: e1b598fcfa1c4c258a94599f65c8b51d | Evidence Record Accessed. Client IP Address: 209.64.56.2 |
| 107 | 11 May 2019 | 06:54:08 (-07:00) | **Strom, Justin (Badge ID: 3753)**<br>Username: jwstrom<br>User ID: e1b598fcfa1c4c258a94599f65c8b51d | Media File Buffered by System at Page Load. Client<br>209.64.56.2 |
| 108 | 11 May 2019 | 13:56:34 (-07:00) | **Giles, La'wanda (Badge ID: 4504)**<br>Username: LGILES<br>User ID: f6e7dedbf8fa4e8bbc77dc0a9e6533d1 | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 109 | 11 May 2019 | 13:56:40 (-07:00) | **Giles, La'wanda (Badge ID: 4504)**<br>Username: LGILES<br>User ID: f6e7dedbf8fa4e8bbc77dc0a9e6533d1 | Media File Buffered by System at Page Load. Client IP<br>65.82.136.222 |
| 110 | 11 May 2019 | 13:58:41 (-07:00) | **Giles, La'wanda (Badge ID: 4504)**<br>Username: LGILES<br>User ID: f6e7dedbf8fa4e8bbc77dc0a9e6533d1 | Evidence Record Downloaded; Internal Record ID:<br>FILE:76C1794D958F4AA6AC2B6A30AD49E361@72187B<br>AE431A455A93C4B15E0528F9E0<br>Client IP Address:<br>65.82.136.222 |
| 111 | 11 May 2019 | 13:59:12 (-07:00) | **Giles, La'wanda (Badge ID: 4504)**<br>Username: LGILES<br>User ID: f6e7dedbf8fa4e8bbc77dc0a9e6533d1 | Evidence Record Streamed. Client IP Address:<br>65.82.136.222 |
| 112 | 13 May 2019 | 05:36:07 (-07:00) | **Cone, Glenn (Badge ID: 1601)**<br>Username: GCone<br>User ID: ac86f473f6e04f0aadb595467d790a68 | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 113 | 13 May 2019 | 05:36:09 (-07:00) | **Cone, Glenn (Badge ID: 1601)**<br>Username: GCone<br>User ID: ac86f473f6e04f0aadb595467d790a68 | Media File Buffered by System at Page Load. Client<br>65.82.136.222 |

22 - 6 - 7



| # | Date | Time | User | Activity |
|---|------|------|------|----------|
| 114 | 13 May 2019 | 05:36:18 (-07:00) | **Cone, Glenn (Badge ID: 1601)**<br>Username: GCone<br>User ID: ac86f473f6e04f0aadb595467d790a68 | Evidence Record Downloaded; Internal Record ID:<br>FILE:76C1794D958F4AA6AC2B6A30AD49E361@72187B<br>AE431A455A93C4B15E0528F9E0<br>Client IP Address:<br>65.82.136.222 |
| 115 | 13 May 2019 | 05:36:27 (-07:00) | **Cone, Glenn (Badge ID: 1601)**<br>Username: GCone<br>User ID: ac86f473f6e04f0aadb595467d790a68 | Evidence Record Streamed. Client IP Address:<br>65.82.136.222 |
| 116 | 13 May 2019 | 05:51:27 (-07:00) | **Cone, Glenn (Badge ID: 1601)**<br>Username: GCone<br>User ID: ac86f473f6e04f0aadb595467d790a68 | Evidence Record Streamed. Client IP Address:<br>65.82.136.222 |
| 117 | 13 May 2019 | 05:59:40 (-07:00) | **Giles, La'wanda (Badge ID: 4504)**<br>Username: LGILES<br>User ID: f6e7dedbf8fa4e8bbc77dc0a9e6533d1 | Evidence Record Accessed. Client IP Address:<br>65.82.136.222 |
| 118 | 13 May 2019 | 05:59:44 (-07:00) | **Giles, La'wanda (Badge ID: 4504)**<br>Username: LGILES<br>User ID: f6e7dedbf8fa4e8bbc77dc0a9e6533d1 | Media File Buffered by System at Page Load. Client IP<br>65.82.136.222 |

22 -7-7

## ATLANTA POLICE DEPARTMENT
### Call For Service
### Incident #: 191212150

---------- *Call Information* ----------

Date: 5/1/2019    Call Type and Description: (54) SUSPICIOUS PERSON
Priority: 20 MINUTE RESPONSE              RD: ZONE6 BEAT3

Location: 653 BOULEVARD NE, ATLANTA
Beat: ZONE6 BEAT3                        CA: ZONE 6

Call Taker ID and Name: (7181) WARDEN, C
Dispatcher ID and Name: (7181) WARDEN, C

Disposition: (1723) POPULATED BY CAD
Disposition Narrative:
Rep Req: Y                               Rep Recd: N

---------- *Caller Information* ----------

Source: SELF INITIATE
Name:                                    Phone:
Address:

---------- *Related Incident Numbers* ----------

Police: 191212127    Sheriff:          Fire:              EMS:

---------- *Incident Times* ----------

E911:                  Received: 20:39:16    Dispatched: 20:39:16    En Route:
Arrived: 20:39:16      Transport: 21:42:17   Booking:                Cleared: 22:46:19

---------- *Unit Information* ----------

Primary Unit: 3694
Officer 1 and Name: (3669) HINES, J W
Officer 2 and Name:

Sec Unit: 3604
Sec Unit: 3605
Sec Unit: 3606
Sec Unit: 3614
Sec Unit: 3692
Sec Unit: U600

---------- *Unit Times* ----------

| Unit ID | CMD | Date/Time | Remarks |
|---------|-----|-----------|---------|
| 3694 | S | 5/1/2019 8:39:16 PM | 653 BOUL = S83 BF |
| 3604 | BU | 5/1/2019 8:39:19 PM | 653 BOUL = S83 BF |
| 3604 | EN | 5/1/2019 8:39:19 PM | 653 BOUL = S83 BF |
| 3694 | RL | 5/1/2019 8:40:02 PM | 653 BOULEVARD NE |

*23 - 1 - 5*

**ATLANTA POLICE DEPARTMENT**
**Call For Service**
**Incident #: 191212150**

| | | | | |
|---|---|---|---|---|
| 3604 | RL | 5/1/2019 8:40:48 PM | 653 BOULEVARD NE | |
| 3604 | A | 5/1/2019 8:45:52 PM | 653 BOULEVARD NE | |
| 3606 | BU | 5/1/2019 8:51:20 PM | 653 BOULEVARD NE | |
| 3606 | EN | 5/1/2019 8:51:20 PM | 653 BOULEVARD NE | |
| 3694 | A | 5/1/2019 8:51:37 PM | 653 BOULEVARD NE | |
| 3614 | BU | 5/1/2019 8:52:27 PM | 653 BOULEVARD NE | |
| 3614 | EN | 5/1/2019 8:52:27 PM | 653 BOULEVARD NE | |
| 3692 | BU | 5/1/2019 8:52:27 PM | 653 BOULEVARD NE | |
| 3692 | EN | 5/1/2019 8:52:27 PM | 653 BOULEVARD NE | |
| 3605 | BU | 5/1/2019 8:52:27 PM | 653 BOULEVARD NE | |
| 3605 | EN | 5/1/2019 8:52:27 PM | 653 BOULEVARD NE | |
| 3606 | A | 5/1/2019 8:54:52 PM | 653 BOULEVARD NE | |
| 3604 | AM | 5/1/2019 8:58:23 PM | 653 BOULEVARD NE | |
| 3692 | A | 5/1/2019 8:59:19 PM | 653 BOULEVARD NE | |
| 3614 | A | 5/1/2019 9:00:18 PM | 653 BOULEVARD NE | |
| 3605 | A | 5/1/2019 9:00:22 PM | 653 BOULEVARD NE | |
| 3614 | C | 5/1/2019 9:00:46 PM | CT=54 | |
| U600 | BU | 5/1/2019 9:28:49 PM | 653 BOULEVARD NE | |
| U600 | EN | 5/1/2019 9:28:49 PM | 653 BOULEVARD NE | |
| U600 | A | 5/1/2019 9:28:58 PM | 653 BOULEVARD NE | |
| 3604 | C4 | 5/1/2019 9:29:46 PM | 653 BOULEVARD NE | |
| 3606 | C4 | 5/1/2019 9:29:49 PM | 653 BOULEVARD NE | |
| 3605 | C4 | 5/1/2019 9:29:52 PM | 653 BOULEVARD NE | |
| 3606 | C | 5/1/2019 9:34:53 PM | CT=54 | |
| 3694 | C4 | 5/1/2019 9:36:02 PM | 653 BOULEVARD NE | |
| 3604 | T | 5/1/2019 9:42:17 PM | ENR TO CITY 1BF BGNM:01424.0 @2142HRS | |
| U600 | C | 5/1/2019 9:44:38 PM | CT=54 | |
| 3692 | C | 5/1/2019 9:47:18 PM | CT=54 | |
| 3605 | C | 5/1/2019 9:47:33 PM | CT=54 | |
| 3604 | LC | 5/1/2019 9:54:16 PM | OUT AT CITY ENDM:01426.9 @2154HRS | |
| 3604 | LC | 5/1/2019 10:06:19 PM | ENR TO 16G 1F BGNM:0126.9 @2205HRS | |
| 3694 | C | 5/1/2019 10:14:37 PM | CT=54      DC=1723/Y | |
| 3604 | LC | 5/1/2019 10:24:50 PM | ENR TO 16G 1F BGNM:0126.9 @2205HRS | |
| 3604 | C | 5/1/2019 10:46:19 PM | CT=54 | |

---------- *CAD Narrative* ----------

| Date/Time | UserID | Remarks |
|---|---|---|
| 5/1/2019 8:39:16 PM | 7181 | = S83 BF O/S ...UNIT OKAY @2041HRS ..FML IRATE IN BACKGROUND/3604 1MIN |
| 5/1/2019 8:39:16 PM | 7181 | ETA ..BEHIND THE WENDY'S ...UNITS OKAY @2048HRS ...REQ ANOTHER UNIT |
| 5/1/2019 8:39:56 PM | 7181 | M  LOC : 653 BOUL -> 653 BOULEVARD NE |
| 5/1/2019 8:39:56 PM | 7181 | M  CITY:  -> ATL |
| 5/1/2019 8:39:56 PM | 7181 | M  RD  :  -> 603 |
| 5/1/2019 8:39:56 PM | 7181 | M  BEAT:  -> 603 |
| 5/1/2019 8:39:56 PM | 7181 | M  DHPT:  -> D P |
| 5/1/2019 8:52:00 PM | 7181 | @2052HRS |
| 5/1/2019 8:58:00 PM | 7181 | ...30 YO BF ACB ABRASIONS TO LEFT TORSO |
| 5/1/2019 9:00:00 PM | 7181 | REQ EMS/GRADY ENR PER OPER 761/CARLA Z6 |
| 5/1/2019 9:02:00 PM | 7181 | RELOC TO PINNACLE CREDIT UNION PKLOT// |
| 5/1/2019 9:07:00 PM | 7181 | ...G518 O/S @2107HRS |
| 5/1/2019 9:27:00 PM | 7181 | ...UNITS OKAY @2127HRS |
| 5/1/2019 9:42:00 PM | 7181 | ... ENR TO CITY 1BF BGNM:01424.0 @2142HRS |

23 - 2 -5

ATLANTA POLICE DEPARTMENT
Call For Service
Incident #: 191212150

5/1/2019 9:54:00 PM   7181        ....OUT AT CITY ENDM:01426.9 @2154HRS
5/1/2019 10:19:00 PM  7181        ..ENR TO 16G 1F BGNM:0126.9 @2205HRS
5/1/2019 10:24:00 PM  7181        ...AT 16G ENDM:01432.0 @2218
5/1/2019 10:28:00 PM  7181        ..CRIME SCENE O/S @2228HRS
5/1/2019 10:31:42 PM  7181        RI RELATED #191212127

---------- *Narrative* ----------

23 - 3 - 5

## ATLANTA POLICE DEPARTMENT
### Call For Service
### Incident #: 191212158

---------- *Call Information* ----------

Date: 5/1/2019    Call Type and Description: (39) INFO FOR OFFICER
Priority: 20 MINUTE RESPONSE             RD: ZONE6 BEAT3

Location: 657 BOULEVARD NE, ATLANTA
Beat: ZONE6 BEAT3                        CA: ZONE 6

Call Taker ID and Name: (2091) WILLIAMS, T
Dispatcher ID and Name:

Disposition: (4) CANCEL CALL-ORI HAVE BEEN CAN.
Disposition Narrative: SAC 2150/FML IS S83
Rep Req: N                               Rep Recd: N

---------- *Caller Information* ----------

Source: E911 CALL
Name: FM CLR (WRLS) T-MOBILE USA          Phone: (404)953-8594
Address: 486 PONCE DE LEON AVE

---------- *Related Incident Numbers* ----------

Police:          Sheriff:          Fire:          EMS:

---------- *Incident Times* ----------

E911: 20:42:52      Received: 20:44:41    Dispatched:        En Route:
Arrived:            Transport:            Booking:           Cleared: 20:46:33

---------- *Unit Information* ----------

Primary Unit:
Officer 1 and Name:
Officer 2 and Name:

---------- *CAD Narrative* ----------

| Date/Time | UserID | Remarks |
|---|---|---|
| 5/1/2019 8:42:52 PM | 2091 | CT 9538594 657 BOULEVARD NE |
| 5/1/2019 8:43:06 PM | 2091 | CT LC VALID: 657 BOULEVARD NE |
| 5/1/2019 8:44:04 PM | 2091 | CT CT VALID: 39 |
| 5/1/2019 8:44:41 PM | 2091 | REQ LIEUTENANT/PROBLEM WITH SGT/TGW18 |
| 5/1/2019 8:46:33 PM |  | CN RM=SAC 2150/FML IS S83 |
| 5/1/2019 8:46:33 PM | 7181 | CN DC=4   /N |

---------- *Narrative* ----------

*23 - 4 - 5*

ATLANTA POLICE DEPARTMENT
Call For Service
Incident #: 191212158



# CITY OF ATLANTA

KEISHA LANCE BOTTOMS
MAYOR

226 PEACHTREE STREET, SW
ATLANTA, GEORGIA 30303
404 - 546-6900

ATLANTA POLICE DEPARTMENT
ERIKA SHIELDS
CHIEF OF POLICE

May 13, 2019

Ms. Maggie Thomas
657 Boulevard NE # 125
Atlanta, Ga 30308

**Re: 19-C-0210-UAF**

Dear Ms. Maggie Thomas:

Thank you for taking the time to express your concerns regarding the actions of Sergeant J. Hines, an employee of the Atlanta Police Department.

The Office of Professional Standards (OPS) has reviewed the allegations indicated in your statement. Inv. G. Walton will be handling the investigation and may contact you if additional information is required to conduct a thorough investigation of your complaint. If the investigation exceeds sixty (60) days, Inv. G. Walton will advise you of the reason for the delay in writing. Upon completion of the investigation, you will also be notified of the outcome of the investigation in writing by the Office of Professional Standards.

If you have any additional questions or concerns, please call Inv. G. Walton at 404-546-5945. The address is 950 Joseph E Lowery Boulevard, Suite 16, Atlanta, GA 30318.

Sincerely,

Major C. Tyus

Major C. Tyus, Commander
Office of Professional Standards

CT/gac
cc: File



**CITY OF ATLA**

KEISHA LANCE BOTTOMS
MAYOR

226 PEACHTREE STREET, SW
ATLANTA, GEORGIA 30303
404 - 546-6900

7014 1820 0002 0080 6636

CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Sent To

Street & Apt. No.,
or PO Box No.

City, State, ZIP+4

Total Postage & Fees

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Certified Fee

Postage

$

$

Postmark
Here

PS Form 3800, Jan 2014    See Reverse for Instructions

August 14, 2019

Ms. Maggie Thomas
657 Boulevard NE #125
Atlanta, GA 30308

RE: 19-C-0210-UAF

Dear Ms. Maggie Thomas:

An investigation into the complaint you filed with this office has been **Exceptionally Closed** for the following reason:

**Sergeant J. Hines separated from the Atlanta Police Department effective May 30, 2019.**

Should you have questions regarding this decision, please contact Lieutenant B. Paden at (404) 546-5945 within ten (10) days from the date of this notice.

Sincerely,

Major C. Tyus

Major C. Tyus, Commander
Office of Professional Standards

CT/kdm
cc: File